**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
Kali Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA VALENTINE and RUBY CORNEJO, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>CROCS, INC.,<br><br>                              Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT FOR FRAUD, DECEIT, AND/OR MISREPRESENTATION; VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; NEGLIGENT MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; BREACH OF EXPRESS WARRANTY; BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT; AND VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1.      Plaintiffs Martha Valentine and Ruby Cornejo, by and through their counsel, bring this Class Action Complaint against Crocs, Inc. (referred to as "Defendant" or "Crocs"), on behalf of themselves, and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act; false advertising; negligent misrepresentation; unfair, unlawful, and deceptive trade practices; breach of express and implied warranties; violation of the Song-Beverly Consumer Warranty Act; and violation of the Magnuson-Moss

Warranty Act. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

2.    This case concerns shoes that Defendant sells, made of Croslite® material, under the brand name of "Crocs," including, without limitation, the Crocs' Classic Clog (including Glitter, Printed, Lined, Solarized, Real-Tree, Tie-Dye, Bae, and all other varieties), Classic All-Terrain Clog, LiteRide Clog (all varieties), Classic Sandal (including Cozzzy and all other varieties), and Classic Slide (all varieties) (hereinafter, the "Products").

3.    Crocs markets, advertises, and sells the Products without alerting consumers that these shoes are constructed of a material that shrinks upon exposure to ordinary heat, direct sunlight, and/or water. Such exposures cause the Products to shrink by up to several shoe sizes, to the point where they no longer fit the purchaser's feet. This design flaw defeats the fundamental purpose of the Products since the shrinkage renders them unwearable and worthless. Alternatively, because the Products are basically water shoes, flip-flops or sandals that are fundamentally designed for, and intended to be worn in, and exposed to, heat, direct sunlight and water, the Products are not fit for their intended purpose. The Products are, thus, unsuitable for their ordinary use.

4.    At the same time, Defendant makes affirmative representations that falsely represent that the Products as suitable not only for ordinary wear and use, but also for use specifically in hot, sunny environments and in water. For example, and without limitation, Crocs advertises the Products as "water shoes," "water sandals," "shed[ding] water" and "water-friendly," and it uses photos of people wearing them at the beach, pool, river, lake, and garden, in direct sunlight, in its advertising and marketing materials. It specifically markets, advertises and sells the Products as "water and swim shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "pool party," "perfect for the pool," "beach bum," and "Comfortable water and swim shoes. Whether you're swimming in a lake, river, ocean, or pool, protect your feet with comfortable water sandals and shoes from Crocs."

5.    Defendant additionally markets and advertises that Products as featuring "Iconic Crocs Comfort," 360° comfort, and promising that all Crocs "offer a roomy and generous fit

that is sure to match your foot." Moreover, when it comes to sizing, the Products are offered in "roomy, relaxed and standard fit styles." Crocs then specifically represents that "you'll find the perfect fit for you" and that all styles offer "Wiggle room at the front of the shoe - your toes shouldn't touch the front."

6.     The Products, however, are not "water shoes," "water sandals," "water and swim shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "pool party," "perfect for the pool," "the perfect choice for gardening," "beach bum," "water and swim shoes," or suitable for all terrain, lake, river, ocean, pool and/or beach environments, because when the Products are exposed to heat, water and/or sunlight they shrink and become unwearable by the original owner.

7.     Plaintiffs purchased Crocs shoes made of Croslite material believing they were "water shoes" or water-resistant shoes, suitable for regular use in all terrain and environments, including in wet, hot and/or sunny environments. They believe that they could be worn in water, in the garden, to the lake, river, ocean, pool and the beach, and also left outside, in direct sunlight. They additionally believed that their Crocs would maintain a proper fit even after exposure to these environments.

8.     Plaintiffs were, however, intentionally misled and deceived by Defendant's marketing and advertising that represented that the Crocs Croslite shoes were all terrain, "water shoes," "water sandals," "water and swim shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "pool party," "perfect for the pool," "perfect for the garden," "beach bum," and "water and swim shoes," "water-friendly," "pool" or "beach" shoes that were suitable for use in all environments, including in water and hot sunny environments, such as the garden, lake, river, beach and poolside.

9.     Defendant Crocs also expressly warranted, although not at the point of sale, that the Crocs shoes were free of manufacturing defects, and created implied warranties that these shoes were in merchantable condition for use in ordinary conditions that included exposure to sun, heat, and water, and were fit for special use in sunny, hot, and wet environments. Even

CLASS ACTION COMPLAINT

where Crocs sold the Products through third party retailers, consumers were the intended third party beneficiary of these warranties.

10.     At a minimum, Crocs unlawfully failed to adequately disclose that the Products would shrink and become un-wearable by purchasers if they were exposed to environments that were too hot, sunny or wet, including, for example, rivers, lakes, pools, beaches, hot cars, gardens, lawns, porches, etc…

11.     Crocs' marketing and advertising representations and omissions concerning the Products were false and misleading, were directed at inducing, and did induce, Plaintiffs and Class Members to purchase the Products at higher prices than they would otherwise have paid, had they known the truth of the matter.

12.     Defendant knew that the Products it sold were not capable of withstanding use and storage in hot, sunny, wet, or humid environments, and that its advertising materials were false and deceptive in describing the Products as suitable for use in those environments.

13.     Despite knowing that its Products were flawed and its advertisements both failed to inform customers of the flaw and falsely stated that the shoes were water-proof, water-resistant and durable under normal conditions of sun, heat, and moisture, Defendant refused and failed to issue any recalls to fix the shrinkage problem or to otherwise warn Plaintiffs, those similarly situated and or the general public. Defendant also refused to itself refund or replace Products that became unusable because of the above-mentioned flaws, and refused to acknowledge it had breached its warranties of these Products. Crocs also intentionally failed to instruct its retail partner to repair or replace, or even assist in refunds and replacements, of Products that became unusable because of because of the above-mentioned flaws. Defendant did so intentionally in order to sell more Products.

## **PARTIES**

14.     Plaintiff Martha Valentine is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco, California. Ms. Valentine intends to remain in San Francisco and makes her permanent home there.

CLASS ACTION COMPLAINT

15.     Plaintiff Ruby Cornejo is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Galt, California. Ms. Cornejo intends to remain in Galt and makes her permanent home there.

16.     Defendant Crocs, Inc. is a corporation incorporated under the laws of the state of Delaware, having its principal place of business in Broomfield, Colorado.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

18.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

20.     In accordance with California Civil Code Section 1780(d), Ms. Valentine concurrently files herewith a declaration establishing that she purchased a pair of Crocs online from her home in San Francisco, California in the spring of 2022. (Ms. Valentine's declaration is attached hereto as Exhibit A.)

21.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

22.     As noted above, the Products that are the subject of this Complaint are Crocs shoes manufactured from Croslite material, including, without limitation, the Crocs' Classic Clog (including Glitter, Printed, Lined, Solarized, Real-Tree, Tie-Dye, Bae, and all other

varieties), Classic All-Terrain Clog, LiteRide Clog (all varieties), Classic Sandal (including Cozzzy and all other varieties), and Classic Slide (all varieties).

**Defendant's Breach of Warranties**

23.     Crocs offers a Limited Warranty for the Products which it publishes on its website. The limited warranty, however, does not appear on Products, at retail sellers of the Products and/or third party websites selling the Products. Nor does Crocs include any tag or labeling with the Products sold through third party retailers that directs purchasers to the Limited Warranty on its web site. Crocs' Limited Warranty states as follows:

> **Limited Warranty**
>
> Crocs, Inc. ("Crocs") warrants all of its Crocs™ products (the "Products"), purchased by consumers either directly from Crocs or from Crocs' authorized resellers (including authorized retail and Internet-based sellers), to be free from manufacturing defects for 90 days from the date of purchase. This warranty does not extend to Products supplied/sold by unauthorized vendors, whether Internet-based or otherwise. This warranty does not apply to any defects in the Products arising from normal usage, fair wear and tear, damage by you, or any alteration or repair carried out without our approval.
>
> Under no circumstances shall Crocs be liable for any special, incidental, or consequential damages based upon breach of this limited warranty, breach of contract or strict liability. Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. There are no warranties which extend beyond those indicated herein. Any implied warranties that may be applicable to the Products, including implied warranties of merchantability or fitness for a particular purpose, are limited in duration to the duration of this warranty. Some States do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.
>
> If your Product develops a defect while under warranty, you should contact Crocs as indicated below, and any defective Product, at Crocs' instruction, may be returned to the below address for an exchange or refund with receipt or proof of purchase. If you do not have a receipt or it is past the 90-day window, we cannot replace your item, but we would love to help you find a new pair. This warranty gives you specific legal rights, and you may also have other rights which vary from State to State.

CLASS ACTION COMPLAINT

24.     Crocs also creates additional express warranties and implied warranties of merchantability and fitness for a particular purchase through its advertisements and marketing materials and by application of law. As described further below, Crocs makes express representations that its Products are "water shoes," "water sandals," "water and swim shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "pool party," "perfect for the pool," "the perfect choice for gardening," "beach bum," and "water and swim shoes," "water-friendly," "pool" or "beach" shoes that were suitable for use in all environments, including in water and hot sunny environments, such as the garden, lake, river, beach and poolside.

25.     The implied warranty of merchantability arises both under California law, California Commercial Code § 2314, as a result of Crocs' status as a merchant selling consumer goods, and under the Magnuson-Moss Warranty Act, by law as a result of Crocs' offer of an express written warranty. The implied warranty "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995) (quotation omitted). Consumers who purchase Crocs from other retailers are third party beneficiaries of Crocs implied warranty of merchantability to those retailers as a result of Crocs marketing, advertisement, and sales because, at a minimum, Crocs' Limited Warranty makes clear that end consumers, and not Crocs' retail partners, are the intended beneficiaries of Crocs' warranties.

26.     The implied warranty of fitness for a particular purpose arises under California law, California Commercial Code § 2315, as a result of Crocs' status as a merchant selling consumer goods specifically for use in outdoor environments involving sun, heat, and water. Crocs knew that Plaintiffs and other consumers were looking specifically for shoes for outdoor work, recreation and sunny, hot environments including gardens, lakes, rivers, beaches and pools, and that consumers relied on Crocs to identify which of its shoes were fit for that particular purpose. Moreover, Crocs took on that role by specifically advertising that its Croslite shoes were fit for those environments, both on its web site and in advertisements. Consumers who purchase Crocs from other retailers are third party beneficiaries of Crocs implied warranty

1  of fitness for a particular purpose because Crocs' Limited Warranty makes clear that end

2  consumers are the intended beneficiaries of Crocs' warranties. Also, because Crocs

3  affirmatively engages in conduct directly with purchasers that functionally places it in the

4  position of the direct seller, even consumers who purchase Crocs from other retailers are

5  beneficiaries of Crocs implied warranty of fitness for a particular purpose. *See, e.g., Cardinal*

6  *Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 144 (2008).

7        27.    Crocs has breached, and continues to breach, its express and implied warranties.

8  It breaches its express limited warranty by selling shoes that are defective at the time of

9  purchase because they are made of material that shrinks when exposed to ordinary

10  environmental conditions such as sunlight, heat, and/or water. Crocs similarly breaches its

11  implied warranty of merchantability because shoes that shrink if exposed to sun, heat, and/or

12  water fall below a minimum level of quality for ordinary use as shoes. Crocs breaches its

13  implied warranty of fitness for a particular purpose because it advertises its shoes as suitable for

14  uses in those environments, when they are not.

15                   **Defendant's Deceptive Advertisements, Misrepresentations, and Omissions**

16        28.    In conjunction with its sales of the Products, Crocs marketed and advertised the

17  shoes for uses that would routinely result in their exposure to sunlight, heat, and/or water, while

18  simultaneously omitting disclosure of the fact that doing so causes them to shrink to the point

19  they no longer fit.

20        29.    For example, Crocs sells "water shoes," "water sandals," "water and swim

21  shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "the perfect

22  choice for gardening," "pool party," "perfect for the pool," "beach bum," and "water and swim

23  shoes," "water-friendly," "pool" or "beach" shoes that were suitable for use in all environments,

24  including in water and hot sunny environments, such as the garden, lake, river, beach and

25  poolside. Since people ordinarily garden or visit the rivers, lakes, the beach and pools during

26  hot, sunny summer months, these representations create the impression that the Products are

27  suitable for use in hot, sunny, and wet environments.

28

30.     Crocs also sells "all-terrain" Croslite shoes, which it advertises as "ready for it all, including even the harshest environments. "All terrain" includes hot, sunny, and wet terrains, thereby again creating the impression that the Products are suitable for use in hot, sunny, and wet environments.

31.     Crocs has also sold tropical lines of Croslite shoes, which they touted was for "warm sand by the beach," again creating the impression that Crocs are designed for use in sunny, hot, wet environments.

32.     Crocs also advertises certain of its shoes as "water shoes," "water sandals," "water and swim shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "the perfect choice for gardening," "pool party," "perfect for the pool," "beach bum," "water and swim shoes," and as "shed[ding] water" and "water-friendly."

33.     Crocs also routinely used images of the Products in sunny, warm, and water environments in their advertisements.

34.     For example, the screenshot below shows a Crocs advertisement on Facebook with Crocs displayed on a sunny beach with tropical vegetation.



CLASS ACTION COMPLAINT

35.     The screenshot below shows a Crocs advertisement on Facebook with Crocs displayed against a pool, with water refracting intense sunlight.



36.     The screenshots below show more Crocs advertisements on Facebook with Crocs displayed again on a warm, sunny beach.



CLASS ACTION COMPLAINT

37.     The screenshot below shows a Crocs advertisement on its own website of Crocs' "tropical collection," suggesting the shoes are appropriate for sunny, warm, wet tropical environments.



38.     The screenshot below shows a Crocs advertisement on Facebook of depicting Crocs being worn in a sunny, hot desert environment:



CLASS ACTION COMPLAINT

39.     Crocs also advertised that its Croslite shoes were suitable for use for gardening, which normally involves exposure to sun and heat, as well as exposure to water. See, e.g.,



https://www.crocs.com/stories/best-shoes-for-gardening.html ("Why Crocs make the best gardening shoes"). The screenshot below also shows a Crocs advertisement depicting Crocs being worn in a sunny, garden environment:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   40.   A reasonable consumer would expect and rely on Crocs' advertisements,
23   including those showing the shoes being used in hot, sunny, and/or wet environments, to
24   truthfully and accurately reflect the features and performance abilities of the Products.

25   41.   Further, by repeatedly and prominently advertising its Croslite shoes are suitable
26   for use in hot, sunny, and/or wet environments, Crocs created a duty to disclose to consumers
27   that its Croslite shoes would shrink when exposed to heat, sun, and/or water, particularly since
28   this was a material fact central to the shoes' core function.

**Shoes Made of Croslite Shrink When Exposed to Sun, Heat, and Water**

42.    Crocs are made of a patented foam called Croslite. Croslite is a foamable ethylene vinyl acetate (EVA) along with polyolefin elastomer. The EVA material is trade-named Levirex.

43.    Croslite contracts upon exposure to water, heat, and/or sunlight over time, which causes consumer products made of Croslite to shrink. Many consumers wear the Products in hot, sunny environments that involve water—such as gardens, lakes, rivers, beaches and poolside—and take the shoes off in those environments. Given that the Products are marketed as waters shoes, water sandals, all terrain shoes and outdoor shoes, consumers often leave them outside for hours or days at a time. This results in routine prolonged exposure to sun, heat, and water while the purchaser is not wearing the shoes, which invariably causes the Products to shrink to the point they no longer fit.

44.    Because of their misrepresentations and deception, Plaintiffs and Class Members paid a premium for their Crocs shoes. Had Plaintiffs and Class Members known that the Products would shrink if left exposed to heat, sun, or water while not being worn, they would not have purchased the Products or would have paid significantly less for them.

45.    In purchasing the Products, Plaintiffs and Class Members did not receive the full value that they were led to believe they would receive.

**Crocs Knew the Products Shrink, But Intentionally Refused to Inform or Warn Consumers**

46.    Defendant has been selling Products made of Croslite since it released the first model in 2001. Defendant sells the Products through its own retail stores and online, as well as through authorized retailers, which include DSW, Walmart, Amazon, etc...

47.    Defendant is deeply familiar with the chemical properties of Croslite and invests in research and development efforts as to the materials it uses for its products. Defendant's December 31, 2015 10-K, for instance, touts "[o]ur products include footwear and accessories that utilize our proprietary closed-cell resin, called Croslite."

48.     Defendant formulates Croslite by sourcing the materials used to create it from third parties and "protect[s] the formula by using exclusive supply agreements for key components, confidentiality agreements with our third-party processors" among other things. *Id*. With the Croslite, Defendant manufactures the Products.

49.     Defendant has been aware that its Products made of Croslite shrink when exposed to the elements including direct sunlight, heat, and/or water. Crocs itself received thousands of complaints regarding the shrinkage problems, but still refused to acknowledge the design defect with a point of sale warning, disclaimer or even an FAQ on its website, so as not to compromise additional sales. The following are but a few of the consumer posts on Crocs' own website:

- I had black ones that were my gardening crocs and i loved them but regretfully I left them in my car one hot day this summer. Who knew - crocs shrink in the heat! I wouldn't have had to buy new ones if they hadn't shrunk but I do like the aqua color of my new ones! Still using them for gardening.

- This purchase was a replacement for a pair of crocs that shrunk when placed near the floor register. Croc would not replace them under warranty. I was stuck purchasing a new pair.

- Shrinks in Sunlight

- [A]fter getting wet and drying in the sun a few times, I could barely get them 1/2 way on my feet. I normally take a 10 1/2, had to upsize to 11 cuz they don't offer 1/2 sizes. Love the shoes, but be aware that the plastic can shrink and stiffen from exposure to sun and water.

- If left outside or in sun they shrink rather quickly.

- Only thing is, do not leave outside in hot weather, they shrink.

- Hot cars make them shrink a full size. Luckily mom can wear them after they shrink.

- The new material used to make Crocs is not good at all!! The old material could be left in the sun with no problems. Now they shrink three sizes and don't fit. My husband has had to buy 3 new pair in the last 6 weeks!!!

- The only issue we have with this product is when my [daughter] was at a friends [sic] house over the summer she went swimming and upon putting her Crocs back on they had shrunk, apparently from being in the sun. As a consumer that is very disappointing because you would think this is the perfect product for beach and pool. I had never heard of any shoes shrinking in the sun. For the price of the shoes that was very disappointing. People of all ages love Crocs and state that they are the one of the most comfortable shoes on the market. I would hope that there is something that the Crocs Manufacturer

can do to rectify this problem or at least replace the shoes at no charge to the consumer if this should happen to them.

• My favorite shoe but I am hesitant to buy again bc multiple times 1 shrinks like a lot

• They shrink in the heat (which is what sandals are for...)

• These shrunk/deformed after a trip to Mexico. I realize the heat can be extreme, but I have never had a shoe shrink before. These were borderline too big for me, and now my foot falls over them. They literally shrunk 2- 3 sizes. One more than the other. I wore them 4 times. (All my other shoes fit fine and I have measured them against the others to confirm that I didn't go crazy/have an adult growth spurt.)

• Please get a size bigger then what you normally wear they will shrink

• Bought these for the garden and yard but they shrunk when they dried out on my deck now I can't wear them

*See* https://www.crocs.com/p/classic-clog/10001.html?cgid=outlet-men&cid=75U (last visited November 15, 2022).

50.  Defendant is also aware of numerous complaints online on third-party websites regarding the shrinkage defect, as well as online instructions from third-parties on how to stretch the Products back to their original size. *See, e.g.,* https://feet.thefuntimesguide.com/shrink_crocs_shrunk/ ("How to Unshrink Crocs"); https://styleandrun.com/unshrink-crocs/ ("Crocs Shrink in the Sun: Here's How to Unshrink Them").

51.  Defendant has even admitted in communications to retail stores carrying the Products that it knew the Products shrank after exposure to sun and/or water. For example, when Plaintiff Cornejo attempted to return her shoes to the DSW retail store where she purchased them, the store clerk informed her that Crocs had acknowledged the issue in correspondence to DSW. Despite this, the representative said there was nothing the store could do.

52.  But Defendant does not disclose or otherwise warn consumers about the shrinkage problem because shoes that do not fit are worthless to consumers, and consumers are not willing to pay as much for shoes that will invariably shrink to the point they no longer fit. Despite this, Defendant does not place any notice or warning on the Products informing

1  consumers of shrinkage upon exposure of the Products to sun, heat, or water, nor even include

2  instructions to store the Products in a dark, cool, dry space when not in use.

3       53.    Defendant's motive to conceal this information from consumers goes beyond

4  simply hiding the problems with its Products. It allows Defendant to significantly boost profits

5  because it causes consumers to *buy more Products*. The reason is simple. When a consumer

6  buys a shoe that shrinks to the point it is no longer wearable, it means the consumer will in all

7  likelihood buy a replacement. Because ordinary shoes do not shrink in size (and reasonable

8  consumers do not expect shoes to shrink), this gives Defendant an incredible advantage over

9  competitors since it means consumers will buy replacement Products, and, if they do figure out

10 why the Crocs shrunk, endeavor not to expose them to direct sun, water or heat.

11      54.    A graph in Defendant's December 31, 2021 10-K illustrates how powerful this

12 advantage is:



13

14

15

16

17

18

19

20

21

22      55.    The Dow Jones U.S. Footwear Index includes companies that Defendant itself

23 identifies as competitors, such as NIKE, Inc., Deckers Outdoor Corporation, Sketchers U.S.A.,

24 Inc., Steve Madden Ltd., and Wolverine Worldwide, Inc.

25      56.    Further, Defendant's December 31, 2021 10-K states that "[t]he Americas

26 segment grew revenues 86.1% for the year ended December 31, 2021 compared 2020, as a

27 result of higher volume and higher ASPs in both our wholesale and DTC channels."

28

CLASS ACTION COMPLAINT

57.     Defendant's ability to generate such high "volume" is in large part due to the fact that the Products shrink to the point they must be replaced.

## PLAINTIFFS' ALLEGATIONS

### Martha Valentine

58.     Plaintiff Martha Valentine purchased a new pair of Crocs Classic Bae shoes on eBay from her home in San Francisco, California in Spring of 2022, for use during a summer trip to Maine. After arriving in Maine and wearing the shoes in hot, muggy, rainy weather, she discovered that the Product shrank such that they no longer fit her well. Ms. Valentine was unsure why the shoes no longer fit well, as she had seen Crocs advertised as "shed[ding] water" and "water-friendly," "all-terrain," and "pool party." She had been attracted to the roomy fit of the Crocs and had believed that they could not shrink due to their curable plastic construction.

59.     Ms. Valentine later learned that Crocs shoes made of Croslite could shrink when exposed to sun, heat, and/or water. She had used the shoes outdoors extensively, and had often taken them off and left them in the sun and warm weather, while swimming, as well as after rain. In light of the exposure of the Product to sun, heat, and/or water, Ms. Valentine later realized that her Crocs shoes had shrunk because they were constructed of a material that shrank on exposure to these elements.

60.     While Plaintiff Valentine had exposed the shoes to normal Maine sun and hot weather, she had not placed or stored the shoes in any environment that was outside the range which she expected an ordinary pair of shoes to endure.

61.     Plaintiff Valentine purchased the Crocs shoes primarily for personal, family, or household use. More specifically, she purchased them to wear during outdoor recreational activities like hiking and going to the beach or lake to swim.

62.     Plaintiff Valentine purchased the Crocs shoes based on Defendant's representation as "shed[ding] water" and "water-friendly,". and would mold to her feet to "fit perfectly." She remembers seeing ads that touted the shoes suitability for use in summery outdoor environments, such as one for Crocs with a camo print being used for backpacking.

63.     Plaintiff Valentine purchased the Crocs shoes after she reviewed Defendant's marketing materials, which indicated the shoes were appropriate for outdoor use in sunny, warm weather. Plaintiff Valentine also reviewed the packaging for the shoes, and saw no warnings that they were not appropriate for use in sunny, warm, or wet environments.

64.     Plaintiff Valentine paid for the Product under the mistaken belief that the shoes were durable and capable of withstanding the sun, heat, and water; that the shoes were of quality for ordinary use as shoes; that the shoes were fit for the specific purpose of use in sun and heat; and would remain their represented shoe size. If she had known that the shoes were not fit for these purposes and/or normal use would cause a significant reduction in shoe size rendering them unwearable for her, she would not have purchased the Product, or would have paid less for it.

65.     Ms. Valentine continues to be interested in Crocs shoes, and in particular the Crocs Classic Bae model of shoes that she previously purchased, and similar Crocs shoes marketed as suitable for outdoor use in sun, heat, and water. However, she does not know whether Crocs shoes she may purchase in the future will be subject to the same defect, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

**Ruby Cornejo**

66.     Plaintiff Ruby Cornejo purchased a pair of Classic Crocs shoes from a DSW shoe store in Elk Grove, California around March of 2022 to use while working outdoors. Ms. Cornejo saw advertisements that the shoes were capable of "shed[ding] water" and were "water-friendly," and that they were suitable for use for gardening.  She also was aware that Crocs were supposed to mold to her feet to "fit perfectly." She also saw a web page that touted the use of Crocs for gardening, which she believes was a version of the web page at https://www.crocs.com/stories/best-shoes-for-gardening.html.

67.     Around two months after Plaintiff Cornejo's purchase, she discovered that they had inexplicably shrunk to the point where they no longer fit her. She took them back to the

1    DSW store and compared them to new Crocs of the size she originally purchased; based on that

2    comparison, she learned that the Crocs shoes had shrunk at least a full size.

3         68.    Ms. Cornejo asked DSW to replace the shoes, but was told by the DSW

4    employee she could not replace them or get a refund because Ms. Cornejo had not returned

5    them within 60 days of purchase. The DSW employee further informed Ms. Cornejo that the

6    store had received a communication from Crocs informing the store of problems with Crocs

7    shoes shrinking upon exposure to sun, heat, or water. Ms. Cornejo told the employee that this

8    appeared to be a defect and stated that the store should replace the shoes. The DSW employee

9    refused to do so.

10        69.    While Plaintiff Cornejo had exposed the shoes to normal sun and warm weather

11   that was common for her California domicile, she had not placed or stored the shoes in any

12   environment that was outside the range which she expected an ordinary pair of shoes to endure.

13        70.    Plaintiff Cornejo purchased the Crocs shoes primarily for personal, family, or

14   household use. More specifically, she purchased them to wear in her yard while gardening, and

15   for similar activities.

16        71.    Plaintiff Cornejo purchased the Crocs shoes based on Defendant's

17   representations that they were capable of "shed[ding] water," were "water-friendly," "perfect

18   for the garden," "perfect for the pool," "all-terrain," "pool party," and "beach bum," and would

19   mold to her feet to "fit perfectly." Based on those representations, she believed the Crocs shoes

20   would remain the represented shoe size.

21        72.    Plaintiff Cornejo purchased the Crocs shoes after she reviewed Defendant's

22   marketing materials, which indicated the shoes were appropriate for outdoor use in sunny, warm

23   weather. Plaintiff Cornejo also reviewed the packaging for the shoes, and saw no warnings that

24   they were not appropriate for use in sunny, warm, or wet environments.

25        73.    Plaintiff Cornejo paid for the Product under the mistaken belief that the shoes

26   were durable and capable of withstanding the sun, heat, and water; that the shoes were of

27   quality for ordinary use as shoes; that the shoes were fit for the specific purpose of use in sun

28   and heat; and would remain their represented shoe size. If she had known that the shoes were

not fit for these purposes and/or normal use would cause a significant reduction in shoe size, rendering them unwearable for her, she would not have purchased the Product, or would have paid less for it.

74.    Plaintiff Cornejo sent a letter to Defendant on or about July 17, 2022, informing it of the defect and its violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, Song-Beverly Consumer Warranty Act, California Civ. Code §§ 1790, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), the Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ("CLRA"), and California's common law of express and implied warranty, negligent misrepresentation and/or omission, and has been unjustly enriched, in connection with its labeling, advertising, marketing, and sale of Crocs® shoes.

75.    In response, Defendant declined to take any steps to cure the defect, warn the public, or ensure that future purchasers would not be similarly harmed.

76.    Ms. Cornejo continues to be interested in Crocs shoes, and in particular the Classic model of Crocs shoes that she previously purchased, and similar Crocs shoes marketed as suitable for outdoor use in sun, heat, and water. But she does not know whether Crocs shoes she may purchase in the future will be subject to the same defect, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

## CLASS ALLEGATIONS

77.    Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

**Class**: All persons in who purchased, in the United States, the Products from November 22, 2018 to the present.

**California Subclass**: All Class Members who purchased the Products in the State of California.

78.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

79.     Numerosity: Plaintiffs do not know the exact size the Class/Subclass, but they estimate that each is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

80.     Common Questions Predominate: This action involves common questions of law and fact to the Class/Subclass because each class member's claim derives from the deceptive, misleading, and/or false statements and omissions that led them to believe that the Products were suitable for everyday use and could withstand routine exposure to sun, heat, and water. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class/Subclass to recover. The questions of law and fact common to the Class/Subclass are:

   a.     Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented to the Class/Subclass that its Products were capable of withstanding routine use and storage in warm, sunny, or wet environments;

   b.     Whether Defendant made express warranties to the Class/Subclass;

   c.     Whether the Products came with implied warranties that they are merchantable and/or fit for a particular purpose;

   d.     Whether Defendant's actions violate Federal and California laws invoked herein;

   e.     Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

   f.     Whether Defendant's representations or omissions are material to reasonable consumers;

   g.     Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

h.    The amount of profits and revenues earned by Defendant as a result of the conduct;

i.    Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j.    Whether Class/Subclass members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

81.    Typicality: Each Plaintiff's claims are typical of the claims of the other members of the Class/Subclass because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class/Subclass were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

82.    Adequacy of Representation: Each Plaintiff will fairly and adequately protect the interests of all Class/Subclass members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which she complains. Each Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class/Subclass members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class/Subclass. By prevailing on their claims, Plaintiffs will establish Defendant's liability to all Class/Subclass members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class/Subclass members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

83.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to

which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class/Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

84.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Breach of Express Warranty)**
**On Behalf of Plaintiffs and the California Subclass**

85.     Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

86.     This cause of action is brought pursuant to California Commercial Code § 2100, *et seq.*, as well as the common law.

87.     Each Plaintiff, and those similarly situated, were "buyers" of goods as defined in Cal. Com. Code § 2103.

88.     Defendant is a "seller" and "merchant" as those terms are defined in Cal. Com. Code §§ 2103 and 2104.

89.     The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

90.     Defendant provided express warranties for the Products, both in the "Limited Warranty" quoted above, promising the shoes are free of defects, and in misleading advertising and marketing promising the shoes "shed water," are "water-friendly," "all-terrain," "pool," "garden," and "beach" appropriate. Defendant further promises that its shoes will fit well, as

described above. The Crocs Limited Warranty and Crocs' affirmative descriptions of the Products were made part of the basis of the bargain and thereby created an express warranty that the Products conformed to that description pursuant to the UCC express warranty provisions adopted by California under Cal. Com. Code § 2313. Plaintiffs and Class Members thereby relied upon such warranty. Consumers, not retailers, were the intended beneficiaries of the Limited Warranty. See Cal. Civ. Code § 1559 (allowing a third-party beneficiary to enforce a contract made expressly for his or her benefit). The warranty was a material factor in the decision of Plaintiffs and those similarly situated to purchase the Products at the price they paid, and became part of the basis for the transaction. By law, each Plaintiff and Class Members have entered into certain express warranty agreements directly with Defendant.

91.     The Limited Warranty further provides: "There are no warranties which extend beyond those indicated herein," which is in the exact same font, size and formatting as the rest of the language in the Limited Warranty. It is buried in the middle of the paragraph and is not bolded, in large print or otherwise adequately conspicuous to a reasonable consumer to disclaim other express warranties. It is also not on the Product itself. Thus, any attempt from Defendant to disclaim express or implied warranties failed.

92.     Specifically, the express Limited Warranty provided that the Products were free of defects. In fact, they were actually manufactured using a defective material not capable of withstanding normal environmental conditions that they would be exposed to in the normal course of use, such as sun, heat, and water.

93.     Defendant further stated the Products were "water-friendly" and otherwise suitable for hot, sunny, and wet environments, as explained above. Crocs additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would maintain a good fit. Despite these affirmative misrepresentations in advertisements and marketing materials, Defendant breached the express warranty to each Plaintiff and Class Members when it delivered to them Products that were not made of a material capable of maintaining the expected size and shape of the shoes when exposed to sunlight, heat, and/or water.

94.     The defect in the Products were not apparent at the time of purchase because Defendant knowingly and intentionally failed to disclose that the Products' Croslite material shrinks when exposed to sun, heat, and/or water and the shrinkage causes a significant reduction in shoe size.

95.     As a direct and proximate result of the Defendant's breach of the express warranties, Plaintiffs and each member of the class have suffered damages, in that the Products they purchased were so inherently flawed, unfit, or unmerchantable as to have significantly diminished or no intrinsic market value. Plaintiff, individually and on behalf of the class, seeks all damages permitted by law, including compensation for the cost of purchasing Products, along with all other incidental and consequential damages, equitable relief, and all other relief allowed by law.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)**
**On Behalf of Plaintiffs and the California Subclass**

96.     Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

97.     This cause of action is brought pursuant to California Commercial Code § 2100, *et seq.*, as well as the common law.

98.     Each Plaintiff, and those similarly situated, were "buyers" of goods as defined in California Commercial Code § 2103.

99.     Defendant is a "seller" and "merchant" as those terms are defined in California Commercial Code §§ 2103 and 2104.

100.    The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

101.    A warranty that the Products were in merchantable condition and fit for the ordinary purpose for which the Products are used is implied by law pursuant to Cal. Com. Code § 2314. Consumers, not retailers, were the intended beneficiaries of this implied warranty, as demonstrated by Crocs' Limited Warranty, which was clearly written with consumers, not

1   retailers, in mind as beneficiaries. *See* Cal. Civ. Code § 1559 (allowing a third-party beneficiary

2   to enforce a contract made expressly for his or her benefit).

3       102.   The Defendant sold Products that were not in merchantable condition and/or fit

4   for their ordinary purpose in violation of the implied warranty. Unbeknownst to Plaintiffs and

5   the California Class, the Products were designed such that they shrink and become completely

6   unwearable when exposed to ordinary amounts of sun, heat, and water. This was a defect that

7   made the Products unsuitable for ordinary use. The Products are intended to be worn as shoes;

8   however, the defect causes the Products to shrink in shoe size to the point where they no longer

9   fit the intended user and, thus, are rendered useless. This defect was known to Defendant and

10  not reasonably discoverable prior to purchase by Plaintiffs or class members. The Products were

11  not in merchantable condition or fit for their ordinary purpose due to the defect.

12      103.   As explained above, to the extent there were disclaimers, if any, they were not of

13  a size, type, and location that would adequately inform a reasonable consumer that the Products

14  alleged herein were not as represented. Crocs' Limited Warranty attempted to limit the duration

15  of the implied warranty of merchantability to 90 days from the date of sale, but failed to do so in

16  conspicuous terms that were available to the consumer at the time and point of purchase.

17      104.   Crocs breached the implied warranty of merchantability to each Plaintiff and

18  Class Members when it delivered to them Products that would fail to maintain their expected

19  size and shape and become unusable when exposed to ordinary sunlight, heat, and/or water.

20      105.   The defects in the Products were not apparent at the time of purchase because

21  Defendant failed to disclose that the Croslite material from which the Products are made shrinks

22  when exposed to ordinary sun, heat, or water.

23      106.   As a result of Defendant's sale of the Products that do not perform as warranted

24  and are unfit for expected use, each Plaintiff, and those similarly situated, have suffered

25  damages in the amount to be proved at trial.

26

27

28

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty of Fitness for a Particular Purpose, Cal. Com. Code § 2315)**
**On Behalf of Plaintiffs and the California Subclass**

107.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

108.    This cause of action is brought pursuant to California Commercial Code § 2100, *et seq.*, as well as the common law.

109.    Each Plaintiff, and those similarly situated, were "buyers" of goods as defined in California Commercial Code § 2103.

110.    Defendant is a "seller" and "merchant" as those terms are defined in California Commercial Code §§ 2103 and 2104.

111.    The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

112.    Defendant created an implied warranty that the Products were in fit for the particular purpose of footwear for use in hot, sunny, and/or wet environments by law pursuant to Cal. Com. Code § 2315. Defendant sold consumer goods specifically for use in outdoor environments involving sun, heat, and water. Defendant knew that Plaintiffs and other consumers were looking specifically for shoes for outdoor recreation and sunny, hot environments including gardens, lakes, rivers, beaches and pools, and that consumers relied on Crocs to identify which of its shoes were fit for that particular purpose. Defendant took on that role by specifically advertising that its Croslite shoes were fit for those environments, both on its web site and in advertisements. Consumers, not retailers, were the intended beneficiaries of this implied warranty, as demonstrated by Crocs' Limited Warranty, which was clearly written with consumers, not retailers, in mind as beneficiaries. *See* Cal. Civ. Code § 1559 (allowing a third-party beneficiary to enforce a contract made expressly for his or her benefit). Because Crocs affirmatively engages in conduct directly with purchasers that functionally places it in the position of the direct seller, even consumers who purchase Crocs from other retailers are

1  beneficiaries of Crocs implied warranty of fitness for a particular purpose. *See Cardinal Health*

2  *301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 144 (2008).

3  113.  As explained above, to the extent there were disclaimers, if any, they were not of

4  a size, type, and location that would adequately inform a reasonable consumer that the Products

5  alleged herein were not as represented. Crocs' Limited Warranty attempted to limit the duration

6  of the implied warranty of fitness for particular purpose to 90 days from the date of sale, but

7  failed to do so in conspicuous terms that were available to the consumer at the time and point of

8  purchase.

9  114.  Crocs breached the implied warranty of fitness for a particular purpose to each

10  Plaintiff and Class Members when it delivered to them Products that would fail to maintain their

11  expected size and shape and become unusable when exposed to ordinary sunlight, heat, and/or

12  water.

13  115.  The defects in the Products were not apparent at the time of purchase because

14  Defendant failed to disclose that the Croslite material from which the Products are made shrinks

15  when exposed to ordinary sun, heat, or water.

16  116.  As a result of Defendant's sale of the Products that do not perform as warranted

17  and are unfit for expected use, each Plaintiff, and those similarly situated, have suffered

18  damages in the amount to be proved at trial.

19

20  **PLAINTIFFS' FOURTH CAUSE OF ACTION**
  **(Violation of the Song-Beverly Consumer Warranty Act For Breach of Implied Warranty**

21  **of Merchantability, Cal. Civ. Code §§ 1791.1 and 1792)**
  *On Behalf of Plaintiffs and the California Subclass*

22  117.  Plaintiffs reallege and incorporate by reference the above paragraphs of this

23  Class Action Complaint as if set forth herein.

24  118.  Plaintiffs and members of the Subclass are "buyers" within the meaning of Cal.

25  Civ. Code § 1791(b).

26  119.  The Products are "consumer goods" within the meaning of Cal. Civ. Code §

27  1791(a).

28

120.    Defendant is a "manufacturer" within the meaning Cal. Civ. Code § 1791(j).

121.    The Products are not "clothing" within the meaning of Cal. Civ. Code § 1791(c) because they are not "composed primarily of woven material, natural or synthetic yarn, fiber, or leather or similar fabric"; rather, the Products are made of Croslite, a 100% synthetic material.

122.    Defendant impliedly warranted to Plaintiffs and the Class that the Products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Products do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

1.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)  Pass without objection in the trade under the contract description.
(2)  Are fit for the ordinary purposes for which such goods are used.
(3)  Are adequately contained, packaged, and labeled.
(4)  Conform to the promises or affirmations of fact made on the container or label.

123.    The Products would not pass without objection in the trade because of the defect in the Products, as described above.

124.    Because of the defect in the Products, they are also not in merchantable condition and thus not fit for ordinary purposes. Unbeknownst to Plaintiffs and the California Subclass, the Products were designed such that they would shrink, even with normal use and storage consistent with the label and Defendants' marketing and advertising materials. This was a defect that made the Products unfit for the ordinary purposes for which such goods are used. This defect was only known to Defendants and not reasonably discoverable prior to purchase by Plaintiffs or class members.

125.    The Products are not adequately labeled because the labels fail to include any warning or disclaimer regarding the known defect.

126.    Defendant breached the implied warranty of merchantability and caused damage to Plaintiffs and the California class members who purchased the Products since they did not receive the benefit of their bargain.

127.    Notice of breach was provided to Defendant, as discussed herein. Alternatively, notice of breach is not required because the Plaintiffs and the California Subclass did not purchase the Products directly from Defendant. Further, Defendant had notice of these issues by its knowledge of the issues as described above.

128.    Any effort by Defendant to disclaim the implied warranty of merchantability was null and void because the Products were purchased off-the-shelf from brick and mortar or online retailers not sold on an "as is" or "with all faults" basis per Cal. Civ. Code § 1792.3. Further, because Defendant made express warranties as described above, it could not disclaim the implied warranty of merchantability under Cal. Civ. Code § 1793.

129.    As a direct and proximate result of Defendant's breach of implied warranty of merchantability, Plaintiffs and the California Subclass received goods whose condition substantially impairs their value.

130.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the California Subclass seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**PLAINTIFFS' FIFTH CAUSE OF ACTION**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**
**On Behalf of Plaintiffs and the Class**

131.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

132.    This cause of action is brought pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA").

133.    Each Plaintiff and members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

134.   Each Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5), respectively.

135.   The Products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

136.   Section 2310(d)(1) of the Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

137.   The amount in controversy of each Plaintiff's individual claims meet or exceed $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit since each Plaintiff has over $50,000 in attorneys' fees.

138.   Defendant's express warranties are written warranties within the meaning of the Act, pursuant to 15 U.S.C. § 2301(6). Crocs' implied warranties are covered under the Act, pursuant to 15 U.S.C. § 2301(7).

139.   Defendant provided express and implied warranties for the Products, both in the "Limited Warranty" that Crocs made, promising the shoes are free of defects, and in misleading advertising and marketing promising the shoes were "water-friendly," "all-terrain" and suitable for hot, sunny, and wet environments. Crocs additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet fit well. The Crocs Limited Warranty and Defendant's affirmative description of the Products was made part of the basis of the bargain and thereby created an express warranty that the Products conformed to that description, and an implied warranty of merchantability, created by law. Plaintiffs and class members thereby relied upon such warranty. Consumers, not retailers, were the intended beneficiaries of this implied warranty, as demonstrated by Crocs' Limited Warranty, which was clearly written with consumers, not retailers, in mind as beneficiaries. *See* Cal. Civ. Code § 1559 (allowing a third-party beneficiary to enforce a contract made expressly for his or her benefit). The warranty was a material factor in the decision of Plaintiffs and those similarly situated to purchase the Products at the price they paid, and became part of the basis for the transaction. By law, each Plaintiff and class

members have entered into certain express and implied warranty agreements directly with Defendant.

140.    Specifically, the express Limited Warranty provided that the Products were free of defects when they were actually manufactured using a defective material not capable of withstanding normal environmental conditions such as sun, heat, and water because it contracts to the point that it renders the Products unwearable.

141.    To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that the Products alleged herein were not as represented.

142.    Defendant breached these express and implied warranties to Plaintiffs and class Members when it delivered to them Products that were not made of a material capable of maintaining the expected size and shape of the shoes when exposed to sunlight, heat, and/or water.

143.    The defects in the Products were not apparent at the time of purchase because Defendant intentionally failed to disclose that the Croslite material from which the Products were made shrinks when exposed to sun, heat, or water and the shrinkage causes a significant reduction in shoe size.

144.    Defendant further violated the MMWA by failing to provide the terms of its limited warranty to consumers at (or before) the point of sale. *See* 16 C.F.R. §§ 702 et seq,. including § 702.3(b)(1)(i) ("A warrantor who gives a written warranty warranting to a consumer a consumer product actually costing the consumer more than $15.00 shall: Provide sellers with warranty materials [as described in subparts (a)-(d)]"). Defendant does not disclose the written warranty with the Products, nor disclose it electronically in compliance with 16 C.F.R. ¶ 702.3(b).

145.    Plaintiffs and each member of the Class had sufficient direct dealings with either Defendant or its agents to establish privity of contract between Defendant and each member of the Class. Privity, however, is not required here because Plaintiffs and each member of the Class, are intended third-party beneficiaries of contracts between Defendant and its retail

distributors, and specifically, they are intended beneficiaries of Defendant's express and implied warranties. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit the ultimate consumers like Plaintiffs and class members only.

146.   Affording Defendant a reasonable opportunity to cure its breach of the warranties would be unnecessary and futile. At the time of sale of each Product, Defendant knew, or should have known, that the Products failed to comply with the express and implied warranties, but nonetheless failed to rectify the situation and/or disclose the defects. In addition, despite receiving notice of the breach, Defendant has not made any effort to resolve the defect with the Products.

147.   As a direct and proximate result of the Defendant's breach of the written and implied warranties, Plaintiffs and each member of the class have suffered damages, in that the Products they purchased did not include the features that they paid for. Each Plaintiff, individually and on behalf of the class, seeks all damages permitted by law, including compensation for the cost of purchasing the Products, along with all other incidental and consequential damages, statutory attorney fees, equitable relief, and all other relief allowed by law.

**PLAINTIFFS' SIXTH CAUSE OF ACTION**
**(Fraudulent Concealment)**
**On Behalf of Each Plaintiff and the Class**

148.   Each Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

149.   Defendant committed fraud by intentionally concealing, suppressing, and failing to disclose material facts regarding the Products, including that the Products will not retain their represented size at purchase because Croslite shrinks when exposed to ordinary sunlight, heat and/or water.

150.    These omitted and concealed facts were material to consumers because they would be relied on by a reasonable person purchasing shoes. Such individuals reasonably believe that the shoes they purchase will retain the size represented to them at purchase even when exposed to ordinary sunlight, water and/or heat. The ability of a shoe to maintain its size during exposure to common environmental conditions is a material fact that is central to the shoe's function. Shoes that do not retain their represented size at purchase, like the Products, are worth far less than shoes that do. The omitted and concealed facts were, thus, also material because they directly impact the value of the Products purchased since they effectively last for a shorter duration than shoes that do not shrink.

151.    A reasonable consumer would not have expected the Products to shrink in real world conditions and become unwearable such that they are unfit for use. Reasonable consumers expect that shoes will remain the same size as at purchase and that ordinary exposures to sunlight, heat and/or water will not affect the size of a shoe. Plaintiffs and class members did not know of the facts which were concealed from them by Defendant.

152.    Defendant has a duty to disclose the Products will not retain their represented size at purchase because Croslite shrinks when exposed to ordinary sunlight, heat and/or water. Defendant had a duty to disclose such facts because a) the true facts were known and/or accessible only to them Defendant and b) the true facts were not known to or reasonably discoverable by Plaintiffs and the class members. Further, Defendant had a duty to disclose because it made partial representations that were misleading since it concealed the aforementioned facts. Such partial representations include Defendant's representation that the Products were a certain size, were "water-friendly", and/or suitable for warm, sunny environments, as described above. Crocs additionally made representations and statements that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

153.    Had the truth been revealed, Plaintiffs and class members would not have purchased the Products, or would have paid less for them. Accordingly, Defendant is liable to Plaintiffs and the members of the class for damages in an amount to be proven at trial.

154.     Defendant's acts were done deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the class members; and to enrich themselves. Their misconduct warrants assessment of punitive damages in an amount sufficient to deter such conduct in the future, which shall be determined at trial.

### PLAINTIFFS' SEVENTH CAUSE OF ACTION
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Each Plaintiff and the Class**

155.     Each Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

156.     As set forth above, Defendant falsely and/or deceptively represented to each Plaintiff and those similarly situated that the Products were free of defects, were merchantable for use as shoes, and were "all-terrain," "water-friendly," and suitable for hot, sunny, and wet environments when, in fact, the Products were not. Defendant knew that the Products were not "water-friendly" or suitable for use on all-terrain, the beach, pools, or any other environments that would expose the Products to sun, heat, or water, yet advertised that they were suitable for such use. Crocs additionally made false and/or deceptive representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

157.     Defendant's misrepresentations were material at the time they were made. They concerned material facts that were essential to the purchasing decisions of Plaintiffs and those similarly situated. Shoes that are not suitable for "all-terrain" and are not "water-friendly" are worth less to consumers than those that are, as are shoes that do not fit.

158.     Each Plaintiff and those similarly situated reasonably relied to their detriment on Defendant's representations. Had each Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

159.     By and through such fraud, deceit, and/or misrepresentations, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.

1   Specifically, Defendant fraudulently and deceptively induced each Plaintiff and those similarly

2   situated to, without limitation, purchase the Products.

3        160.    As a direct and proximate result of Defendant's fraud and misrepresentations,

4   each Plaintiff and those similarly situated have suffered damages. In particular, each Plaintiff

5   seeks to recover on behalf of herself and those similarly situated the amount of the price

6   premium they paid (i.e., the difference between the price consumers paid for the Products and

7   the price they would have paid but for Defendant's misrepresentations), in an amount to be

8   proven at trial.

9        161.    Defendant's conduct as described herein was willful and malicious and was

10  designed to maximize Defendant's profits even though Defendant knew that it would cause loss

11  and harm to Plaintiffs and those similarly situated.

12  **PLAINTIFFS' EIGHTH CAUSE OF ACTION**
    **(Violation of the Consumers Legal Remedies Act,**
13  **California Civil Code § 1750, et seq.)**
    **On Behalf of Each Plaintiff and the California Subclass**

14

15       162.    Each Plaintiff realleges and incorporates by reference the paragraphs of this

    Class Action Complaint as if set forth herein.
16

17       163.    This cause of action is brought pursuant to the California Consumers Legal

18  Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

19       164.    Defendant's actions, representations, omissions, and conduct have violated, and

20  continue to violate the CLRA, because they extend to transactions that are intended to result, or

    which have resulted, in the sale of goods to consumers.
21

22       165.    Each Plaintiff and other members of the class are "consumers" as that term is

23  defined by the CLRA in California Civil Code § 1761(d).

24       166.    The Products that each Plaintiff and similarly situated members of the class

25  purchased are "goods" within the meaning of California Civil Code § 1761.

26       167.    By engaging in the actions, representations, and conduct set forth in this Class

27  Action Complaint, as described above, Defendant has violated, and continues to violate,

28  §§ 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California

Civil Code §1770(a)(4), Defendant used deceptive representations in connection with goods. In violation of California Civil Code §1770(a)(5), Defendant represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendant advertised goods with intent not to sell them as advertised.

168. Specifically, Defendant's acts and practices led consumers to believe that the Products were free of defects, were merchantable for use as shoes, and were "water-friendly," "all-terrain," and suitable for hot, sunny, and wet environments. Crocs additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

169. Further, Defendant omitted material facts that it had a duty to disclose, as alleged above.

170. Defendant's concealment of the true characteristics of the Products was material to Plaintiffs and class members. Had they known the truth, Plaintiffs and the class members would not have purchased the Products, or would have paid significantly less for them.

171. Defendant, as explained above, had an ongoing duty to Plaintiffs and the class members to refrain from unfair and deceptive practices under the CLRA in the course of their business. Specifically, Defendant owed Plaintiffs and class members a duty to disclose material facts concerning the Products because it possessed exclusive knowledge, it intentionally concealed them from Plaintiffs and class members, and/or it made partial representations that were misleading since it concealed the aforementioned facts.

172. Plaintiffs and class members had no way of learning the facts that Defendant had concealed or failed to disclose because they were unaware of Croslite's physical properties.

173. Plaintiffs and class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

174.    Each Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the class will continue to suffer harm.

175.    On July 18, 2022, Plaintiff Cornejo provided Defendant with notice and demand on behalf of herself and all others similarly situated that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

176.    Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFFS' NINTH CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, et seq. ("FAL")) On Behalf of Each Plaintiff and the California Subclass

177.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

178.    Beginning at an exact date unknown to each Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products, and in particular those advertised as "water-friendly," "all-terrain," "beach," and "pool" models.

179.    As set forth in this Class Action Complaint, Crocs has made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were free of defects, were merchantable for use as shoes, and were "all-terrain," "water-friendly," and suitable for hot, sunny, and wet environments when, in fact, the Products

were not. Crocs additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

180. Each Plaintiff and those similarly situated relied to their detriment on Crocs' false, misleading and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Crocs, they would have acted differently by, without limitation, paying less for the Products.

181. Defendant's acts and omissions are likely to deceive the general public.

182. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

183. The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

184. Each Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Though Plaintiffs did not buy the Products directly from Defendant, a certain amount of money flowed from Plaintiffs who purchased the Products through retailers to Defendant. Plaintiffs seek restitution of those amounts. If Plaintiffs' and class members' claims at law fail, Plaintiffs, those similarly situated and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered. Each Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

185.   Each Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

186.   As a direct and proximate result of such actions, each Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

### PLAINTIFFS' TENTH CAUSE OF ACTION
#### (Negligent Misrepresentation)
#### On Behalf of Each Plaintiff and the Class

187.   Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

188.   In selling the Products to consumers, Defendant made false and misleading statements regarding them, as described more fully above. Defendant, however, deceptively failed to inform consumers, at the time of their purchase, that the Products were not free of defects, were not merchantable for use as shoes, and were not "water-friendly," "all-terrain" or suitable for hot, sunny, or wet environments. Crocs additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet fit well.

189.    These representations were material at the time they were made. They concerned material facts that were essential to the decisions of Plaintiffs and those similarly situated regarding how much to pay for the Products.

190.    Defendant made identical misrepresentations and omissions to members of the Class regarding the Products.

191.    Defendant should have known its representations were false, and that it had no reasonable grounds for believing them to be true when it made them.

192.    By and through such negligent misrepresentations, Defendant intended to induce each Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced each Plaintiff and those similarly situated, without limitation, to purchase or lease the Products at the price they paid.

193.    Each Plaintiff and those similarly situated reasonably relied on Defendant's representations. Specifically, each Plaintiff and those similarly situated paid as much as they did for the Products.

194.    Because Plaintiffs reasonably relied on Crocs' false representations, each Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price they paid for the Products and the price they would have paid but for Defendant's misrepresentations).

**PLAINTIFFS' ELEVENTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Each Plaintiff and the California Subclass**

195.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

196.    Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Defendant

has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices by, without limitation, the following:

      a.    engaging in misrepresentation and omissions as described herein;

      b.    violating the California Consumer Legal Remedies Act as described herein;

      c.    violating the Magnuson-Moss Warranty Act as described herein;

      d.    breaching express and implied warranties as described herein; and

      e.    violating the FAL as described herein.

197.   Each Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had each Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, not paying for, or, at a minimum, paying less for the Products.

198.   Defendant's acts and omissions are likely to deceive the general public.

199.   Defendant engaged in these unlawful, deceptive, and unfair practices to increase its profits. Accordingly, Crocs has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

200.   In addition to the unlawful and deceptive acts described above, Defendant engaged in unfair practices by violating the Federal Trade Commission's guides against bait advertising. 16 C.F.R. §§ 238.1-4. The policy provides that "No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). Defendant's aforementioned acts violated this policy, including its representations as to the shoe size and the Products' suitability for use in "all-terrain," "water-friendly," the garden and/or beach and sunny environments.

CLASS ACTION COMPLAINT

201.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

202.    As a direct and proximate result of such actions, each Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial. If Plaintiffs' and class members' claims at law fail, Plaintiffs, those similarly situated and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered.

203.    Each Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

204.    Each Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from offering the Products within a reasonable time after entry of judgment, unless. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant was not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiffs, on behalf of themselves and those similarly situated, respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certification of the proposed Class and California Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.    An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.    An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.    An award of treble damages, except for those causes of action where treble damages are not legally available;

G.    An award of restitution in an amount to be determined at trial;

H.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: November 22, 2022

GUTRIDE SAFIER LLP

/s/Seth A. Safier/
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT

## **EXHIBIT A**

I, MARTHA VALENTINE, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I reside in San Francisco, California. I purchased a pair of Crocs shoes in the Spring of 2022 on eBay from my home in San Francisco, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22nd day of November 2022, in San Francisco, California.



_____
Martha Valentine

VALENTINE DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION