**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (State Bar No. 215948)
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
bwahlquist@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Geoffrey Castello (*pro hac to be filed*)
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5917
Facsimile: (973) 503-5950
gcastello@kelleydrye.com

*Attorneys for Defendant Crocs, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA VALENTINE and RUBY CORNEJO, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CROCS, INC.,<br><br>                    Defendant. | CASE NO. 3:22-CV-07463-TLT<br><br>**DEFENDANT'S MOTIONS TO DISMISS AND TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Trina L. Thompson<br><br>Hearing Date: April 25, 2023<br>Time:  2:00 p.m.<br>Ctrm: 9, 19th Floor |

1

**NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND TO STRIKE**

2      **PLEASE TAKE NOTICE** that on April 25, 2023, at 2:00 p.m., in Courtroom 9 of

3  the above-captioned Court, located on the 19th Floor of the United States Courthouse, 450

4  Golden Gate Avenue, San Francisco, CA, 94102, Defendant Crocs, Inc. will and hereby

5  does move the Court for (1) an order dismissing Plaintiffs' Complaint pursuant to Rule

6  12(b)(6), and (2) an order dismissing and/or striking Plaintiffs' class allegations pursuant

7  to Rules 12(b)(1) and 12(f).

8      **First**, the Motion to Dismiss Plaintiffs' Complaint is made on the grounds that

9  Plaintiffs' various causes of action are not sufficiently alleged so as to meet federal

10 pleading requirements of plausibility and, where required, specificity.  Each of Plaintiffs'

11 eleven causes of action is subject to dismissal pursuant to Rule 12(b)(6) for failure to state

12 a viable cause of action, for the reasons stated below.

13     **Second,** if any claims survive the 12(b)(6) challenge, then Crocs also moves to

14 Strike and/or Dismiss Class Allegations pursuant to Rules 12(b)(1) and/or 12(f) because

15 Plaintiffs lack standing to bring claims involving differing Crocs™ products that are not

16 properly alleged to be, and are not, substantially similar to the Classic Clogs purchased by

17 Plaintiffs.  (*See id.* ¶ 2 (defining "Products" at issue to include sandals, slides, and clogs

18 with differing shapes from the "classic" shaped clogs purchased by Plaintiffs).)  Further,

19 the two putative class memberships, defined so as to include all purchasers of any Crocs'

20 shoes over a four-plus year period, clearly include a wide range of consumers who lack

21 any actual injury and thus would lack standing to pursue Plaintiffs' proposed claims against

22 Crocs.  (*See* Compl. ¶¶ 77 (defining the "Putative Class" as: "All persons in [sic] who

23 purchased, in the United States, the Products from November 22, 2018 to the present," and

24 defining a California subclass as: "All Class Members who purchased the Products in the

25 State of California.").

26     Indeed, the customer comments portion of Crocs' website that Plaintiffs specifically

27 incorporates into their Complaint (so that Plaintiffs could quote from a handful of

28

4865-4659-3611v.2

complaints) can be considered here and demonstrates that an overwhelmingly vast majority of Crocs shoe purchasers lack any injury from any purported "shrinking shoes," and thus would lack any standing to proceed with claims involving allegedly shrunk unwearable shoes. Thus, under recent Supreme Court precedent establishing that putative class members must each have standing to proceed with damages-based claims, given the Crocs consumer comments website that Plaintiffs incorporated into their Complaint (and the overall very high satisfaction from the tens of thousands of consumer reviews contained therein), it is clear that Plaintiffs' class definitions likely include a **vast majority** of persons who were not injured by "shrunken shoe" and thus have no standing to be in that class. Given this clear failing with the overbroad putative classes, the class allegations therefore should be dismissed and/or stricken from the Complaint.

These Motions are based on this Notice and Motion, the attached memorandum, all pleadings, records, and files in this action, and such evidence and argument as may be presented at or before the hearing on this motion.

**KELLEY DRYE & WARREN LLP**


By: _/s/ Becca Wahlquist_
    Becca Wahlquist
    350 South Grand Avenue Suite 3800
    Los Angeles, CA 90071
    Phone: (310) 712-6100
    Fax: (310) 712-6199


By: _/s/ Geoffrey Castello_
    Geoffrey Castello (*pro hac to be filed*)
    One Jefferson Road 2nd Floor
    Parsippany, NJ 07054
    Phone: (973) 503-5900
    Fax: (973) 503-5950

4865-4659-3611v.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION and FACTUAL BACKGROUND ........................................... 1

II.  MOTION TO DISMISS PLAINTIFFS' COMPLAINT ......................................... 4

    A.   Applicable Legal Standards........................................................................ 4

    B.   Legal Argument:  The Complaint Should Be Dismissed ............................ 5

        1.   Plaintiffs Fail to State a Viable Claim for Breach Of Express
            Warranty (Claim 1) ............................................................................ 5

            a.   Plaintiffs Did Not Rely on the Crocs' Limited
                Warranty................................................................................. 6

            b.   Plaintiffs Fail to Allege a Breach of Purported
                Warranties Made Through Advertisements .......................... 6

        2.   Plaintiffs Fail to State a Viable Claim for Breach of Implied
            Warranty of Merchantability (Claim 2) or Fitness for a
            Particular Purpose (Claim 3) ............................................................ 7

        3.   Plaintiffs Fail to State a Viable Claim for Violation of the
            Song-Beverly Consumer Warranty Act (Claim 4)........................... 8

        4.   Plaintiffs Fail to State a Viable Claim for Violation of the
            Magnuson Moss Warranty Act (Claim 5) ........................................ 9

        5.   Plaintiffs Fail to State Viable Fraud-Based Claims (Claims 6
            and 7) or Related California Statutory Claims (Claims 8, 9,
            and 11) Sounding in Fraud ................................................................ 9

            a.   Plaintiffs' fraud-based allegations fail to satisfy Rule
                9(b) ....................................................................................... 9

            b.   Plaintiffs' fraud-based claims fail because actual
                 reliance is not sufficiently alleged ...................................... 11

        6.   Plaintiffs Fail to State a Viable Claim of Negligent
            Misrepresentation (Claim 10) ......................................................... 12

    C.   CONCLUSION ...................................................................................... 13

III. MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS ....................... 13

**A.**    Applicable Legal Standards...................................................................... 13

**B.**    Legal Argument:  Plaintiffs' Class Allegations Should Be Dismissed
       Or Stricken ................................................................................................ 14

       **1.**    Plaintiffs Lack Standing to Bring Classwide Claims as to
             Crocs Products They Did Not Purchase.......................................... 15

       **2.**    Moreover, Plaintiffs' Own Complaint Incorporates Consumer
             Comments that Make Clear that Their Putative Class is
             Populated Largely with Uninjured Persons..................................... 17

**C.**    Conclusion................................................................................................. 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4865-4659-3611v.2

1

## <u>TABLE OF AUTHORITIES</u>

2

3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 4

4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 4

5

6

*Birdsong v. Apple Inc.*,
   No. C 06-02280 JW, 2008 WL 7359917 (N.D. Cal. June 13, 2008),
   *aff'd*, 590 F.3d 955 (9th Cir. 2009) .............................................................. 8, 9

7

8

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................. 8

9

10

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ........................................................................ 13

11

12

*Clark v. Cal. Dept. of Forestry and Fire Protection*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) .............................................................. 4

13

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................... 7, 9

14

15

*Colwell v. Dept. of Health and Human Servs.*,
   558 F.3d 1112 (9th Cir. 2009) ........................................................................ 14

16

17

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ............................................................................ 5

18

*Cordes v. Boulder Brands U.S., Inc.*,
   No. CV 18-6534 PSG, 2019 WL 1002513, 2019 U.S. Dist. LEXIS
   42906 (C.D. Cal. Jan. 30, 2019) ...................................................................... 15

19

20

21

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013) .......................................................................... 5

22

*Davis v. Abbott Labs*,
   562 F. Supp. 3d 585 (C.D. Cal. 2021) ............................................................ 12

23

24

*Dotson v. Europharma, Inc.*,
   No. 2:20-CV-09651, 2021 WL 4826611 (C.D. Cal. May 27, 2021) ...................... 3, 10

25

26

*Dunn v. Castro*,
   621 F.3d 1196 (9th Cir. 2010) .......................................................................... 3

27

28

4865-4659-3611v.2

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ....................................................................... 11

*Figy v. Frito-Lay N. Am., Inc.*,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) ....................................................... 15

*Gamez v. Summit Nats. Inc.*,
    *No.* CV-2205894-DSF-KSX, 2022 WL 17886027 (C.D. Cal. Oct. 24,
    2022) .............................................................................................................. 18

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..................................................................................... 14

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ....................................................................... 4

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021) ..................................................... 12

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................. 3, 9

*Ivie v. Kraft Foods Glob., Inc.*,
    No. 5:12-CV-02554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ............ 11

*Janney v. Mills*,
    944 F. Supp. 2d 806 (N.D. Cal. 2013) .................................................. 9, 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................... 10

*Keen v. Coral Reef Prods., Inc.*,
    No. SACV 14-814 JVS (JCGx) , 2021 WL 12910696 (C.D. Cal. Jun.
    28, 2021) ....................................................................................................... 14

*Ladore v. Sony Comput. Entm't Am., LLC*,
    75 F. Supp. 3d 1065 (N.D. Cal. 2014) ....................................................... 12

*Loomis v. Slendertone Distribution, Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ........................................................ 7

*Lozano v. Bowmar Nutrition LLC*,
    No. 2:21-CV-04296-MCS-KS, 2021 WL 4459660 (C.D. Cal. Aug. 19,
    2021) ........................................................................................................ 15, 16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ....................................................................... 4

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

4865-4659-3611v.2

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................................ 18

*Martin v. Tradewinds Beverage Co.*,
    No. CV 16-9249 PSG, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ...................... 16

*Monreal v. GMAC Mort., LLC*,
    948 F. Supp. 2d 1069 (S.D. Cal. 2013) ................................................................. 12

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) .................................................................................. 5

*N. Am. Chem. Co. v. Superior Ct.*,
    59 Cal. App. 4th 764 (1997) ................................................................................. 12

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................... 9

*In re NJOY, Inc. Consumer Class Action Litig.*,
    NO. CV 14-00428 MMM (RZx), 2014 WL 12586074 (C.D. Cal. Oct.
    20, 2014) ............................................................................................................. 10

*Olean Wholesale Grocery Cooperative Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ........................................................................... 20, 21

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................... 5

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) ................................................................ 11

*Ries v. Hornell Brewing Co.*,
    No. 5:10-CV-01139, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) ......................... 10

*Robinson v. J.M. Smucker Co.*,
    No. 18-CV-04654-HSG, 2019 WL 2029069 (N.D. Cal. May 8, 2019) .................... 13

*Route v. Mead Johnson Nutrition Co.*,
    No. CV 12-7350 GW, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ....................... 14

*United States ex rel. Ruhe v. Masimo Corp.*,
    929 F. Supp. 2d 1033 (C.D. Cal. 2012) ................................................................ 12

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 5, 6

*Stokes v. CitiMortgage, Inc.*,
  No. CV 14-278-BRO, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015) ........................... 14

*Tasion Commc'ns v. Ubiquiti Networks, Inc.*,
  No. C-13-1803 EMC, 2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ...................... 12

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................... 9, 14

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .......................................................................... 15, 20

*Turner v. Sony Interactive Ent. LLC*,
  No. 21-CV-02454-DMR, 2021 WL 5177733 (N.D. Cal. Nov. 8, 2021) ................. 5, 6

*United States v. Hays*,
  515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ............................. 13

*Godecke ex rel. United States v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) .......................................................... 5

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................................ 17

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................... 5

*Watkins v. MGA Ent., Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) ............................................... 7

*Williams v. Beechnut Nutrition Corp.*,
  185 Cal. App. 3d 135 (1986) ............................................................. 5

*Wilson v. Frito-Lay N. Am., Inc.*,
  260 F. Supp. 3d 1202 (N.D. Cal. 2017) ............................................. 11

*Young v. Cree, Inc.*,
  No. 17-CV-06252-YGR, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ............ 10

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................. 10

*Zakikhan v. Hyundai Motor Co.*,
  Case No. 8:20-cv-01584-SB, 2021 WL 4805454 (C.D. Cal. Jun. 28,
  2021) .............................................................................................. 15

4865-4659-3611v.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Statutes, Rules, and Other Authorities</u>**

Consumer Legal Remedies Act ("CLRA") ................................................................ 4, 8, 9, 11

California False Advertising Law ("FAL") ............................................................... 4, 9, 11

California Unfair Competition Law ("UCL") ........................................................... 4, 8, 9

Federal Rule of Civil Procedure 9(b) ...................................................................... 5, 9, 10, 12

Federal Rule of Civil Procedure 12(b)(1) ............................................................... 13, 21

Federal Rule of Civil Procedure 12(b)(6) ................................................................. *passim*

Federal Rule of Civil Procedure Rule 12(f) ........................................................... 13, 14, 20

Magnuson-Moss Warranty Act ............................................................................... 4, 9

Song-Beverly Consumer Warranty Act .................................................................. 4, 8

U.S. Constitution Article III .................................................................................... *passim*

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

1

## I.   INTRODUCTION and FACTUAL BACKGROUND

2      Crocs, Inc. ("Crocs") is a world leader in innovative casual footwear for women,

3   men and children, with a broad portfolio of all-season shoes.  Founded in 2002, Crocs has

4   since sold over 850 million pairs of shoes to customers around the world.   Crocs

5   manufactures a variety of styles of shoes manufactured from its proprietary Croslite™

6   material, and those varying shoes manufactured with Croslite material and sold throughout

7   the United States (including the Crocs' Classic Clog, Classic All-Terrain Clog, LiteRide™

8   Clog, Classic Sandal, and Classic Slide (*see* Compl. ¶ 2, defining "Products")) are at the

9   base of Plaintiffs' claims.

10      Plaintiffs Martha Valentine ("Plaintiff Valentine") and Ruby Cornejo ("Plaintiff

11   Cornejo") (collectively, "Plaintiffs") allege that they each "purchased Crocs shoes made of

12   Croslite material" based on Crocs' representations of the shoes as "suitable for all terrain,

13   lake, river, ocean, pool and/or beach environments." (Compl. ¶¶ 6-8.)  Plaintiffs claim that

14   they relied on some unspecified Crocs advertising, and that Crocs' advertising showing

15   shoes in use outdoors was misleading, because (according to the Complaint) their

16   experience is that Crocs™ shoes "shrink and become unwearable by the original owner"

17   "when exposed to heat, water and/or sunlight."  (*Id.* ¶ 6.)  Specifically, Plaintiff Valentine

18   alleges that she purchased a pair of Crocs Classic Bae shoes on eBay[1] and wore them in

19   "hot, muggy, rainy weather" and "discovered that the Product shrank such that they no

20   longer fit her well."  (*Id.* ¶ 58.)  Plaintiff Cornejo alleges she purchased a pair of Classic

21   Crocs™ shoes from a DSW store to wear "while gardening," but that after two months,

22   "they had inexplicably shrunk to the point where they no longer fit her."  (*Id.* ¶¶ 67, 70.)

23   Neither Plaintiff claims to have purchased any other type of Crocs™ shoes manufactured

24   from Croslite material, such as sandals, slides, boots, or any clogs with different

25   configurations than the Classic or Classic Bae configurations that Plaintiffs had purchased

26

27   ───────────────
[1] Plaintiff Valentine does not allege whether she made her purchase on eBay
28   through an individual or from an authorized Crocs reseller.

4865-4659-3611v.2

from third-party sellers.

Plaintiffs claim that Crocs advertising on social media creates "the impression that Crocs are designed for use in sunny, hot, wet environments" (*Id.* ¶ 31) and they provide images of seven (7) social media ads from Crocs' advertising (although not all ads have listed sources, and none are alleged to be ads on which Plaintiffs themselves relied). (*See* Compl. ¶¶ 34-39.)   Plaintiffs then allege generally that "sun, heat, and water" will invariably shrink all Crocs™ shoes to a point where the shoes are not wearable, unless the shoes are stored in a "dark, cool, dry space when not in use." (*Id.* ¶¶ 52-53.)   Plaintiffs further allege that Crocs hides this "problem" in order to boost additional sales of Crocs – claiming that such a purposeful design flaw would "give[] Defendant an incredible advantage over competitors" due to all the replacement Crocs™ shoes that consumers would need to buy.   (*Id.* ¶ 52)   Plaintiffs thus demonstrate an interesting take on how to succeed in the very competitive marketplace for active-wear and comfort shoes:   they attribute a majority of Crocs' success in the marketplace to repeat sales that they claim are caused by "the fact that the Products shrink to the point they must be replaced." (*Id.* ¶¶ 55, 57.)  (It is difficult to imagine any company electing to pursue such a strategy, especially in a very competitive marketplace and with savvy American consumers.)

Plaintiffs assert that they are not alone in their complaints.   In an attempt to somehow bolster their implausible claims, they cite to and incorporate **fourteen (14)** consumer reviews they found the Crocs Classic Clog product customer comments section – a handful of complaints from persons who also complain about shrinking shoes (*Id.* ¶ 49, citing to https://www.crocs.com/p/classic-clog/10001.html?cgid=men-footwear-clogs&cid=3UG#start=1 (last visited January 19, 2023)).   However, Plaintiffs fail to mention that these comments (four of which came from persons who nonetheless rated the Crocs™ shoes as a 5 out of 5) were located in a searchable online database of over **thirty-thousand (30,000)** comments about Classic Clogs that say **nothing** about shrinking shoes, and primarily consist of reports from very happy customers and fans of Crocs who give an

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

4865-4659-3611v.2

average review rating for Crocs Classic Clogs of 4.7 out of 5 stars. (*Id.*)[2] Indeed, when searching the comments for "shrink" or any variety of "shrink," other than the reviews quoted by Plaintiffs, less than 30 reviews from the class period (out of over 30,000 mostly five-star reviews) complain of having shoes shrink, as of January 19, 2023. *See* https://www.crocs.com/p/classic-clog/10001.html?cgid=men-footwear-clogs&cid=3UG#start=1 (containing searchable database of Class Clogs customer comments and reviews). Plaintiffs' classes are defined as containing **all** purchasers of **any** Crocs product **since November 2018**. (Compl. ¶ 77.) Given the evidence from this database Plaintiffs incorporated into their Complaint, it is obvious from the face of the Complaint that the class is impermissibly overbroad and not certifiable.

In short, Plaintiffs (each of whom purchased one pair of Classic-style clogs) have not (1) plausibly pled that they have standing to assert classwide claims related to Products they did not purchase (such as flip flops, slides, boots, and other shoes made with Croslite material), or (2) that the putative class members would have standing when it is clear from Plaintiffs' own referenced comments database that over 99.9% of the reviews are from Crocs customers with no shrinkage, and no Article III injury related to Plaintiffs' claimed harm. Moreover, if Plaintiffs' theory of Crocs' business model is that persons are forced to buy shoes time and time again after they shrink, then it is difficult to imagine how under that theory the repeat consumers (who would have knowledge that shoes have shrunk and then have bought another pair regardless) would share in Plaintiffs' claims.

---

[2] The Court may consider documents incorporated into a pleading by reference and matters subject to judicial notice when assessing a motion to dismiss. *See Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010) (court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading"); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) (same); *Dotson v. Europharma, Inc.*, No. 2:20-CV-09651, 2021 WL 4826611, at *2 (C.D. Cal. May 27, 2021) (similar). Plaintiffs incorporate by reference and necessarily rely upon consumer posts on Crocs' website, which can thus be considered for the purposes detailed in this Motion. (Compl. ¶ 49.)

It is true that the Court might not reach standing questions on this round, given that Plaintiffs' eleven causes of action fail to plead viable claims under Rule 12(b)(6).  But as detailed in Part III below, if any causes of action survive the Motion to Dismiss, Plaintiffs' own standing to proceed on a classwide basis and the obvious issues with the standing of their overly broad class definition should lead to the class allegations being dismissed and/or stricken.

## II.   MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Based on their belief that Crocs is purposefully creating design flaws to boost sales of the Products, and their claims that all of the Products are falsely advertised as suitable for use in sun, heat, and water, on their own behalf and on behalf of a nationwide putative class and a California class, Plaintiffs assert eleven (11) causes of action:  claims for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness; violation of the Song-Beverly Consumer Warranty Act; violation of the Magnuson-Moss Warranty Act; fraudulent concealment; fraud, deceit, and/or misrepresentation; violations of the Consumer Legal Remedies Act ("CLRA"); violation of the False Advertising, Business and Professions Code ("FAL"); negligent misrepresentation; and Unfair, Unlawful and Deceptive Trade Practices ("UCL") claims arising out of their purchase of Crocs™ shoes.  (*See* Compl. at ¶¶ 85-204.)

While Plaintiffs' Complaint is lengthy, a closer review reveals how sparse and inadequate the Complaint is when it comes to pleading the facts required to support various causes of action.  The Complaint should be dismissed for the reasons detailed below.

### A.   Applicable Legal Standards

**Rule 12(b)(6)**.   A motion to dismiss is proper under Rule 12(b)(6) where a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere conclusory allegations of law and unwarranted inferences cannot avoid a Rule 12(b)(6) dismissal, *see Manzarek v. St.*

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

1    *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) because "courts do not

2    'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

3    unreasonable inferences.'"  *Clark v. Cal. Dep't of Forestry and Fire Prot.*, 212 F. Supp.

4    3d 808, 811 (N.D. Cal. 2016) (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055

5    (9th Cir. 2008)).   "[I]t is within [the court's] wheelhouse to reject, as implausible,

6    allegations that are too speculative to warrant further factual development." *Dahlia v.*

7    *Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).  A court is "not bound to accept as true a

8    legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286

9    (1986); *see also Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019)

10   ("A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the

11   absence of sufficient facts alleged under a cognizable legal theory.'") (quoting *Balistreri*

12   *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990))

13           **Rule 9(b).**   Moreover, when as here, a plaintiff asserts a claim sounding in fraud,

14   the plaintiff must "state with particularity the circumstances regarding fraud or

15   mistake." Fed. R. Civ. P. 9(b).  A claim sounds in fraud if the plaintiff alleges "a unified

16   course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of

17   a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).   The

18   particularity requirement of Rule 9(b) is satisfied if the complaint "identifies the

19   circumstances constituting fraud so that a defendant can prepare an adequate answer from

20   the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.

21   1989); *see also Vess*, 317 F.3d at 1106.   Accordingly, "[a]verments of fraud must be

22   accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*,

23   317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

24        **B.    Legal Argument:  The Complaint Should Be Dismissed**

25        **1.    Plaintiffs Fail to State a Viable Claim for Breach Of Express**
26               **Warranty (Claim 1)**

27           To successfully allege breach of an express warranty under California law, a

28   "plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon;

MEMORANDUM IN SUPPORT
                                     Case No. 3:22-CV-07463-TLT

1  and (3) a breach of warranty which proximately caused plaintiff's injury."  *Sanders v.*

2  *Apple Inc*., 672 F. Supp. 2d 978, 986-87 (N.D. Cal. 2009) (citing *Williams v. Beechnut*

3  *Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)).  "In order to constitute an express

4  warranty, a statement must be 'specific and unequivocal.'"  *Turner v. Sony Interactive Ent.*

5  *LLC*, No. 21-CV-02454-DMR, 2021 WL 5177733, at *1 (N.D. Cal. Nov. 8, 2021) (quoting

6  *Maneely v. Gen. Motors Corp*., 108 F.3d 1176, 1181 (9th Cir. 1997)).  "A plaintiff must

7  allege the exact terms of the warranty by providing specifics about what the warranty

8  statement was, and how and when it was breached."  *Id.* (cleaned up).  Where, as here, a

9  plaintiff fails to meet any one of the elements, a claim for breach of express warranty fails.

10       Plaintiffs allege breach of express warranty based on two purported warranties—

11  the Crocs Limited Warranty and Crocs' advertising and Crocs' alleged marketing claims.

12  Plaintiffs' claims fail with respect to both.

13             **a.**      **Plaintiffs Did Not Rely on the Crocs' Limited Warranty**

14       Plaintiffs' claim of breach of the Crocs Limited Warranty should be dismissed for

15  failure to state a claim.  Although Plaintiffs reference the Crocs Limited Warranty in their

16  Complaint (Compl. ¶ 23), the Complaint is devoid of any facts supporting Plaintiffs'

17  reliance on the Limited Warranty.  "California courts have held that under the law relating

18  generally to express warranties a plaintiff must show reliance on the defendant's

19  representation."  *Sanders*, 672 F. Supp. 2d at 988 (cleaned up).  In *Sanders v. Apple, Inc.*,

20  the Plaintiff alleged that he looked at Apple's website, but did not allege "reasonable

21  reliance on any specific representations Apple made" with respect to the product at issue.

22  *Id.*  Thus, his claim was properly dismissed.  Here too, not only do Plaintiffs fail to allege

23  reliance on the Limited Warranty, they concede that they did not consider the Crocs

24  Limited Warranty prior to their alleged purchases.  (Compl. ¶ 23.)  Plaintiffs' claim for

25  breach of express warranty should be dismissed.

26             **b.**      **Plaintiffs Fail to Allege a Breach of Purported Warranties**

27                   **Made Through Advertisements**

28       Plaintiffs allege that Crocs made an express warranty through its advertising and

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

marketing claims that Crocs "shoes 'shed water,' are 'water-friendly,' 'all-terrain,' 'pool,' 'garden,' and 'beach' appropriate." (*Id.* ¶ 90.)  But none of the actual advertisements that Plaintiffs include in their Complaint contain any language making an express warranty that Crocs™ shoes would never shrink. (*Id.* ¶¶ 34-39.)  Further, Plaintiffs fail to identify any *specific* advertisements that they themselves relied on that they claim established an express warranty, and thus fail to establish standing to bring an express warranty claim for any advertisement.  Plaintiffs' failure to allege breach of the express warranty requires dismissal of the first cause of action.

### 2. Plaintiffs Fail to State a Viable Claim for Breach of Implied Warranty of Merchantability (Claim 2) or Fitness for a Particular Purpose (Claim 3)

As to Plaintiffs' two implied warranty claims, vertical privity is required.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  "[A] buyer and seller stand in privity if they are in adjoining links of the distribution chain" and "an end consumer . . . who buys from a retailer is not in privity with a manufacturer."  Clemens, 534 F.3d 1017 at 1023 (9th Cir. 2008).  Here, Plaintiffs do not allege that they purchased shoes directly from Crocs, but rather are clear that they purchased their shoes from an unspecified eBay seller (Plaintiff Valentine – Compl. ¶ 58) and DSW (Plaintiff Conejo – Compl. ¶ 66).  Despite that privity is required to be pled, neither Plaintiff alleges privity with Crocs.  *See Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019) ("Plaintiff and Defendant are not in adjoining links because Plaintiff bought the [product] through Amazon.com and not directly from Defendant.  Thus, under *Clemons*, because Plaintiff was a buyer who bought from a retailer, Plaintiff is not in privity with defendant." (citation omitted)).  Plaintiffs fail to allege vertical privity required to state a claim for implied warranty of merchantability.  Plaintiffs' claim of breach of implied warranty of fitness for a particular purpose fails for the same reason.

Plaintiffs also fail to allege the elements of breach of implied warranty of fitness for a particular purpose.  Plaintiffs have alleged no facts pertaining to any "particular purpose"

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

1   for purchasing Crocs™ shoes, different from the "ordinary purpose" of Crocs. *See Watkins*

2   *v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 832 (N.D. Cal. 2021). "The elements for breach

3   of implied warranty of fitness for a particular purpose are: (1) the buyer intended to use the

4   product for a particular purpose; (2) the seller had reason to know this; (3) the buyer relied

5   on the seller's judgment to select suitable goods for that purpose; (4) the seller had reason

6   to know that the buyer was relying on seller in this way; and (5) the product failed to suit

7   buyer's purpose and subsequently damaged the buyer." *Birdsong v. Apple Inc., No. C 06-*

8   *5:06-CV-02280 JW, 2008 WL 7359917, at *5 (N.D. Cal. June 13, 2008), aff'd, 590 F.3d*

9   *955 (9th Cir. 2009) (citation omitted).* In other words, "[a]n implied warranty of

10  merchantability for a particular purpose exists when both the buyer and seller know that

11  the buyer is seeking out a product for a specific use and relies upon the seller to select a

12  product suitable for the buyer's purpose." *Id.*

13      In *Birdsong v. Apple, Inc.*, the Court dismissed the plaintiffs' complaint because

14  plaintiffs did not (1) allege they intended to use the product for a particular purpose other

15  than the ordinary purpose of the product, (2) communicate any particular purpose to the

16  defendant, (3) allege they relied on the defendant's judgment to select a suitable product,

17  (4) allege that the defendant knew of plaintiffs' particular purpose. Here too, Plaintiffs'

18  Complaint is completely devoid of any facts that meet the above elements and the second

19  and third causes of action should be dismissed.

20          **3.      Plaintiffs Fail to State a Viable Claim for Violation of the Song-
21                  Beverly Consumer Warranty Act (Claim 4)**

22      "[T]he Song-Beverly Warranty Act *only* applies to consumer products purchased in

23  California." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015). Unless

24  properly disclaimed, "every sale of consumer goods that are sold at retail in this state shall

25  be accompanied by the manufacturer's and the retail seller's implied warranty that the

26  goods are merchantable." Cal. Civ. Code § 1792 (emphasis added). The definition of

27  "consumer goods" **excludes clothing and consumables**. § 1791(a). "Clothing" means any

28  wearing apparel, worn for any purpose, including under and outer garments, **shoes**, and

---

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

1    accessories composed primarily of woven material, natural or synthetic yarn, fiber, or

2    leather or similar fabric."  § 1791(c) (emphasis added).

3         The Products are shoes, and thus are excluded from the scope of the Song-Beverly

4    Warranty Act.  Plaintiffs' fourth cause of action should be dismissed.

### 4.    Plaintiffs Fail to State a Viable Claim for Violation of the Magnuson Moss Warranty Act (Claim 5)

7         The Magnuson-Moss Warranty Act "provides a federal cause of action for state

8    warranty claims."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010)

9    (citation omitted).  "[C]laims under the Magnuson-Moss stand or fall with [the] express

10   and implied warranty claims under state law."  *In re Nexus 6P Prod. Liab. Litig.*, 293 F.

11   Supp. 3d 888, 926 (N.D. Cal. 2018) (citing *Clemens*, 534 F.3d at 1022).  When "Plaintiffs

12   have failed to state a claim for breach of either express or implied warranty, there is no

13   predicate breach of warranty claim upon which [a] Magnuson–Moss action may be based."

14   *Birdsong*, 2008 WL 7359917, at *5.  Thus, because the express and implied warranty

15   claims fail for the reasons already detailed above, this fifth cause of action should also be

16   dismissed.

### 5.    Plaintiffs Fail to State Viable Fraud-Based Claims (Claims 6 and 7) or Related California Statutory Claims (Claims 8, 9, and 11) Sounding in Fraud

#### a.    Plaintiffs' fraud-based allegations fail to satisfy Rule 9(b)

20        Claims that sound in fraud—including claims for fraud, fraudulent concealment,

21   and for fraud alleged under the UCL, CLRA, and FAL—must satisfy the heightened

22   particularity requirement of Federal Rule of Civil Procedure 9(b) to survive dismissal.

23   *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1085 (N.D. Cal. 2017); see also *Janney*

24   *v. Mills*, 944 F. Supp. 2d 806, 817 (N.D. Cal. 2013) ("When claims under the CLRA, UCL,

25   and FAL are based on a manufacturer's alleged misrepresentations about a product's

26   characteristics, those claims sound in fraud and Rule 9(b) applies.").  "In a deceptive

27   advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and

28

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

4865-4659-3611v.2

promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading." *Janney*, 944 F. Supp. 2d at 818. A complaint must state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* at 810; *see also Hadley*, 243 F. Supp. 3d at 1085. "In other words, the allegations must plead the 'who, what, when, where, and how of the misconduct charged.'" *Dotson v. Europharma, Inc.*, No. 2:20-CV-09651, 2021 WL 4826611, at *4 (C.D. Cal. May 27, 2021) (quoting *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1123 (C.D. Cal. 2010)). Plaintiffs fail to meet this standard.

First, Plaintiffs did not plead the "when" requirement. Both Plaintiffs cursorily allege that they "saw" Crocs advertisements, but offer no other details and do not specify when they viewed the advertisements. (Compl. ¶¶ 58, 66.) Neither Plaintiff states when "she saw or heard the particular representations upon which her complaint is made." *Yumul.*, 733 F. Supp. 2d 1117 at 1124. Plaintiff Valentine merely alleges that she purchased Crocs in "Spring of 2022," and Plaintiff Cornejo alleges that she purchased Crocs in "March of 2022." (Compl. ¶¶ 58, 66.) Not only do Plaintiffs fail to identify specific dates of purchase, Plaintiffs also fail to identify each (or any) time that they viewed the purportedly misleading advertisements. *See In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL 12586074 at *10 (C.D. Cal. Oct. 20, 2014) (explaining "[w]hile they do allege when *they purchased* NJOY products, pleading the 'when' of the fraud requires that plaintiffs allege when they saw or heard the misleading statements" (footnote omitted)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing where the plaintiff did not "specify when he was exposed to [the advertisements] or which ones he found material")

Second, Plaintiffs did not plead the "what" requirement. A plaintiff must make specific allegations regarding each product and attach each challenged advertisement. *Janney*, 944 F. Supp. 2d at 818. ("A plaintiff alleging that product labels or packaging

4865-4659-3611v.2

contain misrepresentations must make specific allegations regarding each product, and attaching only a selection of labels will not suffice under Rule 9(b).”); *Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 1710181, at *6 (N.D. Cal. Apr. 9, 2018) (dismissing complaint where plaintiff failed to identify specific representations he relied upon); *Ries v. Hornell Brewing Co.*, No. 5:10-CV-01139, 2011 WL 1299286, at *4 (N.D. Cal. Apr. 4, 2011) (dismissing claim to extent it challenged other versions of label not attached to complaint).   In the Complaint, Plaintiffs include a handful of social media advertisements represented as being taken from Crocs' Facebook account and from other, unidentified sources. (*See* Compl. ¶¶ 33-39.)   Plaintiffs do not allege that these are the advertisements they reviewed.  (*Id.* ¶¶ 33-39, 58, 66.)   And although Plaintiffs purport to bring claims based on advertisements that Crocs are "water-friendly" and capable of "shed[ding] water," Plaintiffs do not make specific allegations regarding those purported advertisements or attach them to the Complaint.   Particularly when attempting to assert fraud claims on behalf of a putative class, it is incumbent on Plaintiffs to provide the purported fraudulent advertising that the entire class (and not just folks perusing Crocs' Facebook stream) would have seen.

### b.   Plaintiffs' fraud-based claims fail because actual reliance is not sufficiently alleged

Actual reliance is required for fraud-based claims, including claims under the UCL, FAL, and CLRA that sound in fraud.  *See Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1059–60 (N.D. Cal. 2013) (dismissing fraudulent concealment, UCL, and CLRA claims where plaintiff failed to plead she viewed and relied on challenged aspect of label); *Ivie v. Kraft Foods Glob., Inc.*, No. 5:12-CV-02554, 2013 WL 685372, at *4 (N.D. Cal. Feb. 25, 2013) (identifying the requirement that a plaintiff "demonstrate the purchase of products as a result of deceptive advertising"—i.e., "immediate causation").   Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance. *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) (granting summary judgment on claims related

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

to trans-fat in potato chip packaging).

Claims under the UCL, FAL, and CLRA are governed by the reasonable consumer standard, under which Plaintiffs must show "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.,* 838 F.3d 958, 965 (9th Cir. 2016) (cleaned up).  Here, as detailed above, Plaintiffs fail to specifically allege which advertisements they viewed, when they viewed them, and that they relied on them—let alone explain how any reasonable consumer would have seen these same ads and could possibly have been misled in the manner Plaintiffs allege.  Thus, Plaintiffs' statutory claims sounding in fraud must fail.

### 6.   Plaintiffs Fail to State a Viable Claim of Negligent Misrepresentation (Claim 10)

The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) plaintiffs' justifiable reliance on the misrepresentation; and (5) resulting damage.  *Gudgel v. Clorox Co*., 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) (dismissing plaintiff's claims when, in the context of the reasonable consumer test, plaintiff had not identified any misrepresentation or deception on a product's label).  Many courts within this Circuit have further held that "[b]ecause negligent misrepresentation sounds in fraud, a plaintiff must meet the pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Davis v. Abbott Labs,* 562 F. Supp. 3d 585, 589 (C.D. Cal. 2021) (citing *Monreal v. GMAC Mort., LLC*, 948 F. Supp. 2d 1069, 1077-78 (S.D. Cal. 2013); *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1036 (C.D. Cal. 2012)).  As detailed above, Plaintiffs fail to meet the high pleading standards of Rule 9(b), and this claim too should be dismissed.

Moreover, as several courts in this Circuit have found, the economic loss rule bars a negligent misrepresentation claim when (as here) a plaintiff seeks only economic damages.  "The 'economic loss rule requires a purchaser to recover in contract for purely

economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'" *Ladore v. Sony Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014) (quoting *Tasion Commc'ns v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2013 WL 4530470, at *3 (N.D. Cal. Aug. 26, 2013)). "[T]he 'economic loss rule has been applied to bar a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form *of physical harm* (i.e., personal injury or property damage).'" *Id.* (quoting *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 777 (1997)).  Thus, a plaintiff (such as Plaintiffs here) who claim only economic injury (spending more than they otherwise would have) from an alleged negligent misrepresentation have no viable claim.  *See Robinson v. J.M. Smucker Co.,* No. 18-CV-04654-HSG, 2019 WL 2029069, at *5 (N.D. Cal. May 8, 2019) (non-economic loss is a required element of a negligence cause of action alleged in a sales of good case).  Plaintiffs' tenth claim can and should be dismissed on this basis as well, as all that Plaintiffs seek in regards to their negligent misrepresentation claim is the alleged "difference between the price they paid for the Products and the price that they would have paid but for Defendant's misrepresentations."  (Compl. ¶ 194.)

### C.   **CONCLUSION**

Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6) for each of the reasons detailed above.  However, should any causes of action survive this Rule 12(b)(6) challenge, Plaintiffs should not be able to proceed on a classwide basis with the classes as currently defined.  Instead, the class allegations in the Complaint should be dismissed pursuant to Rule 12(b)(1) or stricken pursuant to Rule 12(f) for the reasons detailed in Part III below.

## III.   **MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

### A.   **Applicable Legal Standards**

**Rule 12(b)(1).**  Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the

4865-4659-3611v.2

complaint.  Fed. R. Civ. P. 12(b)(1).  A district court has subject matter jurisdiction over a plaintiff's claims only when the plaintiff presents a live case or controversy, as required by Article III of the U.S. Constitution.  *See* U.S. Const. Art. III § 2, cl. 1.  In order for there to be a case or controversy within the meaning of Article III, a plaintiff must have standing to pursue their claims.  Standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1).  *See United States v. Hay*s, 515 U.S. 737, 742 (1995); *Chandler v. State Farm Mut. Auto. Ins. C*o., 598 F.3d 1115, 1122 (9th Cir. 2010).  The party asserting the claim has the burden of establishing standing.  *See Colwell v. Dept. of Health and Human Servs*., 558 F.3d 1112, 1121 (9th Cir. 2009).

     **Rule 12(f).**  Further, a court may strike class allegations when no class action can possibly be maintained on the face of the pleading.  *See Tietsworth v. Sears,* 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (striking class allegations due to predominance of individual issues on certain claims); *Stokes v. CitiMortgage, Inc.*, No. CV 14-278-BRO (SHx), 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("Rule 12(f) also grants courts the authority to strike class allegations that cannot possibly move forward on a classwide basis." (citations omitted)); *Route v. Mead Johnson Nutrition Co.,* No. CV 12-7350 GW (JEMx), 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("[W]here the matter is sufficiently obvious from the pleadings, a court may strike class allegations.").  As the Supreme Court has explained, '[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'"  *Keen v. Coral Reef Prods., Inc.*, No. SACV 14-814 JVS (JCGx), 2015 WL 12910696, at *2 (C.D. Cal. 2015) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (alteration in original).  "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiffs allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth*, 720 F. Supp. 2d at 1146.

     **B.**    **Legal Argument:  Plaintiffs' Class Allegations Should Be Dismissed Or Stricken**

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

4865-4659-3611v.2

1

2

### 1.	Plaintiffs Lack Standing to Bring Classwide Claims as to Crocs Products They Did Not Purchase

Plaintiffs here each allege to have purchased one of Crocs' many kinds of Classic Clogs (Compl. ¶¶ 58, 66), which are the kind of shoe pictured in the images in Complaint Paragraphs 36-39, with straps that can be worn on top or in back, and a clog-type shape. Plaintiffs make claims about their Classic Clogs shrinking and becoming unwearable, and then bring classwide claims on behalf of persons who not only purchased clog-shaped Crocs, but who purchased other kinds of shoes such as sandals and slides, defined as "Products." (*See* Compl. ¶ 2.) Most courts within the Ninth Circuit have adopted a "middle-ground" position on when a class plaintiff can assert claims for an unpurchased product, "holding that sufficient or substantial similarity between the purchased and non-purchased products satisfies the standing requirement for the non-purchased products." *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014) (alterations, internal quotation marks, and citations omitted*); see also Cordes v. Boulder Brands U.S., Inc.*, No. CV 18-6534 PSG (JCx), 2019 WL 1002513, at *2 5 (C.D. Cal. Jan. 30, 2019) (noting the middle-ground position of checking for substantial similarity is dominant). "[C]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling" when deciding whether products are substantially similar. *Figy*, 67 F. Supp. 3d at 1083. And as courts have recently noted, the standing question should not be delayed, given that courts "should address standing prior to class certification." *Lozano v. Bowmar Nutrition LLC,* No. 2:21-CV-04296-MCS-KS, 2021 WL 4459660, at *3–4 (C.D. Cal. Aug. 19, 2021) (citations omitted).

Notably, there are also courts in the Ninth Circuit who have disagreed with performing a "substantial similarity" test at all, and have held firmly that under Article III standing requirements, "the purchase of one product does not confer standing to assert claims for alleged injury sustained by others who bought a 'substantially similar' product." *Zakikhan v. Hyundai Motor Co.*, Case No. 8:20-cv-01584-SB, 2021 WL 4805454, *5 (C.D.

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

Cal. Jun. 28, 2021).  The *Zakikhan* court noted that the U.S. Supreme Court's decision in *TransUnion LLC v. Ramirez* "reaffirmed these standing principles" when it concluded that Article III standing is neither "'dispensed in gross' nor dispensed with in class actions." *Id.* (citing *TransUnion LLC v. Ramirez,* No. 20-297, 2021 WL 2599472, at *10 (U.S. June 25, 2021)). Under this test, too, Plaintiffs lack standing to pursue the classwide claims they assert which include claims for various Crocs™ shoes they did not purchase.  *Id.* at *6 ("A court is not at liberty to enlarge the statutory scope of standing to allow the party to sue for another's injury caused by [a different product] because of product or advertising similarly.").  The Court could follow courts such as the *Zakikhan* court who refuse to fold "substantially similar" but unpurchased products into class litigations.  But presuming the Court might take the middle road, and assess the substantial similarity of the purchased and unpurchased products, that is discussed below.

Here, Plaintiffs attempt to bring claims on behalf of a putative class of purchasers of **all** Crocs shoes made of Croslite material (Compl. ¶¶ 2, 77) without alleging any facts indicating that shoes such as open-toe sandals and slides would share the same shrinkage or fit issues that they claim can exist with closed-shoe clogs.  Plaintiffs have pled **no facts** indicating that the Crocs products they did not purchase (such as **slides** and **sandals**, which have very different physical configurations from clogs) are substantially similar to the shoes they did purchase in how Plaintiffs allege they interact with water, heat, and sun.  In short, claiming that all the "Products" at issue in their putative class claims have one common characteristic (Croslite material) is insufficient to establish Article III standing to assert claims for unpurchased products.  *See, e.g., Martin v. Tradewinds Beverage Co.*, No. CV 16-9249 PSG (MRWx), 2017 WL 1712533, at *5 (C.D. Cal. Apr. 27, 2017) ("Having a few common ingredients is simply not enough .... In fact, this is true for just about any type of product. After all, just because an Old Fashioned and a Manhattan both have bourbon doesn't mean they are the same drink.") (citations omitted).  *See also Lozano v. Bowmar Nutrition LLC,* No. 2:21-CV-04296-MCS-KS, 2021 WL 4459660 at *3-4 (C.D.

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

Cal. Aug. 19, 2021) (noting same, and finding that where Plaintiff did not provide factual evidence of substantial similarity of food products, Plaintiff failed to establish constitutional standing to pursue claims for unpurchased products).

Thus, Plaintiffs' class allegations should be dismissed because Plaintiffs are attempting to pursue classwide claims for all Crocs shoes manufactured with Croslite material, even when neither Plaintiff purchased anything other than the Classic Clog version of shoe and only have experiences with that model of shoe, and have failed to establish a substantial similarity with the unpurchased products.  Plaintiffs do not have standing to represent the putative classes as defined.

### 2. Moreover, Plaintiffs' Own Complaint Incorporates Consumer Comments that Make Clear that Their Putative Class is Populated Largely with Uninjured Persons

In the Complaint, Plaintiffs ***incorporate a comments section of Crocs' own website,*** where tens of thousands of American consumers have posted comments about Classic Clogs during the November 2018 to present class period.  (*See* Compl. ¶ 50.)  Specifically, they cite to fourteen (14) consumer posts about shrinkage contained in the comments section for Classic Clogs in order to bolster their class-wide claims (*see* Compl. ¶ 49) and intimate that there are many other persons with "shrinkage" claims like theirs.  However, the portion of Crocs' website (Classic Clogs customer reviews) relied upon by Plaintiffs and incorporated into their Complaint actually illustrates the opposite—that Plaintiffs' proposed classes of "all purchasers" sweep in a vast majority of uninjured class members who, under recent Supreme Court authority, lack standing to proceed as they would not have Article III standing to participate.

Plaintiffs quote from the fourteen (14) comments from Americans purchasing Crocs during the over four-year class period (Compl. ¶ 49), without also mentioning that **over thirty thousand 30,000** other comments from consumers – Plaintiffs' putative class members – who purchased Classic Clogs are on the Crocs website, giving predominantly 5-star reviews of Classic Clogs shoes, leading to an average customer review of 4.7 out of

5, and over 26,000 five-star reviews.   *See* https://www.crocs.com/p/classic-clog/10001.html?cgid=men-footwear-clogs&cid=_3UG#start=1 (last visited January 19, 2023).   As already noted in Footnote 1 above, a court may "consider certain materials–documents attached to the complaint, **documents incorporated by reference in the complaint**, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchi*e, 342 F.3d 903, 907-08 (9th Cir. 2003) (emphasis added). Under the incorporation by reference doctrine, "[a] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations and internal quotation marks omitted). "The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* (citations omitted). *See also Gamez v. Summit Nats. Inc., No.* CV-2205894-DSF-KSX, 2022 WL 17886027, at *3 (C.D. Cal. Oct. 24, 2022) (same).

Because Plaintiffs incorporate by reference and necessarily rely upon consumer posts on Crocs' website, and because the existence of the consumer comments on the website are not questioned, then **other** posts from the link Plaintiffs incorporate (Compl. ¶ 49) can thus be considered for the purposes detailed in this Motion. And even a quick and casual review of the website comments available at the link cited in Plaintiffs' Complaint shows an abundance of persons who love their Crocs, who wear them in water and in all weather conditions, who wear them to the beach and gardening, who wear them for years, and who and have had nothing like Plaintiffs' experiences, or experiences like those of the fourteen (14) persons Plaintiffs quote at Paragraph 49 of the Complaint.

Just a few examples of Classic Clogs reviews from Plaintiffs' putative class members illustrates the difference with those cited by Plaintiffs, and show Crocs purchasers – putative class members – who would have no claim of actual injury tied to any alleged

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

4865-4659-3611v.2

"shrinking".  *See* https://www.crocs.com/p/classic-clog/10001.html?cgid=men-footwear-clogs&cid= 3UG#start=1 (last visited January 19, 2023).

| Review Title | Review |
|---|---|
| Perfect for every activity | Nice to wear to the beach and to all outdoor activities.  I even did housework. |
| Love them so purchased another pair | This is my second pair and I love them.  Wore them on vacation as beach and also water shoes to prevent damaging my feet on rocks ( they float so I won't lose them in the water). |
| LOVE | Wear these bad boys whenever I'm going to the beach, paddle boarding, or even running errands. Super comfy, I do have a wide foot so these working amazingly for me. |
| Love them | My granddaughter turned me on to them in 2021. Now I have 8 pair. Love them. Best beach/pool shoes ever |
| Stop trying other shoes, these are the best | I boat in these shoes. They don't slip. I walk on the boardwalk to the beach in these shoes and when I take them off I have to keep an eye in them because they get stolen because they are the best. I do woodworking in these shoes and when I drop heavy things on my feet they bounce off painlessly. They are my house shoes because they are easy to slip on and off without leaning over. I have been wearing crocs since they first came out and will continue to do so. |
| A good deal for many occasions | I've been wearing the Croc Clog for over ten years. They are great and offer better protection for your feet and toes than sandals and open toe shoes. They make great bedroom shoes. They are great for walking on cobblestone streets and pathways. Kind of like an all terrain vehicle for your feet. Great as shoes for the beach. Great as shower shoes and pool shoes when you're swimming at a hotel or motel. The support they offer your feet is great. Great, great, great! |
| Comfortable and versatile | I purchased this product specifically for the beach and they were great! I also wear them to work now I will definitely be getting more crocs to add to my wardrobe. |

MEMORANDUM IN SUPPORT
Case No. 3:22-CV-07463-TLT

4865-4659-3611v.2

| Review Title | Review |
|---|---|
| Sooo comfortable | Wore these during a hike, climbed and walked through water and they were still in great condition. They're just perfect for a lot of things, adventurous outings, lazy grocery run in sweats, beach and amusement park days. Read they were good for people who have knee pain, so will be getting my mom a pair soon. |
| Perfect | They fit perfect.  I work on the beach and they are great. |
| Love My Crocs | I've been a Crocs customer for many years and have seven pair. I love them for their comfortable fit, which is perfect for use at the beach, the pool, for yard work and casual use at home. They are easy to keep clean and last for years. |
| Hooked on Crocs | I use my Crocs for pool, beach, shopping, yard cleaning and just chill days at home. They're really comfy for just about anything you'd like to do. I currently have 3 pairs and looking to purchase a few more lol. |
| I would buy this product for the summer again and again | I use it for outside water play and beach days. Also my pool days, easy to clean and dry fast |
| yes | This is my fourth pair of classics.  My go to all around foot comfort.  71 yrs old and they make my feet feel very good as a very active senior gardening, boating, fishing, crabbing and just goofing off at the beach. |

When these comments (fourteen samples, to match the fourteen offered by Plaintiffs) are considered in conjunction with those cited by Plaintiffs, and when the overall abundance of more than 26,000 five-star ratings for Classic Clog crocs is considered, it becomes very apparent that **the vast majority** of Plaintiffs' proposed national and California class members (defined to be all Crocs purchasers) lack concrete injury or actual harm so as to support a claim for individual damages.  It is clear from comments such as those above, from the website incorporated by Plaintiffs into their Complaint, that under the Supreme Court's recent *TransUnion* decision the proposed classes of all Crocs

4865-4659-3611v.2

purchasers will be heavily populated by persons who do not share Plaintiffs' alleged experiences with their Crocs™ shoes and therefore were not injured.  Thus, Plaintiffs' proposed classes of all Crocs purchasers will not be certifiable.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original); *see also Olean Wholesale Grocery Cooperative Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (noting that "a court must consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad").

When it is clear on the face of the Complaint that a proposed class is not certifiable, then class allegations can be stricken from the Complaint pursuant to Rule 12(f). Alternatively, because it is clear that the putative class has not been alleged in a way to establish Article III standing would likely exist, the class allegations can be dismissed pursuant to Rule 12(b)(1).

### C.    Conclusion

For the reasons detailed above, even if Plaintiffs' causes of action are not dismissed in their entirety under Rule 12(b)(6), then at the least Plaintiffs' inadequate class allegations should be  dismissed and/or stricken.  Before Plaintiffs can require Defendant to undergo discovery in a putative class action putting tens of millions of shoe purchases at issue, it is incumbent on Plaintiffs to  (1) define a class that they would have standing to represent and (2) define a class that is not largely populated with uninjured persons.[3]

---

[3] Of course, as the Ninth Circuit has recently noted, fail-safe class definitions are no longer permitted in this Circuit, so Plaintiffs will need to see if they can define a viable class membership that is not fail-safe. *See Olean,* 31 F.4th at 669 n.14 (noting that "[a] court may not, however, create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct.").

4865-4659-3611v.2

**KELLEY DRYE & WARREN LLP**


By: _/s/ Becca Wahlquist_
      Becca Wahlquist
      Geoffrey Castello (*pro hac to be filed*)

Attorneys for Crocs, Inc.

4865-4659-3611v.2