**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  tony@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA VALENTINE and RUBY CORNEJO, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>CROCS, INC.,<br><br>                              Defendant. | Case No. 3:22-cv-07463-TLT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE**<br><br>Hon. Trina L. Thompson<br><br>Hearing Date: April 25, 2023<br>Hearing Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................. 3

    A.    Plaintiffs Adequately Allege Breach of Express and Implied Warranties. ................ 3

        1.    Plaintiffs allege breach of express warranties. ................................................ 3

            i.    Plaintiffs Allege Breach of the Limited Warranty ............................ 3

            ii.   Plaintiffs allege breach of warranties made through
                advertisements. ................................................................................. 5

        2.    Plaintiffs adequately allege implied warranty claims. ..................................... 6

            i.    Plaintiffs relied on Crocs' advertisements. ....................................... 7

            ii.   Crocs extended a warranty to purchasers of the Products. ................. 8

            iii.  Plaintiffs adequately allege a claim for breach of the implied
                warranty of fitness for a particular purpose. .................................... 10

        3.    Plaintiffs allege a violation of a Song-Beverly Consumer Warranty Act
            (SBCWA). ....................................................................................................... 11

        4.    Plaintiffs' claims under the Magnuson Moss Warranty Act withstand
            dismissal. ....................................................................................................... 13

    B.    Crocs Does Not Challenge Plaintiffs' UCL Unfair and Unlawful Prong Claims. .... 13

        1.    Plaintiffs' unlawful prong claim must proceed. .............................................. 13

        2.    Plaintiffs' UCL unfair prong claim must proceed. .......................................... 14

    C.    Plaintiffs State Plausible Fraud-Based Claims (CLRA, FAL, and UCL Fraud
        Prong). .................................................................................................................. 16

        1.    Plaintiffs satisfy Rule 9(b). ........................................................................... 16

        2.    Plaintiffs adequately plead reliance. .............................................................. 17

        3.    Plaintiffs allege a negligent misrepresentation claim. .................................... 19

    D.    There is No Valid Basis to Strike the Class Allegations at This Stage. .................... 20

        1.    Plaintiffs have standing to assert claims for all the Products. ........................ 20

        2.    The 30,000 extraneous customer comments do not provide a basis to
            strike the class allegations. ............................................................................ 21

    E.    Plaintiff Requests Leave to Amend If Necessary. ................................................... 25

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS & STRIKE
3:22-CV-07463-TLT

# TABLE OF AUTHORITIES

**Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014) ............. 20, 21

*Apodaca v. Whirlpool Corp.*,
    No. SACV 13-00725 JVS (ANx), 2013 U.S. Dist. LEXIS 176363 (C.D. Cal. Nov. 8, 2013) ..... 14

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4387 PJH, 2011 U.S. Dist. LEXIS 57348, 2011 WL 2111796
    (N.D. Cal. May 26, 2011) ........................................................................................................ 23

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) ...................... 21

*Atkinson v. Elk Corp. of Texas*,
    142 Cal. App. 4th 212 (Cal. Ct. App. 2006) ........................................................................... 7, 10

*Birdsong v. Apple Inc.*,
    No. C 06-02280 JW, 2007 U.S. Dist. LEXIS 111342 (N.D. Cal. Dec. 14, 2007) ................... 5, 11

*Boddie v. Signature Flight Support Corp.*,
    No. 19-cv-03044-DMR, 2019 U.S. Dist. LEXIS 130858 (N.D. Cal. Aug. 5, 2019) ................... 23

*Bret Harte Union High Sch. Dist. v. Fieldturf, USA, Inc.*,
    No. 1:16-cv-00371-DAD-SMS, 2016 U.S. Dist. LEXIS 83295 (E.D. Cal. June 27, 2016) ......... 20

*Brown v. Food for Life, Inc.*,
    No. 3:21-cv-10054-TLT, ECF 40 (N.D. Cal. Feb. 28, 2023) ...................................................... 20

*Brown v. Hain Celestial Group, Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ......................................................................................... 3

*Brown v. Van's Int'l Foods, Inc.*,
    No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 154627 (N.D. Cal. Aug. 22, 2022) ............ 18, 25

*Bryde v. GM, LLC*,
    No. 16-cv-02421-WHO, 2016 U.S. Dist. LEXIS 159707 (N.D. Cal. Nov. 17, 2016) ................... 9

*Bush v. Rust-Oleum Corp.*,
    No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507 (N.D. Cal. Jan. 4, 2021) ................................ 4

*CardStarter, Ltd. v. SundaeSwap, Inc.*,
    No. 22-cv-00757-RS, 2022 U.S. Dist. LEXIS 182647 (N.D. Cal. Oct. 5, 2022) ......................... 15

*Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*,
    No. C 11-0299 PJH, 2012 U.S. Dist. LEXIS 151734 (N.D. Cal. Oct. 22, 2012) .......................... 9

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ......................................................................................... 7, 9, 13

*Clerkin v. MyLife.Com*,
    No. C 11-00527 CW, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ......................... 23

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
    398 F. Supp. 3d 623 (N.D. Cal. 2019) ....................................................................................... 15

*Corbett v. Pharmacare U.S., Inc.*,
    567 F. Supp. 3d 1172 (S.D. Cal. 2021) ......................................................................................... 5

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ................................................................................................... 22

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) .................................................................................. 18

*DeSoto v. Yellow Freight Sys.*,
   957 F.2d 655 (9th Cir. 1992) ................................................................................... 25

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ........................................................................... 14, 15

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ................................................................................... 18

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) .................................................................... 4

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ................................................................................. 13

*Frye v. Wine Library, Inc.*,
   No. 06-5399, 2006 U.S. Dist. LEXIS 96075 (N.D. Cal. Dec. 4, 2006) ...................... 20

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
   82 Cal. App. 3d 65 (1978) ......................................................................................... 9

*Gitson v. Trader Joe's Co.*,
   63 F. Supp. 3d 1114 (N.D. Cal. 2014) ............................................................... 20, 21

*Grammens v. Bankers Standard Ins. Co.*,
   No. 3:21-cv-06427-WHO, 2022 U.S. Dist. LEXIS 21705 (N.D. Cal. Feb. 7, 2022) ... 13

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
   No. 16-cv-02954-LB, 2016 U.S. Dist LEXIS 141478 (N.D. Cal. Oct. 12, 2016) ........ 19

*Ham v. Hain Celestial Group, Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ..................................................................... 19

*Huu Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ................................................................................... 24

*In re Adobe Sys. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..................................................................... 15

*In re Clorox Consumer Litig.*,
   894 F.Supp.2d 1224 (N.D.Cal. 2012) ...................................................................... 16

*In re General Motors LLC CP4 Fuel Pump Litig.*,
    393 F. Supp. 3d 871 (N.D. Cal. July 2, 2019) ........................................................... 9

*In re Google Phone Litig.*,
   No. 10-CV-01177-EJD, 2012 U.S. Dist. LEXIS 108611 (N.D. Cal. Aug. 2, 2012) ....... 9

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................... 5, 8, 9

*In re Nexus 6P Products Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................. 8, 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................. 6, 8, 9

*In re Vizio, Inc.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................................... 14

*Johnson v. Triple Leaf Tea, Inc.*,
   No. C-14-1570 MMC, 2014 U.S. Dist. LEXIS 134111 (N.D. Cal. Sep. 23, 2014) ...... 7, 8

*Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.,*
    315 Fed. Appx. 603 (9th Cir. 2008) ........................................................................... 20

*Kanan v. Thinx Inc.,*
    No. CV 20-10341 JVS (JRPx), 2021 U.S. Dist. LEXIS 191225 (C.D. Cal. June 23, 2021) .... 6, 16

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 16

*Keith v. Buchanan,*
    173 Cal. App. 3d 13 (1985) ......................................................................................... 11

*Keith v. Buchanan,*
    220 Cal.Rptr. 392 (1985) ............................................................................................... 3

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ................................................................................. 22, 23

*Klein v. Chevron U.S.A., Inc.,*
    137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012).................................................................. 13

*Kwan v. Mercedes-Benz of North America, Inc.,*
    23 Cal. App. 4th 174 (1994) ......................................................................................... 12

*Kwikset Corp. v. Superior Court,*
    246 P.3d 877 (Cal. 2011) .............................................................................................. 25

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ........................................................................................ 22

*Loomis v. Slendertone Distrib., Inc.,*
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ..................................................................... 7, 9

*Maisel v. S.C. Johnson & Son, Inc.,*
    No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203 (N.D. Cal. May 5, 2021) ...................... 20

*Martinez v. Metabolife Int'l, Inc.,*
    113 Cal.App.4th 181 (2003) .......................................................................................... 10

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) ...................................................................................... 25

*McVicar v. Goodman Glob., Inc.,*
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) ......................................................................... 4, 5

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC,*
    No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394 (N.D. Cal. Aug. 6, 2021) ...................... 20

*Nat'l R.V., Inc. v. Foreman,*
    34 Cal. App. 4th 1072, 40 Cal. Rptr. 2d 672 (1995) .................................................. 12

*Oceguera v. Baby Trend, Inc.,*
    No. 5:21-cv-00398-JWH-KKx, 2022 U.S. Dist. LEXIS 54430 (C.D. Cal. Jan. 14, 2022)......... 4, 7

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022).......................................................................................... 24

*Retail Prop. Trust v. United Broth. of Carpenters,*
    768 F.3d 938 (9th Cir. 2015)......................................................................................... 23

*Rice-Sherman v. Big Heart Pet Brands, Inc.,*
    No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar. 16, 2020) ...................... 8

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.,*
    144 Cal. App. 4th 785, 50 Cal. Rptr. 3d 731 (2006) .................................................. 12

*Roffman v. Perfect Bar, LLC*,
   No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762 (N.D. Cal. Sep. 2, 2022) ...................... 17

*Roffman v. Rebbl, Inc.*,
   No. 22-CV-05290-JSW, 2023 U.S. Dist. LEXIS 16166, 2023 WL 1420724
   (N.D. Cal. Jan. 31, 2023)............................................................................................... 20, 21

*Rosales v. FitFlop USA, LLC*,
   882 F. Supp. 2d 1168 (S.D. Cal. 2012) ..................................................................... 6, 17

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009)................................................................................ 5

*Schauer v. Mandarin Gems of Cal., Inc.*,
   23 Cal.Rptr.3d 233 (2005)................................................................................................ 8

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ........................................................................................ 25

*Shaeffer v. Califia Farms, LLC*,
   258 Cal. Rptr. 3d 270 (Cal. Ct. App. 2020).................................................................... 18

*Siqueiros v. GM LLC*,
   No. 16-cv-07244-EMC, 2021 U.S. Dist. LEXIS 169326 (N.D. Cal. Sep. 7, 2021).......... 24

*Spectrum Scis., LLC v. Celestron Acquisition, LLC*,
   No. 5:20-cv-03642-EJD, 2021 U.S. Dist. LEXIS 103832 (N.D. Cal. June 2, 2021) .......... 14

*Swift v. Zynga Game Network, Inc.*,
   No. C 09-05443 SBA, 2010 U.S. Dist. LEXIS 117355 (N.D. Cal. Nov. 3, 2010) .............. 23

*Tan v. Quick Box, LLC*,
   No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427 (S.D. Cal. Dec. 8, 2020) .............. 17

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   No. C-13-1803 EMC, 2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014) .............. 23

*TransUnion LLC v. Ramierez*,
   141 S. Ct. 2190 (2021) .................................................................................................. 24

*Van Mourik v. Big Heart Pet Brands, Inc.*,
   No. 3:17-cv-03889-JD, 2018 U.S. Dist. LEXIS 34796 (N.D. Cal. Mar. 1, 2018) .............. 6, 7, 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 16

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014) .............. 19

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) ................................................................................. 3, 4, 5

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) .......................................................................................... 23

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (1986) ............................................................................................ 5

*Williams v. Gerber Prods. Co.*,
   552 F. 3d 934 (9th Cir. 2008) ......................................................................................... 18

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018)......................................................................... 13, 16

**Statutes**

15 U.S.C. § 45(a)(1) ...................................................................................................... 21

5 U.S.C. § 2301 ............................................................................................................... 1

Cal. Bus. & Prof. Code § 17500 ...................................................................................... 1

Cal. Civ. Code § 1559 ................................................................................................... 13

Cal. Civ. Code § 1791(c) ............................................................................... 16, 17, 18

Cal. Civ. Code § 1791.1 .................................................................................................. 1

Cal. Civ. Code § 1791.1(a)(2) ........................................................................................ 9

Cal. Civ. Code § 1792 ................................................................................................. 1, 9

Cal. Civ. Code § 1792.3 ................................................................................................ 17

Cal. Com. Code § 2313 .................................................................................................. 5

Cal. Com. Code § 2313(1)(a) ......................................................................................... 4

Cal. Com. Code § 2313(1)(b) ......................................................................................... 4

Cal. Com. Code § 2314 .................................................................................................. 1

Cal. Com. Code § 2314(2)(c) ......................................................................................... 9

Cal. Com. Code § 2315 ................................................................................. 1, 14, 15

U.C.C. § 2-313 .......................................................................................................... 5, 7

**Rules**

Fed. R. Civ. P. 12(f) ..................................................................................... 2, 31, 32

Fed. R. Civ. P. 56(c)(4) ............................................................................................... 31

Fed. R. Civ. P. 9(b) .............................................................................................. 22, 23

L. Civ. R. 7-5(a) ......................................................................................................... 31

**Regulations**

16 C.F.R. § 238.1-4 ............................................................................................ 14, 15

16 C.F.R. § 238.2(a) ........................................................................................... 2, 15

## I.      INTRODUCTION

Defendant Crocs, Inc. ("Crocs") sells outdoor recreational shoes that it markets as suitable for "all terrain[s]" including wet, hot and sunny environments. However, exposure to water, heat, or sun causes the proprietary resin in the shoes (Croslite) to shrink, rendering the shoes unwearable.

Like millions of other consumers, Plaintiffs bought these shoes believing that they would behave like ordinary shoes (i.e., remain the same size for their life span) even when exposed to the outdoor environments for which they were advertised. Complaint (ECF 1) ("Compl."), ¶¶ 64, 73. But the products Plaintiffs purchased quickly became unwearable and unusable through ordinary use. Plaintiffs bring suit for (1) breach of express warranty; (2) breach of the implied warranty of merchantability, Cal. Com. Code § 2314; (3) breach of the implied warranty of fitness for a particular purpose, Cal. Com. Code § 2315; (4) violations of implied warranties under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791.1 and 1792; (5) violation of the Magnuson-Moss Warranty Act, 5 U.S.C. § 2301, et seq; (6) fraudulent concealment; (7) common law fraud; (8) violation of the Consumer Legal Remedies Act ("CLRA"); (9) False Advertising, Business and Professions Code § 17500, et seq; (10) negligent misrepresentation; and (11) violation of the Unfair Competition Law ("UCL") unlawful, unfair and fraud prongs.

All goods come with an implied warranty that they will be fit for their ordinary purpose. Crocs breached this warranty by selling shoes that lose their fundamental purpose—to be worn as shoes. Crocs also specifically marketed the Products for the particular purpose of using them as water shoes and for outdoor recreation and activities. Crocs breached the implied warranty of fitness for a particular purpose, along with its express warranties, because those conditions render the Products unusable. Crocs relies on dated law to argue that these claims fail due to an absence of reliance and vertical privity. But, as explained below, current law refutes the notion that either is required.

Crocs' representations that the Products are "water-friendly," capable of "shed[ding] water," and "all-terrain," as well as its advertisements promoting the Products for gardening and outdoor activities give rise to additional liability for fraud-based claims because the representations deceived consumers. Crocs contends these claims fail due to an absence of reliance. But Plaintiffs allege they bought the Products based on representations that the Products were "water-friendly" and "all-

terrain," and other specific advertisements that showed the Products used for hiking and gardening. *See* Compl. ¶¶ 58, 62, 66, 71. Crocs also ignores that reliance on an omission occurs when a plaintiff would have "behaved differently" had the information been disclosed. Plaintiffs repeatedly allege just that. *See Id*. ¶¶ 44, 63–4, 72–3.

Another fatal problem for Crocs' motion is that it completely overlooks Plaintiffs' UCL claims under the unlawful and unfair prongs. The unlawful prong claim alleges that Crocs unlawfully violated the CLRA, Magnuson-Moss Warranty Act, the FAL and breached express and implied warranties. Further, the unfair prong claim alleges that Crocs' violated the FTC's policy on bait advertising, which prohibits "statement[s] or illustration[s] … [that] create[] a false impression of the grade, quality, … size, [or] …usability… of the product offered…". 16 C.F.R. § 238.2(a). At a minimum, these claims must proceed since Crocs does not mention them once, let alone move to dismiss them.

Perhaps sensing that its arguments are insufficient to defeat Plaintiffs' claims, Crocs urges the Court to strike the class allegations under Rule 12(f), claiming that Plaintiffs do not have standing for unpurchased products and that the totality of 30,000 consumer comments on the Crocs website show that most consumers have not experienced shrinkage problems. As to the first argument, Plaintiffs have standing to sue for all the Products because they are all substantially similar: all are made from Croslite; and all shrink when exposed to sunlight, water, or heat. There is also no need for the Court to comb through all 30,000 customer comments since they are matters outside the pleadings and obvious hearsay. Even if consideration were appropriate, the Court cannot make the preposterous inference that Crocs asks it to make (i.e., that the customers did not, in fact, experience shrinkage). More broadly, the argument fundamentally ignores Plaintiffs' theories of liability: the defect in the design and the misrepresentations and omissions about the Products. Overpayment for a product that is defectively designed, or misrepresented triggers liability, not whether or if the defect manifests for all customers who post on a company owned, and edited website.

The Court should deny the Motion, in full.

1    **II.    ARGUMENT**

2        **A.    Plaintiffs Adequately Allege Breach of Express and Implied Warranties.**

3            **1.    Plaintiffs allege breach of express warranties.**

4        Under California law, an express warranty is created by "[a]ny affirmation of fact or promise

5    made by the seller to the buyer which relates to the goods and becomes part of the basis of the

6    bargain[.]" Cal. Com. Code § 2313(1)(a). The same is true for "[a]ny description of the goods which

7    is made part of the basis of the bargain[.]" *Id.* § 2313(1)(b). "[T]o prevail on a breach of express

8    warranty claim, the plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact

9    or promise,' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain';

10   and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227

11   (2010); *see also Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012).

12            ***i.    Plaintiffs Allege Breach of the Limited Warranty.***

13       Plaintiffs allege the defective shoes breached the Limited Warranty that Crocs posts on its

14   website. Compl. ¶ 23. It applies to "all of its Crocs™ products…purchased by consumers either

15   directly from Crocs or from Crocs' authorized retailers" and "warrants" that the products will be "free

16   of manufacturing defects for 90 days from the date of purchase." *Id.* Plaintiffs specifically allege that

17   Crocs breached the warranty because the Products were "manufactured using a defective material not

18   capable of withstanding normal conditions." *Id.* ¶ 92. Crocs' sole basis for challenging this claim is

19   an alleged lack of reliance on the Limited Warranty, which it asserts is necessary to state a claim. *See*

20   Motion to Dismiss (ECF 14) ("MTD") at 6.

21       Crocs bases its argument on dated law. Reliance is no longer required to plead a claim for

22   breach of express warranty. "Pre-Uniform Commercial Code law governing express warranties

23   required the purchaser to prove reliance on specific promises made by the seller." *Weinstat*, 180 Cal.

24   App. 4th at 1227. But since the enactment of the U.C.C., "courts have held that reliance is no longer

25   required." *Id.* (reversing a lower court's ruling since it "rest[ed] on the incorrect legal assumption that

26   a breach of express warranty claim requires proof of prior reliance."); *Keith v. Buchanan*, 220

27   Cal.Rptr. 392, 397–98 (1985) (explaining that, under the U.C.C., "the concept of reliance has been

28   purposefully abandoned"); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1128 (N.D. Cal.

2013) ("Proof of reliance on specific promises is not required."); *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507, at *14 (N.D. Cal. Jan. 4, 2021) (same). Indeed, comment 3 to the analogous U.C.C. provision makes this point clear. It provides: "in actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence *no particular reliance need be shown in order to weave them into the fabric of the agreement*. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof." *Weinstat*, 180 Cal. App. 4th at 1227 (citing U.C.C. § 2-313, comment 3) (emphasis added).

Rather than reliance, courts, instead, ask whether the representation became part of the "basis of the bargain." *Weinstat*, 180 Cal. App. 4th at 1227. The determination "focuses on *the seller's* behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller in essence agreed to sell." *Id.* at 1228 (internal quotation marks omitted); *see also* Cal. Com. Code § 2313. "The precise time when words of description or affirmation are made . . . is not material"—***even promises made after purchase***, such as those contained in product manuals, constitute an 'affirmation of fact or promise' if it can be "fairly . . . regarded as part of the contract." *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D. Cal. 2014), *quoting Weinstat*, 180 Cal. App. 4th at 1230 (emphasis added). Indeed, California law "creates a presumption that the seller's affirmations go to the basis of the bargain." *Weinstat*, 180 Cal. App. 4th at 1230; *see also Oceguera v. Baby Trend, Inc.*, No. 5:21-cv-00398-JWH-KKx, 2022 U.S. Dist. LEXIS 54430, at *20 (C.D. Cal. Jan. 14, 2022).

Here, Crocs posts its Limited Warranty on its website for the public to see, which consumers can view before or after purchase. Compl. ¶ 23. It proclaims to consumers that it "warrants" the shoes are free of defects and that it even extends the warranty to consumers who do not buy directly through the website, but, rather through authorized retailers.[1] *Id.* Crocs' view is, in essence, that it has no obligation to stand by the warranty unless a consumer actually read and rely on a written warranty before purchase. Such a view "ignore[s] the practical realities of consumer transactions" and would

---

[1] Crocs does not dispute that Plaintiff Cornejo bought the Products from an authorized retailer.

"render almost all consumer warranties an absolute nullity." *Weinstat*, 180 Cal. App. 4th at 1230; s*ee also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972 (N.D. Cal. 2014) ("According to Ford, 'basis of the bargain' means that Plaintiffs must have been aware of and relied on the limited warranty prior to purchasing their vehicles — i.e., without reliance, no express warranty claim is viable. The Court does not agree. Comment 3 to UCC §2-313 provides as follows: . . .") For this reason, a plaintiff need only "show that the statement was made available to them."[2] *McVicar*, 1 F. Supp. 3d at 1057. Crocs did so by posting the Limited Warranty on its website. Plaintiffs further allege that the "warranty was a material factor in the decision of Plaintiffs... to purchase the Products at the price they paid and became part of the basis of the transaction." Compl. ¶ 90. No more is required.

The only case Crocs relies upon, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986–87 (N.D. Cal. 2009), did not consider *Weinstat*, the enactment of the U.C.C., or comment 3 to U.C.C. § 2-313 (a basis of the *Weinstat* decision). Instead, it cites to *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986), "a pre-UCC law express warranty case" as support for the concept that reliance is required. *Corbett v. Pharmacare U.S., Inc.*, 567 F. Supp. 3d 1172, 1187–88 (S.D. Cal. 2021). But as explained above, *Williams*' legal reasoning no longer remains good law in the wake of the U.C.C., and the cases that follow.

> ### ii.   *Plaintiffs allege breach of warranties made through advertisements.*

Plaintiffs also allege that Crocs made express warranties for the Products "in misleading advertising and marketing that promised the shoes 'shed water,' are 'water-friendly,' 'all-terrain,' 'pool,' 'garden,' and 'beach' appropriate." Compl. ¶ 90. California law recognizes that "an express warranty can be created by advertisements." *Birdsong v. Apple Inc.*, No. C 06-02280 JW, 2007 U.S. Dist. LEXIS 111342, at *12–13 (N.D. Cal. Dec. 14, 2007). Crocs contends that the claim fails because "none of the actual advertisements that Plaintiffs include in their Complaint contain any language making an express warranty that Crocs™ shoes would never shrink." MTD at 7. The argument misunderstands the warranty and alleged breach. Crocs' advertising warranted that the Products "shed

---

[2] *Weinstat*'s holdings are not confined to direct sellers; rather, courts extend them to manufacturers. *See, e.g.*, *Zheng-Lawson v. Toyota Motor Corp.*, No. 17-cv-06591-BLF, 2018 U.S. Dist. LEXIS 210615, at *11 (N.D. Cal. Dec. 13, 2018); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 973–74.

water," are "water-friendly," "all-terrain," "pool," "garden," and "beach" appropriate. Compl. ¶ 90. Crocs breached these warranties because the Products are not water-friendly and are not suitable for pool, garden and beach environments because those conditions render the Products unusable.

Crocs also argues that "Plaintiffs fail to identify any specific advertisements that they themselves relied on that they claim established an express warranty." MTD at 7. A plaintiff need only be "exposed to the advertising" that forms the basis of the express warranty. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1183 (C.D. Cal. 2010). In any event, Plaintiffs do allege that they all saw and purchased the Products based on Crocs advertisements stating that the shoes were capable of "shed[ding] water," "water-friendly," "all-terrain," and suitable for gardening. Compl. ¶¶ 58, 62. Plaintiffs further allege that they paid more than they otherwise would have as a result of the representations. *Id*. ¶¶ 58, 62–3, 66, 71–2. These allegations more than suffice. *See Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPx), 2021 U.S. Dist. LEXIS 191225, at *14–15 (C.D. Cal. June 23, 2021) (finding adequate exposure based on similar allegations); *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889-JD, 2018 U.S. Dist. LEXIS 34796, at *12 (N.D. Cal. Mar. 1, 2018) (finding that allegations that plaintiff paid more than she otherwise would have for pet food based on the defendant's representations sufficed).

### 2. Plaintiffs adequately allege implied warranty claims.

The implied warranty of merchantability runs with the sale of every product. *See* Cal. Civ. Code § 1792. To state a claim for breach of the implied warranty of merchantability, a plaintiff must demonstrate that the goods are not "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2); Cal. Com. Code § 2314(2)(c). Plaintiffs allege that the Products are not fit for their ordinary purpose (i.e., "to be worn as shoes") because they "shrink and become completely unwearable when exposed to ordinary amounts of sun, heat, and water." Compl. ¶ 102. Crocs does not attack the merits of this claim, but, instead, argues that all the implied warranty claims fail because Plaintiffs do not allege vertical privity (i.e., that they bought directly from Crocs).[3] *See* MTD at 7.

---

[3] Notably, Crocs does not assert this argument as to the implied warranty claim under the Song-Beverly Consumer Warranty Act. *See* MTD at 7–8.

While it is true that "California implied warranty claims generally require vertical contractual privity, and consumers who purchase from retailers do not stand in vertical contractual privity with a manufacturer," the "vertical privity rule may be relaxed 'when the plaintiff relies on written labels or advertisements of a manufacturer,' or when an express warranty is extended by the manufacturer." *Van Mourik*, 2018 U.S. Dist. LEXIS 34796, at *13, *quoting Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (Cal. Ct. App. 2006). Both situations apply here.

### i. *Plaintiffs relied on Crocs' advertisements.*

An exception to privity "arises when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Plaintiffs allege that they bought the Products based on Crocs' advertisements representing that the shoes were "water-friendly," can "shed water," and are "all-terrain." Compl. ¶¶ 58, 62, 66, 71. Plaintiffs further allege that these representations induced Plaintiffs "to purchase the Products at higher prices than they would otherwise have paid, had they known the truth of the matter." *Id*. ¶ 11. These allegations establish reliance and obviate privity. *See Johnson v. Triple Leaf Tea, Inc.*, No. C-14-1570 MMC, 2014 U.S. Dist. LEXIS 134111, at *14 (N.D. Cal. Sep. 23, 2014) (finding the exception applied since the implied warranty claim was based on reliance on a defendant's labels).

Crocs relies on *Loomis v. Slendertone Distrib., Inc*., 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019) to argue that this exception extends only to express warranty claims. But the Ninth Circuit's opinion in *Clemens* forecloses *Loomis*'s conclusion. *Clemens* specifically discussed the applicability of the exception when it evaluated whether "the implied warranty provision invoked by Clemens" requires a plaintiff to "stand in vertical privity with the defendant." 534 F.3d at 1023. Indeed, there would be no need for the Ninth Circuit to mention the exception with respect to an implied warranty claim if the exception applied only to express warranties.

For this reason, other courts, in accordance with *Clemens*, apply the exception to implied warranty claims. *See, e.g*., *Oceguera*, 2022 U.S. Dist. LEXIS 54430, at *21 (holding plaintiff properly pled privity for implied warranty because "Plaintiffs allege that they relied on Baby Trend's written advertisement"); *Van Mourik*, 2018 U.S. Dist. LEXIS 34796, at *13 (finding that the privity requirement does not apply when "when the plaintiff relies on written labels or advertisements of a

- 7 -

manufacturer"); *Johnson*, 2014 U.S. Dist. LEXIS 134111, at *14 (holding the label and advertising exception applied to both express and implied warranties and "plaintiff need not allege privity" for her implied warranty claim).

### ii.    *Crocs extended a warranty to purchasers of the Products.*

The law also recognizes that when a manufacturer extends a warranty for the benefit of the end consumers who buy the product from a retailer, as opposed to the manufacturer, those consumers "are excused from [the vertical privity] requirement as intended third party beneficiaries" who can sue to enforce both the express and implied warranties that arise from that written warranty. *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197, at *35–37 (N.D. Cal. Mar. 16, 2020); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d at 1185; *Van Mourik*, 2018 U.S. Dist. LEXIS 34796, at *13. To invoke the exception, a plaintiff must allege the existence of "a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary." *Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal.Rptr.3d 233, 239 (2005); *see also In re Nexus 6P Products Liab. Litig.*, 293 F. Supp. 3d 888, 922 (N.D. Cal. 2018). The question is a matter of contract interpretation. *Id.*

Plaintiffs are beneficiaries of the Limited Warranty. They allege: "Consumers, not retailers were the intended beneficiaries of this implied warranty, as demonstrated by Crocs' Limited Warranty, which was clearly written with consumers, not retailers, in mind as beneficiaries." Compl. ¶¶ 90, 101, 112, 139; *see also* ¶ 145. The Limited Warranty itself provides that it applies to products "purchased by consumers either directly from Crocs or from Crocs' authorized resellers (including authorized retail and Internet-based sellers." *Id.* ¶ 23.

Courts in this district have found that nearly identical allegations fall within the exception to privity. *In re Nexus 6P Products Liab. Litig.*, 293 F. Supp. 3d at 922–23 (finding third-party beneficiary status when plaintiffs alleged "The retailers were not intended to be the ultimate consumers of the Nexus 6P smartphones and have no rights under the warranty agreements connected with the Nexus 6P smartphones; these agreements were designed for and intended to benefit the end-users only"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 982–84 and n. 15 (plaintiffs

had third-party beneficiary status when they alleged that the retailers "ha[d] no rights under the warranty agreements" and "the warranty agreements were designed for and intended to benefit the ultimate consumers only"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F.Supp.2d at 1185 (finding third-party beneficiary exception applied to a warranty when plaintiffs alleged that they "were the intended consumers" who bought from "a network of dealers who are agents of Defendants").

While the one case upon which Crocs relies, *Loomis*, disavowed the exception, it acknowledged "a split" among courts. 420 F. Supp. 3d at 1088. Judges Orrick, Davila, Hamilton, Freeman, Tigar, and Chen side against *Loomis* and recognize the exception. *See Bryde v. GM, LLC*, No. 16-cv-02421-WHO, 2016 U.S. Dist. LEXIS 159707, at *44–47 (N.D. Cal. Nov. 17, 2016) (Orrick, J.); *In re Nexus 6P Products Liab. Litig.*, 293 F. Supp. 3d at 922–23 (Freeman, J.); *In re MyFord Touch*, 46 F. Supp. 3d at 982–84 and n. 15 (Chen, J.). *In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 U.S. Dist. LEXIS 108611, at *23 (N.D. Cal. Aug. 2, 2012) (Davila, J.); *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, No. C 11-0299 PJH, 2012 U.S. Dist. LEXIS 151734, at *35 (N.D. Cal. Oct. 22, 2012) (Hamilton, J.); *In re General Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 883–4 (N.D. Cal. July 2, 2019) (Tigar, J.).

Judges Orrick and Freeman expressly found that Cal. Civ. Code § 1559, which codifies the third-party beneficiary exception, provides an independent, statutory exception to privity. *See Bryde*, 2016 U.S. Dist. LEXIS 159707, at *44–47; *In re Nexus 6P Products Liab. Litig.*, 293 F. Supp. 3d at 922. Cases rejecting the exception, like *Loomis*, often point to *Clemens* as failing to acknowledge it in its discussion of the exceptions to the privity requirement. *See Loomis*, 420 F. Supp. 3d at 1088. But, as Judge Orrick explained, the "*Clemens* plaintiff did not argue for application of the third-party beneficiary exception and the court did not consider its existence." *Bryde*, 2016 U.S. Dist. LEXIS 159707, at *44–47. The argument also ignores that California state courts have applied the exception to implied warranty claims. *See Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69–70 (1978) ("California cases permit a third party to bring an action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract");

*Atkinson*, 142 Cal. App. 4th at 229. The better-reasoned approach accords with California law and recognizes the third-party beneficiary exception.

### iii.   *Plaintiffs adequately allege a claim for breach of the implied warranty of fitness for a particular purpose.*

The warranty of fitness for a particular purpose, set forth in Cal. Com. Code § 2315, applies when "a seller has reason to know that a buyer wishes goods for a particular purpose and is relying on the seller's skill and judgment to furnish those goods." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal.App.4th 181, 189 (2003). Plaintiffs allege that they "were looking specifically for shoes for outdoor recreation and sunny, hot environments including gardens, lakes, rivers, beaches and pools." Compl. ¶ 112. Crocs had reason to know that Plaintiffs and other consumers desired to buy the Products for that purpose since Crocs "specifically advertis[ed] that its Croslite shoes were fit for those environments, both on its web site and in advertisements." *Id*. As a result, "consumers relied on Crocs to identify which of its shoes were fit for [the] particular purpose" of using them "in outdoor recreation and sunny, hot environments." *Id*.

Crocs asserts that the claim is inadequate because it contends that Plaintiffs do not allege that they wished to use the Products for a particular purpose. The comment 2 to Cal. Com. Code § 2315 refutes Crocs' argument:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Similarly, here, Plaintiffs allege reasons for buying the Products that go beyond the ordinary purpose of "walking upon ordinary ground"; they bought the Products for use as water shoes, outdoor recreation "like hiking and going to the beach or lake to swim," and gardening. Compl. ¶¶ 7, 61, 70, 112. These allegations fit within the framework contemplated under comment 2 to Cal. Com. Code § 2315.

Crocs further argues that Plaintiffs do not allege that they (1) "communicate[d] any particular purpose to the defendant, (2) "relied on the defendant's judgment to select a suitable product," or (3)

that "defendant knew of plaintiffs' particular purpose." MTD at 8. But the law does not require the first purported deficiency (i.e., communication of the "particular purpose"); rather, a plaintiff need only allege that the seller had "reason to know" of the intended purpose. *See* Cal. Com. Code § 2315; *see also Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985) (a plaintiff need only allege that "the seller at the time of contracting has reason to know of this particular purpose"). Plaintiffs easily satisfy this element because they allege that Crocs marketed the shoes for outdoor recreational activities in hot, sunny, and wet environments. Compl. ¶¶ 28–41, 112.These allegations also establish that Crocs "knew of plaintiffs' particular purpose."[4]

Finally, Plaintiffs "relied on the defendant's judgment to select a suitable product" because they allege they bought the shoes after "review[ing] Defendant's marketing materials, which indicated the shoes were appropriate for outdoor use in sunny, warm weather" and based on Crocs' "representations that they were capable of 'shed[ding] water,' [and] were 'water-friendly.'" *Id*. ¶¶ 62–3, 71–2. Plaintiffs further allege that had they known the Products were not "capable of withstanding sun, heat, and water," they "would not have purchased the Product, or would have paid less for it." *Id*. ¶¶ 64, 73. These allegations suffice to state a claim.

### 3. Plaintiffs allege a violation of a Song-Bervely Consumer Warranty Act (SBCWA).

Crocs next argues that Plaintiffs' SBCWA claims fail because such claims apply only to "consumers goods." It claims that the statute carves out "clothing" from "consumer goods" and "clothing" is defined to include "shoes," so the Products do not qualify as "consumer goods." MTD at 8–9. But the argument fails to take into account the full definition of "clothing," which, under Cal. Civ. Code § 1791(c), means "any wearing apparel, worn for any purpose, including under and outer garments, shoes, and accessories ***composed primarily of woven material, natural or synthetic yarn, fiber, or leather or similar fabric***" (emphasis added). The language following "accessories"

---

[4] These allegations distinguish this case from *Birdsong*, upon which Crocs relies. MTD at 8. In contrast to the allegations here, the plaintiffs in *Birdsong* did not allege that Apple engaged in a marketing campaign that showed the product being used for the purpose underlying their implied warranty claim, or otherwise have any knowledge of plaintiffs' desire to use their iPods to listen "to music for extended periods of time in busy or loud environments." *Birdsong*, 2008 U.S. Dist. LEXIS 112106, at *13–14.

establishes that "clothing," to the extent it applies to "shoes" extends only to shoes that are "composed primarily of woven material, natural or synthetic yarn, fiber, or leather or similar fabric." The Complaint alleges that the Products are not made of such soft materials; rather they "are made of a patented foam called Croslite," which is "a foamable ethylene vinyl acetate (EVA) along with polyolefin elastomer." Compl. ¶ 42. As a result, the Products are not "clothing" as defined in Cal. Civ. Code § 1791(c) and, therefore, qualify as "consumer products."

This interpretation aligns with the legislative history of the SBCWA. California enacted the statute in 1970. *See* Stat. 1970 ch 1333. It added a definition for "consumer goods" in 1971 that excluded "soft goods."[5] *See* Stat. 1970 ch 1523. It defined "soft goods" to mean "any pliable product substantially composed of woven material, natural or synthetic yarn or fiber, textile, or similar product." *See* Stats 1976 ch 416 § 1.5. The intent was to keep goods made of hard or synthetic materials, such as helmets, goggles, and ski boots, within the SBWA's reach but exclude products made of "yarn or fiber." California adopted the specific definition for "clothing" in 1978. "The 1978 amendment to section 1791, subdivision (a), served to enlarge the definition of 'consumer goods' from an exclusive list of specific products and their like to an all-inclusive list, including 'any new product ... except clothing and consumables.'" *Nat'l R.V., Inc. v. Foreman*, 34 Cal. App. 4th 1072, 1082, 40 Cal. Rptr. 2d 672, 679 (1995). The amendments, thus, were designed to expand the definition of "consumers goods" rather than to create additional exemptions. *Id*.

The SBWA "is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 809, 50 Cal. Rptr. 3d 731, 749 (2006), citing *Kwan v. Mercedes-Benz of North America, Inc.*, 23 Cal. App. 4th 174, 184 (1994). Accepting Crocs' interpretation would not only conflict with the plain language of the statue but would create new

---

[5] Specifically, it provided:

(a) "Consumer goods" means any new mobilehome, motor vehicle, machine, appliance, like product, or part thereof that is used or bought for use primarily for personal, family, or household purposes. "Consumer goods" also means any new good or product, except for soft goods and consumables..."

*See* Stats 1976 ch 416 § 1.5.

exceptions not envisioned within the original statute. The reading that accords with the language, legislative history, and broad remedial purpose of the statute is to find that Crocs are not "clothing" as defined under Cal. Civ. Code § 1791(c).

### 4. Plaintiffs' claims under the Magnuson Moss Warranty Act withstand dismissal.

Plaintiffs' claims for violations of the Magnuson Moss Warranty Act (MMWA) rise and fall with the express and implied warranty claims asserted under California law. *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d at 926 (citing *Clemens*, 534 F.3d at 1022). Crocs argues that because Plaintiffs' express and implied warranty claims fail, so too must the MMWA claim. MTD at 9. But, as explained above, Plaintiffs state viable express and implied warranty claims under state law. Their MMWA claim must proceed too. *See Clemens*, 534 F.3d at 1022.

### B. Crocs Does Not Challenge Plaintiffs' UCL Unfair and Unlawful Prong Claims.

Plaintiffs assert three claims under the UCL—one under the fraud prong, second under the unlawful prong, and the third under the unfair prong. Crocs' Motion does not mention, let alone seek dismissal of the unfair or unlawful prong claims, even though the Complaint makes these claims distinct. *See* Compl. ¶¶ 20, 196, 199–200. Presumably, it cannot do so, and, regardless, is barred from doing so for the first time in its reply brief. *See Grammens v. Bankers Standard Ins. Co.*, No. 3:21-cv-06427-WHO, 2022 U.S. Dist. LEXIS 21705, at *11 (N.D. Cal. Feb. 7, 2022).

### 1. Plaintiffs' unlawful prong claim must proceed.

Section 17200's "unlawful" prong "borrows violations of other laws and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (Cal. Ct. App. 2012). "Virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Id.* (internal quotation marks omitted); *see also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (same). This includes, as here, violations of the CLRA, FAL, express and implied warranties, the Magnuson-Moss Warranty Act, and misrepresentations and omissions. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) (CLRA and FAL may serve as predicate violations of an UCL unlawful prong claim); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 U.S. Dist. LEXIS

176363, at *32 (C.D. Cal. Nov. 8, 2013) (violations of the Song-Beverly Act, the CLRA, and the Magnuson-Moss Warranty Act may serve as predicate acts for an UCL unlawful prong claim).

As explained above and below, Plaintiffs adequately allege violations of the predicate acts underlying their unlawful prong claim, specifically violations of the CLRA, FAL, express and implied warranties, the Magnuson-Moss Warranty Act, and misrepresentations and omissions. UCL unlawful prong claims rise and fall with the alleged predicate acts. *See Spectrum Scis., LLC v. Celestron Acquisition, LLC*, No. 5:20-cv-03642-EJD, 2021 U.S. Dist. LEXIS 103832, at *41 (N.D. Cal. June 2, 2021). Plaintiffs state viable causes of action under the predicate acts. They further allege that they lost money as a result of the unlawful acts, as explained above and below, by paying a price premium for the Products. *See, e.g.*, Compl. ¶¶ 62–4, 71–3, 197; see also *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017) ("Plaintiffs plausibly allege that they would not have purchased or would have paid less for their Vizio Smart TVs had Vizio properly disclosed its consumer data collection and disclosure practices. This price premium theory is cognizable under California's UCL, CLRA, and FAL"). Plaintiffs' UCL unlawful prong claim, accordingly, must proceed.

### 2.    Plaintiffs' UCL unfair prong claim must proceed.

The unfairness claim is well-founded and fully pled. Plaintiffs allege that Crocs engaged in unfair conduct by making statements and illustrating in advertisements that the Products are suitable for hot, sunny, wet conditions and have a particular size at purchase, which gave consumers the false impression that the Products stay the same size for their full life cycle and are usable in hot, sunny, wet conditions. *See* Compl. ¶¶ 4–8, 10–13, 28–45, 150–1. Such conduct directly contravenes the FTC's policy on bait and switch advertising. *Id*. ¶ 200; *see also* 16 C.F.R. § 238.1-4.

There are at least two tests to evaluate whether a practice is "unfair" under the UCL. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256–57 (2010) (articulating the possible tests defining "unfair"). The "balancing test" asks whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Id*. The "tethering test" asks whether the unfairness and public policy at issue are "tethered to specific constitutional, statutory, or regulatory provisions." *Id*.

Plaintiffs have adequately alleged a claim under the unfair prong of the UCL under either test. The alleged misconduct is unscrupulous and substantially injurious to millions of consumers who are being duped into buying Products that they believed would remain the same size for their entire life cycle but, in reality, shrink to the point they become unwearable. Any utility of Crocs' conduct (if any) is outweighed by the harm they are causing to consumers to overpay for Products that quickly become worthless. *Cf. In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (overpayment for products is a sufficient injury to "to bring a claim under the 'balancing test.'")

Under the "tethering test," Defendants' conduct also offends the Federal Trade Commission's policy against bait advertising. *See* 16 C.F.R. § 238.1-4; Compl. ¶ 200. The policy specifically provides that "No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the policy in such a manner that later, on the disclosure of true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). Crocs' statements and advertising, including its representations that the Products are "all-terrain" and "water-friendly" and images showing models wearing the Products in hot, wet, sunny environments, violated the FTC policy since it creates a false impression as to the quality, size, and usability of the Products. The policy is tethered to federal statues prohibiting the use of unfair or deceptive acts or practices. 15 U.S.C. § 45(a)(1) ("unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."); *see also CardStarter, Ltd. v. SundaeSwap, Inc.*, No. 22-cv-00757-RS, 2022 U.S. Dist. LEXIS 182647, at *14 (N.D. Cal. Oct. 5, 2022) (finding plaintiffs stated unfair prong claim based on bait and switch tactics).

Finally, Plaintiffs note that reliance is not a necessary element of a claim under the UCL's "unfair" prong. *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646 (N.D. Cal. 2019) (noting that some cases have held to the contrary, but denying a motion to dismiss a claim under the UCL unfair prong despite dismissing claims under the FAL and the UCL unlawful prong based on a failure to allege reliance). Under the applicable case law, Plaintiffs have sufficiently alleged unfair acts by Crocs under the UCL.

### C. Plaintiffs State Plausible Fraud-Based Claims (CLRA, FAL, and UCL Fraud Prong).

#### 1. Plaintiffs satisfy Rule 9(b).

Crocs further argues that Plaintiffs' fraud-based claims fail to meet Rule 9(b). To satisfy the particularity requirements of Rule 9(b), a plaintiff must plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Plaintiffs easily meet this requirement. They plead:

> **Who**: Crocs;
>
> **What**: Misrepresented that the Products as capable of "shed[ding] water," "water-friendly," "all-terrain," "pool party" and as suitable for use in summery outdoor environments;
>
> **When**: To Valentine and Cornejo (and other consumers) before they purchased the Products;
>
> **Where**: In advertisements; and
>
> **How**: The Products are not suitable for hot, wet, or sunny environments.

Compl. ¶¶ 58, 62–3, 66, 71–2. *See Zeiger*, 304 F. Supp. 3d at 849–50 (applying the "the who, what, when, where, and how" analysis).

Crocs claims that the allegations are not specific enough but "Rule 9(b) demands only a level of detail sufficient to place a defendant on notice of the basis for a plaintiff's claims and to demonstrate that a plaintiff is not on a 'fishing expedition.'" *See In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1234 (N.D.Cal. 2012). Alleging that Plaintiffs "saw and relied on representations on [a] website, advertising, product labels, and packaging" is sufficient. *See Kanan*, 2021 U.S. Dist. LEXIS 191225, at *14–15. Plaintiffs here allege they "saw advertisements" from Crocs that the Products were capable of "shed[ding] water," "water-friendly," "all-terrain," and "pool party." Compl. ¶¶ 58, 62, 66, 71. They also point to other specific advertisements they saw that showed the Products in hot, wet and sunny environments.[6] Plaintiffs "paid for the Product[s] under the mistaken belief that the shoes were

---

[6] Plaintiff Valentine specifically alleges that she "purchased the Crocs shoes based on Defendant's representation as 'shed[ding] water' and 'water-friendly'" and that "she had seen Crocs advertised as 'shed[ding] water' and 'water-friendly,' 'all-terrain,' and 'pool party'." Compl. ¶¶ 58, 62. She also "remembers seeing ads that touted the shoes suitability for use in summery outdoor environments,

durable and capable of withstanding sun, heat, and water," and allege that they "would not have purchased the Product[s], or would have paid less" had they "known that the shoes were not fit for these purposes." *Id*. ¶¶ 64, 73. These allegations suffice for Rule 9(b). *See Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427, at *91 (S.D. Cal. Dec. 8, 2020) (plaintiff satisfied Rule 9(b) when she "provide[d] multiple examples of La Pura advertisements and websites containing the alleged misrepresentations and omissions regarding reviews, endorsements, effectiveness, limited supply, price, etc."); *Rosales*, 882 F. Supp. 2d at 1175–76 (allegations sufficed when plaintiffs provided "reproductions of Defendant's advertisements throughout the complaint, and attach substantially similar advertisements to the FAC which contain the alleged misrepresentations that serve as the basis of Plaintiffs' claims.")

### 2.   Plaintiffs adequately plead reliance.

To establish reliance, a plaintiff need only "allege that she would not have bought the product but for the allegedly actionable misrepresentation or omission." *Roffman v. Perfect Bar, LLC*, No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762, at *15 (N.D. Cal. Sep. 2, 2022). Plaintiffs satisfy this standard. They allege that they "purchased the Crocs shoes after [] review[ing] Defendant's marketing materials, which indicated the shoes were appropriate for outdoor use in sunny, warm weather." Compl. ¶¶ 63, 72. As explained above, Plaintiffs cite to specific representations and advertisements that they saw. They further allege that "if [they] had known that the shoes were not fit for these purposes" or such use "would cause a significant reduction in shoe size rendering them unwearable [], [they] would not have purchased the Product[s], or would have paid less for [them]." Compl. ¶¶ 64, 73*; see also Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 154627, at *10–18 (N.D. Cal. Aug. 22, 2022) (finding reliance when a plaintiff alleged she purchased the item based on a misleading representation and would not have bought the product or would have paid less she known the truth).

---

such as one for Crocs with a camo print being used for backpacking." *Id*. ¶ 62 Plaintiff Cornejo similarly alleges that she "saw advertisements that the shoes were capable of 'shed[ding] water' and were 'water-friendly,' and that they were suitable for use for gardening." Compl. ¶ 66 She also alleges that she "saw a web page that touted the use of Crocs for gardening, which she believes was a version of the web page at https://www.crocs.com/stories/best-shoes-for-gardening.html." *Id*.

Plaintiffs also adequately allege reliance for their omission claims. Reliance on an omission turns on allegations that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Shaeffer v. Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 283 (Cal. Ct. App. 2020). Plaintiffs allege that Crocs failed to disclose that the Products "will not retain their represented size at purchase because Croslite shrinks when exposed to ordinary sunlight, heat, and/or water." Compl. ¶ 149. Had the omitted information been disclosed, Plaintiffs would have been aware of it since they "reviewed the packaging for the shoes, and saw no warnings that they were not appropriate for use in sunny, warm, or wet environments." *Id*. ¶¶ 63, 72. They further explain that each would have behaved differently—i.e., they would not have bought the products or paid less had they known that "normal use would cause a significant reduction in shoe size rendering them unwearable." *Id*. ¶¶ 44, 64, 73.

Crocs does not argue that Plaintiffs fail to meet these standards. It, instead, claims that Plaintiffs have not pled reliance because they purportedly fail "to explain how any reasonable consumer would have seen these same ads and could possibly have been misled." MTD at 12. This is mistaken. Moreover, there is no such requirement. The reasonable consumer standard is a separate legal concept from reliance that requires showing "that members of the public are likely to be deceived." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016). Reasonable consumer deception is a question of fact, inappropriate for resolution at the motion to dismiss stage, absent "rare situations" where the violation is definitively implausible. *Williams v. Gerber Prods. Co*., 552 F. 3d 934, 938 (9th Cir. 2008). This is not one of those "rare" cases.

As an initial matter, it goes without saying that "reasonable consumers do not expect shoes to shrink." Compl. ¶ 53. Crocs does not dispute that point. As for the specific advertisements, Plaintiffs allege that Crocs "marketed…[the] shoes for uses that would routinely result in in their exposure to sunlight, heat, and/or water, while simultaneously omitting disclosure of the fact that doing so causes them to shrink to the point they no longer fit." *Id*. ¶ 28. Crocs does this by "sell[ing] 'water shoes,' 'water sandals,' 'water and swim shoes,' 'water sandals, clogs, flip flops, or slides,' 'water clogs,' 'all-terrain,'… 'beach bum,' and 'water and swim shoes,' 'water-friendly,' 'pool' or 'beach' shoes that were suitable for all environments." *Id*. ¶ 29. It also "routinely used images of the Products in

sunny, warm, and water environments in their advertisements." *Id*. ¶ 33. These representations misled consumers because they "create the impression that the Products are suitable for use in hot, sunny, and wet environments" "[s]ince people ordinarily garden or visit…the beach and pools during hot, sunny summer months." *Id*. Reasonable consumers also would expect Crocs' advertisements to "truthfully and accurately reflect the features and performance abilities of the Products." *Id*. ¶ 40.

Far from rendering Plaintiff's theory of deception "completely implausible," the exact opposite is true. And Crocs notably does not point to a disclaimer, let alone any evidence, that definitively establishes that its advertisements could not plausibly mislead reasonable consumers. *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550, at *19 (N.D. Cal. Mar. 14, 2014) ("Whether a reasonable consumer would in fact be deceived as alleged by Victor is seldom an issue that can be addressed during the pleading stage, except when completely implausible allegations are made"). Crocs simply asserts—without making any argument *at all*—that the allegations purportedly do not satisfy the reasonable consumer test. Its challenge necessarily fails. *See, e.g.*, *Ham v. Hain Celestial Group, Inc*., 70 F. Supp. 3d 1188, 1193–4 (N.D. Cal. 2014) (finding that dismissal due to a failure to satisfy the reasonable consumer standard requires the defendant to establish that it is "implausible that a reasonable consumer would believe that SAPP is not an 'all natural' ingredient").

### 3.    Plaintiffs allege a negligent misrepresentation claim.

The same allegations noted above establish a claim for negligent misrepresentation. Crocs nonetheless asserts (again incorrectly) that California's economic loss rule bars Plaintiffs' negligent misrepresentation claim. Although the economic-loss rule bars tort claims for losses arising out of a contract, "excepted from this rule are claims that 'a contract was fraudulently induced.'" *Grouse River Outfitters Ltd v. NetSuite, Inc*., No. 16-cv-02954-LB, 2016 U.S. Dist LEXIS 141478, at *29 (N.D. Cal. Oct. 12, 2016). This includes inducement claims stated in negligent misrepresentation. *See Frye v. Wine Library, Inc*., No. 06-5399, 2006 U.S. Dist. LEXIS 96075, at *3 (N.D. Cal. Dec. 4, 2006) ("As Plaintiff's negligent misrepresentation claim can be characterized as relating to Defendant's inducement of Plaintiff to contract, there is also no question of it being barred by the economic loss rule."); *see also Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*, 315 Fed.

Appx. 603, 607 (9th Cir. 2008) (holding negligent misrepresentation is a "species of fraud" under California law, for which "economic loss is recoverable"); *Bret Harte Union High Sch. Dist. v. Fieldturf, USA, Inc.*, No. 1:16-cv-00371-DAD-SMS, 2016 U.S. Dist. LEXIS 83295, at *16 (E.D. Cal. June 27, 2016) (denying motion to dismiss negligent misrepresentation claim when plaintiff's "claim sounds more in deceit/fraud than it does in negligence.")

Here, the Complaint alleges fraudulent inducement to enter into a contract. It pleads that Crocs was aware that its shoes made out of Croslite shrink when exposed to water, sun, or heat, yet it marketed the Products as appropriate for hot, sunny, and wet environments. Compl. ¶¶ 46–52. The Complaint further alleges that Plaintiffs and other consumers relied on Crocs' advertising when they bought the Products. *Id.* ¶¶ 40, 58, 62, 63, 66, 71. In this context, the economic loss rule does not apply.

> **D.    There is No Valid Basis to Strike the Class Allegations at This Stage.**
>
> **1.    Plaintiffs have standing to assert claims for all the Products.**

Crocs further argues that Plaintiffs lack standing to pursue claims as to the products they did not purchase. *See* MTD at 15–17. This Court recently addressed the same argument in *Brown v. Food for Life, Inc*., No. 3:21-cv-10054-TLT, ECF 40 at 8 (N.D. Cal. Feb. 28, 2023). It applied the "substantially certainty" test, joining a majority of courts in this District. *See, e.g.*, *Roffman v. Rebbl, Inc.*, No. 22-CV-05290-JSW, 2023 U.S. Dist. LEXIS 16166, 2023 WL 1420724, at *3 (N.D. Cal. Jan. 31, 2023) (Corley, J.); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394, at *7 (N.D. Cal. Aug. 6, 2021) (White, J.); *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203, at *12 (N.D. Cal. May 5, 2021) (Hixson, J.); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443, at *8 (N.D. Cal. Mar. 13, 2014) (Orrick, J.); *Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1117 (N.D. Cal. 2014) (Chhabria, J.).

The "substantially similar" test allows a named plaintiff to "assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Roffman*, 2023 U.S. Dist. LEXIS 16166, 2023 WL 1420724, at *3. Plaintiffs' claims satisfy the substantially similar test. Whether the products come in

different shapes or colors or models is not dispositive since Plaintiffs' claims do not relate to the shape/color/model of the shoes. *See Astiana v. Dreyer's Grand Ice Cream, Inc*., No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371, at *37 (N.D. Cal. July 20, 2012) ("That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors.") Instead, "the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Ang*, 2014 U.S. Dist. LEXIS 34443, at *28.

Plaintiffs here allege the same warranty claims with respect to all the Products—i.e., all Crocs' shoes made of Croslite shrink when exposed to sun, heat or water. *See* Compl. at ¶ 43. Plaintiffs also allege that all of the products were identical in the ways that are critical for the claims—i.e., that all Products are made of the same defective material: Croslite. *See* Compl. at ¶¶ 2–3, 22, 43. Plaintiffs' fraud-based claims are also identical across all products. Plaintiffs allege that Crocs knowingly failed to inform consumers that *all of* the Products shrink when exposed to sun, heat, and/or water. *Id*. ¶ 94. Plaintiffs also allege that Crocs marketed the Products as "water-friendly," "all-terrain," and "shed[ding] water," and "pool party" even though none of the Products were fit for sunny, wet environments because they are made of Croslite. *Id.* ¶¶ 4–6, 29*; see also Gitson*, 63 F. Supp. 3d at 1117. Accordingly, resolving "the asserted claims will be identical between the purchased and unpurchased products" as for all of Plaintiffs' claims. *Ang*, 2014 U.S. Dist. LEXIS 34443, at *8.

### 2. The 30,000 extraneous customer comments do not provide a basis to strike the class allegations.

In what can only be described as an odd strategic decision, Crocs asks the Court to consider over 30,000 comments on its website, which it believes definitely establishes that "the vast majority of Plaintiffs' proposed national and California class members…lack concrete injury or actual harm."[7]

---

[7] The Ninth Circuit admonished the growing trend of the "unscrupulous use of extrinsic documents" at the motion to dismiss stage in *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018), where it observed "Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage." 899 F.3d at 998. The practice of "[s]ubmitting documents not mentioned in the complaint to create a

MTD at 20. This Court should reject this logical leap for numerous, obvious reasons. First, the Complaint does not refer to *any* of these additional 30,000 comments, and, thus, they are plainly "matters outside the pleadings" inappropriate for consideration at this stage. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"). Acknowledging this, Crocs argues that the Complaint's discussion of 14 comments means that Complaint "incorporated by reference" the tens of thousands of other comments on its site. MTD at 18.

The incorporation by reference doctrine does not stretch that far. The Ninth Circuit holds that "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A plaintiff must refer to the document "extensively" or it must form the basis of the claim. *Khoja*, 899 F.3d at 1002. Plaintiffs do not refer to, let alone discuss the customer comments on Crocs' website "extensively." *Id.* at 1003–4 (finding that even quoting from a document once is not enough to refer to it "extensively."). Moreover, Plaintiffs' claims do not depend on the customer comments on Crocs' website either; rather, the claims concern whether Crocs misled consumers about the Products' suitability for sunny, hot, wet environments and whether the Products were defective because they shrink under those conditions. The incorporation by reference doctrine does apply in these circumstances.[8] Even if it did, Crocs' conclusion, at best, remains disputed; indeed, it is absurd.

---

defense is nothing more than another way of disputing the factual allegations in the complaint." *Id.* at 1003. That is exactly what Crocs has done here.

[8] The comments are also all plainly inadmissible hearsay and would not even be capable of controverting Plaintiffs' claims at summary judgment or trial, and therefore certainly cannot be used to contradict the allegations in Plaintiffs' Complaint. Crocs's Motion uses the comments to prove the truth of the matter asserted (i.e., that they reveal every putative class members' experience with the products). MTD at 18. But "factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." *See* Local Rule 7-5(a). Crocs does not submit an affidavit or declaration that sets forth facts related to each and every one of the commentator's experiences with the shoes; nor could it since it simply does not personal knowledge. *See* F.R.C.P. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") The comments, therefore, do not qualify as competent evidence.

Next, there is no need for the Court to comb through tens of thousands of customer comments because Crocs' basis for bringing them into this case is without merit. It argues that the five-star ratings show the "proposed classes…will not be certifiable" since most customers did not experience shrinkage. MTD at 20.

Third, Rule 12(f) is not a proper procedural vehicle for such an argument. "Rule 12(f) permits a court to strike from a pleading only 'an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'"[9] *Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044-DMR, 2019 U.S. Dist. LEXIS 130858, at *9 (N.D. Cal. Aug. 5, 2019); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (reversing district court for striking damages claim pursuant to Rule 12(f) because "none of the five categories covers the allegations in the pleading sought to be stricken by [defendant]."). Nothing in Crocs' Motion "explain[s] how the class allegations in the [Complaint] satisfy this standard." *Id.* Even if they did, the inferences a court may draw from a document "should also be approached with caution." *Khoja*, 899 F.3d at 1003. Nothing in the comments would enable the Court to make a factual determination that the commentators did not, in fact, experience the shrinkage problem. For example. they may posting about something else entirely, may have experienced the defect after they wrote the review, or Crocs may have eliminated such posts. Regardless, doing so, would be drawing an inference against Plaintiffs—something the Court cannot do at this stage. *See Retail Prop. Trust v. United Broth. of Carpenters*, 768 F.3d 938, 945 (9th Cir. 2015) (the court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party" on a motion to dismiss).

---

[9] *See also Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 U.S. Dist. LEXIS 35455, at *3–4 (N.D. Cal. Mar. 14, 2014) (Chen, J.) (finding Rule 12(f) is an improper route to strike class allegations); *Clerkin v. MyLife.Com*, No. C 11-00527 CW, 2011 U.S. Dist. LEXIS 96735, at *3 (N.D. Cal. Aug. 29, 2011) (Wilken, J.) ("Defendants fail to identify any authority permitting the use of a motion to dismiss for failure to state a claim to contest the suitability of class certification."); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 U.S. Dist. LEXIS 57348, 2011 WL 2111796, at *13–14 (N.D. Cal. May 26, 2011) (Hamilton, J.) (same); *Swift v. Zynga Game Network, Inc.*, No. C 09-05443 SBA, 2010 U.S. Dist. LEXIS 117355, at *10 (N.D. Cal. Nov. 3, 2010) (Armstrong, J.) (same).

On a higher level, Crocs' argument appears to be based on a fundamental misunderstanding about Plaintiffs' theory of liability. "Courts in this circuit, including the Ninth Circuit, have repeatedly held that putative class members have Article III standing when plaintiffs allege that they overpaid for a defective product, even if the defect at issue does not manifest itself in every putative class member's product." *See Siqueiros v. GM LLC*, No. 16-cv-07244-EMC, 2021 U.S. Dist. LEXIS 169326, at *17–18 (N.D. Cal. Sep. 7, 2021), citing *Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019). This is because Plaintiffs have a "right to take a product free from defect." *Huu Nguyen*, 932 F.3d at 822. When Crocs sold defective Products, "the defect did not cause the plaintiffs' injury; the defect *was* the injury." *Id*. Plaintiffs' theory, thus, is that a defect exists in every Product "whether or not the *symptoms* have manifested yet." *Id*. To that end, Plaintiffs allege that the Products were defective when sold because their material shrinks upon exposure to heat, sun, or water. Compl. ¶¶ 43, 92, 102. Plaintiffs sustained economic injuries when they paid a price premium for the defective product and as a result of Crocs' misrepresentations and omissions. *Id*. ¶¶ 64, 73 These are injuries *all* class members sustained at the time of purchase. *See Huu Nguyen*, 932 F.3d at 819–22.

Crocs cites to *TransUnion LLC v. Ramierez*, 141 S. Ct. 2190, 2205 (2021) and *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n. 14 (9th Cir. 2022) to argue that the comments show that class members have not been "concretely harmed," but Crocs is confused, neither of those decisions applies here.[10] Unlike *Transunion*, Plaintiffs do more than allege "bare procedural violation[s], divorced from any concrete harm." 141 S. Ct. at 2213. They allege that they, along with all putative class members, paid more money than they would have paid had Crocs disclosed the defect or not made misrepresentations and omissions with respect to the Products. Compl. at ¶ 60; *compare Transunion*, 141 S. Ct. at 2199. When, as here, a plaintiff alleges he or she paid more money "than he or she otherwise would have," as a result of the defendant's conduct, then he or she alleges a concrete injury-in-fact. *Kwikset Corp. v. Superior Court*, 246 P.3d

---

[10] The footnote cited in *Olean Wholesale Grocery Cooperative* does not address anything remotely related to *TransUnion*. It stands for the unmarkable proposition that the "party seeking class certification has the burden of affirmatively demonstrating the class meets the requirements of [Rule] 23." *Olean Wholesale Grocery Cooperative, Inc.*, 31 F.4th at 669 n. 14. That simply is not at issue at this stage.

877, 885–87 (Cal. 2011) (UCL standing also satisfies Article III); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (spending more money is a "quintessential injury-in-fact"); *Brown*, 2022 U.S. Dist. LEXIS 84477, at \*24–25 (plaintiffs "pleaded a particularized allegation of harm: [they] allege[] that [they] paid a specific amount of money that [they] would not have paid but for [the] front-label protein claim on the Products" so they "alleged a cognizable injury sufficient to show Article III standing.")

**E.     Plaintiff Requests Leave to Amend If Necessary.**

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find the Complaint insufficient in any regard, Plaintiffs request leave to amend.

Dated: March 10, 2023.

**GUTRIDE SAFIER LLP**

*/s/Kali R. Backer/s/*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  tony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS & STRIKE
3:22-CV-07463-TLT