UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA VALENTINE, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>CROCS, INC.,<br><br>            Defendant. | Case No. 22-cv-07463-TLT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND STRIKE CLASS ALLEGATIONS**<br><br>Re: ECF No. 14 |

Pending before the Court is Defendant's motions to dismiss and to strike class allegations. The Court found that Defendant's motions can be decided without oral argument. Civ. L.R. 7-1(b). For the reasons below, Defendant's motions to dismiss and to strike class allegations are **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs may amend their complaint within 14 days of this Order.

**I.    BACKGROUND**

Plaintiffs Martha Valentine and Ruby Cornejo are California residents that purchased products manufactured by Defendant Crocs, Inc. Compl. ¶¶ 14–15, 58, 66, ECF No. 1. Specifically, Valentine purchased a pair of Crocs Classic Bae shoes from eBay while at her home in San Francisco in Spring of 2022 and Cornejo purchase a pair of Classic Crocs shoes from a DSW store in Elk Grove, California in March of 2022. *Id.* ¶¶ 58, 66.

Valentine purchased the Crocs shoes based on representations in advertisements that they were "shed[ding] water," "water friendly," and "fit perfectly." *Id.* ¶ 62 (modification in original). After a summer trip to Maine, in which the shoes were exposed to "hot, muggy, rainy weather," Valentine found that the shoes "shrank such that they no longer fit well." *Id.* ¶ 58.

Cornejo purchased the Crocs shoes based on representations in advertisements that they were capable of "shed[ding] water," were "water-friendly," "perfect for the garden," "perfect for

1  the pool," "all-terrain," "pool party," "beach bum," and "fit perfectly." *Id.* ¶ 71 (modification in
2  original). Two months after purchase, Cornjo realized that the shoes no longer fit and had shrunk.
3  *Id.* ¶ 67.

4        Plaintiffs bring the instant suit alleging eleven causes of action: (1) breach of express
5  warranty; (2) breach of implied warranty of merchantability, Cal. Com. Code § 2314; (3) breach of
6  implied warranty of fitness for a particular purpose, Cal. Com. Code § 2315; (4) violation of the
7  Song-Beverly Consumer Warranty Act for breach of implied warranty of merchantability, Cal.
8  Civ. Code §§ 1791.1 and 1792; (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §
9  2301, *et seq.*; (6) fraudulent concealment; (7) fraud, deceit, and/or misrepresentation; (8) violation
10 of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (9) violation of
11 the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (10) negligent
12 misrepresentation; and (11) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
13 Code § 17200, *et seq.*

14       Plaintiffs alleged two classes. The nationwide class is defined as: "All persons in who
15 purchased, in the United States, the Products from November 22, 2018, to the present." *Id.* ¶ 77.
16 The California subclass is defined as: "All Class Members who purchased the Products in the
17 State of California." *Id.* Claims five through seven are brought on behalf of Plaintiffs and a
18 nationwide class. The remainder claims are brought on behalf of Plaintiffs and a California
19 subclass.

20       The "Products" alleged to be defective are Crocs's "Classic Clog (including Glitter,
21 Printed, Lined, Solarized, Real-Tree, Tie-Dye, Bae, and all other varieties), Classic All-Terrain
22 Clog, LiteRide Clog (all varieties), Classic Sandal (including Cozzzy and all other varieties), and
23 Classic Slide (all varieties)." *Id.* ¶ 2.

24       In response to Plaintiffs' complaint, Crocs filed the instant motions to dismiss and to strike
25 class allegations. ECF No. 14.

26 **II.   LEGAL STANDARD**

27     **A.   Rule 12(b)(6)**

28       A party may move to dismiss for "failure to state a claim upon which relief can be

1  granted." Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's
2  "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible
3  chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v.*
4  *Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)).  The
5  court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the
6  light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519
7  F.3d 1025, 1031 (9th Cir. 2008).  "A claim has facial plausibility when the Plaintiff pleads factual
8  content that allows the court to draw the reasonable inference that the Defendant is liable for the
9  misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a
10 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
11 unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Although for the purposes of a motion to
12 dismiss [the Court] must take all of the factual allegations in the complaint as true," the Court is
13 "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.

   **B.  Rule 12(f)**

15 Before responding to a pleading, a party may move to strike from a pleading any
16 "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The essential
17 function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise
18 from litigating spurious issues by dispensing with those issues prior to the trial." *Wang v. OCZ*
19 *Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v.*
20 *Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

21 Although class allegations are generally not tested at the pleading stage, "sometimes the
22 issues are plain enough from the pleadings to determine whether the interests of the absent parties
23 are fairly encompassed within the named plaintiff's claim." *Collins v. Gamestop Corp.*, No. 10-
24 CV-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010) (quoting *Gen. Tel. Co. of Sw.*
25 *v. Falcon*, 457 U.S. 147, 160 (1982).  "Where the complaint demonstrates that a class action
26 cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior
27 to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citation
28 omitted).  Just as with a motion to dismiss, the court should view the pleading sought to be struck

3

in the light most favorable to the nonmoving party. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

**III.    DISCUSSION**

Crocs move to dismiss all of Plaintiffs' causes of action for failure to state a claim. Crocs additionally move to strike the class allegations in Plaintiff's complaint.

**A.    Breach of Express Warranty (Claim 1)**

Crocs argues that Plaintiffs' claim for breach of express warranty fails because (1) Plaintiffs did not rely on Crocs' Limited Warranty and (2) Plaintiffs did not identify the specific advertisements of which they relied.

"To prevail on a claim for breach of express warranty, a plaintiff must show (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 904 (N.D. Cal. 2021) (citing *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)); *see* Cal. Com. Code § 2313.

**1.    Crocs' Limited Warranty**

Plaintiffs do not argue that they relied on Crocs' Limited Warranty, which is posted on Crocs' website and states in part: "Crocs, Inc. ('Crocs') warrants all of its Crocs™ products (the 'Products'), purchased by consumers either directly from Crocs or from Crocs' authorized resellers (including authorized retail and Internet-based sellers), to be free from manufacturing defects for 90 days from the date of purchase." Compl. ¶ 23. Instead, Plaintiffs argue that reliance is no longer required after California's adoption of the Uniform Commercial Code. Opp'n at 3:21–4:8, ECF No. 23.

However, as explained by another court, whether reliance is considered as part of "the basis of the bargain" is an unsettled issue:

> Pre-U.C.C. California Supreme Court decisions held that express warranty plaintiffs must plead and prove reliance. But the court later recognized in *Hauter v. Zogarts*, 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377 (1975) (en banc), that the U.C.C.'s adoption in California worked "a significant change in the law of warranties" by replacing the traditional reliance element with a requirement that the

4

> challenged representation form the "basis of the bargain." Specifically, *Hauter* held that this basis-of-the-bargain requirement either shifted the burden of proving non-reliance to the seller or eliminated the concept of reliance altogether. *Hauter* found support for each of those competing views in the U.C.C. commentary and scholarly work on the subject, and ultimately declined to decide between them.
>
> No consensus on that question has emerged since *Hauter*. Most decisions hold that the basis-of-the-bargain requirement has one of three effects: (1) eliminating the reliance requirement; (2) keeping the reliance requirement, but shifting the burden to the defendant to show that the bargain did not rest at all on the representation, or (3) changing the role of reliance where the parties are in privity, but maintaining the reliance requirement where the parties are not in privity.

*Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 757 (N.D. Cal. 2021) (quoting *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 393 F. Supp. 3d 745, 762–63 (N.D. Ill. 2019) (internal citations, modifications, and quotations omitted). While Plaintiffs rely mainly on *Weinstat*, the *Watkins* court noted that it, "like many others, concludes that the discussion of reliance in *Weinstat* must be limited to the facts of that case, namely, that the parties were in privity, and further finds that the pre-U.C.C. requirement that there must be actual reliance where the parties are not in privity continues to apply." *Id.* at 758; *see also* Cal. Com. Code § 2313 ("Any affirmation of fact or promise made by *the seller to the buyer*. . .") (emphasis added). This Court joins in that assessment.

Here, it is undisputed that the parties are not in privity of contract, as Crocs did not directly sell the shoes purchased by Plaintiffs. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("[A]n end consumer such as Clemens who buys from a retailer is not in privity with a manufacturer"). Instead, Valentine purchased from eBay and Cornejo purchased from DSW. Compl. ¶¶ 58, 66. Thus, lacking reliance in the absence of privity, Plaintiffs did not plausibly plead a breach of express warranty as to Crocs's Limited Warranty.

Additionally, Crocs's Limited Warranty is limited to consumers who purchased "either directly from Crocs or from Crocs' authorized resellers." Compl. ¶ 23. While Plaintiffs alleged that DSW, where Cornejo purchased the shoes, is an authorized reseller (*id.* ¶ 46), Plaintiffs did not allege that Valentine purchased from an eBay seller that is also an authorized reseller. Accordingly, Plaintiffs did not plausibly plead breach of Crocs's Limited Warranty as to

5

1  Valentine.

2  The Court also finds that Plaintiffs did not plausibly plead a manufacturing defect, as
3  covered under Crocs' Limited Warranty.  Compl. ¶ 23 ("Crocs, Inc. ('Crocs') warrants all of its
4  Crocs™ products . . . to be free from manufacturing defects for 90 days from the date of
5  purchase.").  "California courts have held that a design defect 'exists when the product is built in
6  accordance with its intended specifications, but the design itself is inherently defective.'"  *In re*
7  *Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1085 (N.D. Cal. 2021) (citation
8  omitted).  "A manufacturing defect, in contrast, 'exists if the product differs from the
9  manufacturer's intended result or if the product differs from apparently identical products from the
10 same manufacturer.  With a manufacturing defect, therefore, 'the design was appropriate but the
11 manufacturing process deviated from the design.'"  *Id.* at 1086 (internal citation and citation
12 omitted).

13 Here, Plaintiffs alleged that Crocs shoes shrink due to a "design flaw."  Compl. ¶ 3.
14 Specifically, Plaintiffs alleged that the shoes "were actually manufactured using a defective
15 material," identified as Croslite, which "shrinks when exposed to sun, heat, and/or water and the
16 shrinkage causes a significant reduction in shoe size."  *Id.* ¶¶ 92, 94.  As such, Plaintiffs did not
17 plausibly allege a manufacturing defect.  *See id.* ¶ 49 "Crocs itself received thousands of
18 complaints regarding the shrinkage problems, but still refused to acknowledge the design
19 defect.").

20              **2.     Crocs' Advertisement**

21 Product advertisements can be part of an express warranty.  *See* Cal. Com. Code §
22 2313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates
23 an express warranty that the goods shall conform to the description.").  "To create a warranty,
24 representations regarding a product must be specific and unequivocal."  *In re Toyota Motor Corp.*
25 *Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1182
26 (C.D. Cal. 2010) (citations omitted).

27 Here, Plaintiffs alleged that they made their purchases relying on advertisements that
28 contained the words "shed[ding] water," "water-friendly," "perfect for the garden," "perfect for

1   the pool," "all-terrain," "pool party," "beach bum," and "fit perfectly." Compl. ¶¶ 58, 62
2   (modification in original). The inquiry is whether these terms can form the basis of an express
3   warranty.
4           In *Hauter v. Zogarts*, the court found the phrase "completely safe ball will not hit player"
5   to be a specific and unequivocal statement. 14 Cal.3d 104, 109 (1975). Meanwhile, the phrase "a
6   carefully well-equipped and very seaworthy vessel" was also found to create an express warranty.
7   *See Keith v. Buchanan*, 173 Cal.App.3d 13, 22 (1985). However, "[a]dvertising that amounts to
8   'mere' puffery is not actionable." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233
9   (N.D. Cal. 2012) (citation omitted). "Puffery is exaggerated advertising, blustering, and boasting
10  upon which no reasonable buyer would rely." *Id.* (citation omitted).
11          Plaintiffs argue that the advertisements they relied on created an express warranty that the
12  Crocs shoes are "water-friendly" and "suitable for pool, garden and beach environments." Opp'n
13  at 6:2–3. The terms that Plaintiffs allegedly were exposed to is sufficient to plausibly plead that
14  an express warranty was created that the Crocs shoes remain wearable when exposed to "ordinary
15  heat, direct sunlight, and/or water." *See* Compl. ¶ 3. However, the term "fit perfectly" is mere
16  puffery; it is not plausible for a reasonable buyer to expect a pair of shoes to "fit perfectly."
17          Crocs argues that Plaintiffs must identify the specific advertisements that they relied upon.
18  However, at this stage, Plaintiffs' allegations of exposure to such advertising are sufficient. *See In*
19  *re Toyota Motor Corp. Unintended Acceleration*, 754 F. Supp. 2d at 1183. Drawing all inferences
20  in Plaintiffs' favor, Plaintiffs' exposure to Crocs' advertising and the allegations that Crocs' shoes
21  shrink are sufficient for Plaintiffs to plausibly plead a breach of express warranty.

        **B.   Breach of Implied Warranty of Merchantability (Claim 2)**

23          Crocs argues that Plaintiffs failed to plausibly plead a breach of implied warranty of
24  merchantability under Section 2314 of the California Commercial Code due to the lack of vertical
25  privity between Crocs and Plaintiffs. Under Section 2314, "a warranty that the goods shall be
26  merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods
27  of that kind." For claims under that statute, "a plaintiff asserting breach of warranty claims must
28  stand in vertical contractual privity with the defendant." *Clemens*, 534 F.3d at 1023.

1   As discussed previously, Plaintiffs and Crocs lack vertical privity. However, as recognized by the Ninth Circuit, "[s]ome particularized exceptions to the rule exist." *Id.* One of these is "when the plaintiff relies on written labels or advertisements of a manufacturer." *Id.* Here, where Plaintiffs alleged reliance on Crocs' advertisements, Plaintiffs have plausibly satisfied the privity requirement.

The parties dispute whether a third-party beneficiary exception applies. In short, some courts have found an exception to the privity requirement by finding that product end users may be implied third party beneficiaries of distribution contracts between the manufacturer and retailer. *See Watkins*, 574 F. Supp. 3d at 754–56 (discussing the exception of third-party beneficiaries found by some courts). However, whether this exception can be broadly applied is unsettled. *See Quackenbush v. Am. Honda Motor Co., Inc.*, No. 20-cv-5599-WHA, 2023 WL 187491, at *2–3 (N.D. Cal. Jan. 13, 2023) (explaining the approaches taken by different courts). As the Court found that Plaintiffs have sufficiently alleged the advertisement exception, it does not address the third-party beneficiary exception.

### C. Breach of Implied Warranty of Fitness for a Particular Purpose (Claim 3)

Crocs argue that Plaintiffs' claim for breach of implied warranty of fitness for a particular purpose was not plausibly pled to allege a particular purpose. An implied warranty that goods shall be fit for a particular purpose exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *See* Cal. Com. Code § 2315.

"An essential element of a claim for breach of implied warranty of fitness for a particular purpose is that a plaintiff intended to use the product for a particular purpose, i.e., a use different from the ordinary purpose of the product." *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 832 (N.D. Cal. 2021) (modifications and citation omitted). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D.

Cal. 2013) (citation omitted).

Here, Plaintiffs alleged that "Crocs breached the implied warranty of fitness for a particular purpose . . . when it delivered to them Products that would fail to maintain their expected size and shape and become unusable when exposed to *ordinary* sunlight, heat, and/or water." Compl. ¶ 114 (emphasis added). Plaintiffs cannot plausibly allege that exposure to "ordinary sunlight, heat, and/or water" is not part of the ordinary purpose of Crocs' shoes. As such, without sufficient allegations of a particular purpose, Plaintiffs' claim for breach of implied warranty of fitness for a particular purpose was not plausibly pled.

### D. Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (Claim 4)

Crocs argues that the Song-Beverly Warranty Act does not cover the products at issue in this case. The Act states that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. However, "consumer goods" does not include clothing, which is defined as "any wearing apparel, worn for any purpose, including under and outer garments, shoes, and accessories composed primarily of woven material, natural or synthetic yarn, fiber, or leather or similar fabric." *Id.* § 1791(a), (c).

The parties do not dispute that the products at issue in this case are shoes. Thus, Plaintiffs have not stated a claim under the Song-Beverly Warranty Act, which covers only consumer goods.

Plaintiffs argue that the products here are covered by the Act because they are composed of Croslite, a foam, and not "composed primarily of woven material, natural or synthetic yarn, fiber, or leather or similar fabric." *Id.* While Plaintiffs cite to legislative history to argue that the modification "composed primarily of woven material" applies equally to apparel and shoes, the first two items in the list, the Court is not convinced. While the parties cite no caselaw regarding the statute to support their positions, Plaintiffs' interpretation would lead to an improbable result, as shoes would or would not be covered by the Act depending on whether they are composed primarily of woven materials. There is no indication that the California Legislature intended such a result.

As shoes are not consumer goods, Plaintiffs have not plausibly pled a claim under the Song-Beverly Warranty Act.

### E. Violation of the Magnuson-Moss Warranty Act (Claim 5)

The parties agree that claims for violation of the Magnuson-Moss Warranty Act is dependent on warranty claims under state law. *See* Mot. at 9:9–11, ECF No. 14; Opp'n at 13:6–8; *see also Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 926 (N.D. Cal. 2018) ("[T]he claims under the Magnuson–Moss Act stand or fall with the express and implied warranty claims under state law.") (citing *Clemens*, 534 F.3d at 1022). As the Court found that Plaintiffs plausibly pled claims for breach of express warranty pertaining to Crocs' advertisements and breach of implied warranty of merchantability, Plaintiffs plausibly pled claims under the Magnuson-Moss Warranty Act.

### F. Fraud-Based Claims (Claims 6–11)

#### 1. Rule 9(b)

Crocs argues that Plaintiffs' claims based on fraud do not satisfy the required heighted particularity requirements. Specifically, Crocs argues that Plaintiffs did not plead the "when" and "what" requirements regarding the advertisements that Plaintiffs allegedly relied upon.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Here, Plaintiffs argue that they met these requirements by alleging that Crocs misrepresented that their products were "capable of 'shed[ding] water,' 'water-friendly,' 'all-terrain,' 'pool party' and as suitable for use in summery outdoor environments" (the "what") and that these advertisements were viewed before Plaintiffs purchased the products (the "when"). Opp'n at 16:9–12 (modification in original). Plaintiffs also attached some advertisements in their complaint. Compl. ¶¶ 34–39.

The Court finds that Plaintiffs have not satisfied the "what" and "when" requirements of

10

Rule 9(b). "In a deceptive advertising case involving allegations of fraud, 'Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading.'" *Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 1710181, at *6 (N.D. Cal. Apr. 9, 2018) (citing *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013)).

Regarding the "what," Plaintiffs have not alleged the specific advertisements they were exposed to. Even though Plaintiffs attached some of Crocs' advertisements, the attached advertisements do not contain the alleged misrepresentations that Plaintiffs alleged they were exposed to, such as "shed[ding] water" and "water-friendly." *See* Compl. ¶¶ 58, 66 (modification in original).

Regarding the "when," Plaintiffs alleged that they saw Crocs' advertisements before their purchase of the products. *See id.* ¶¶ 63, 72. However, these allegations are not sufficiently specific, as they do not indicate any timeframe wherein Crocs may reasonably identify the advertisements that Plaintiffs allegedly saw and respond to Plaintiffs' allegations.

As such, the Court finds that Plaintiffs have not plausibly pled their fraud-based claims that require reliance on Crocs' advertisements—fraudulent concealment (claim 6); fraud, deceit, and/or misrepresentation (claim 7); violation of the CLRA (claim 8); violation of the FAL (claim 9); negligent misrepresentation (claim 10); and violation of the UCL (claim 11). Accordingly, the Court does not separately address the parties' argument as to whether Plaintiffs' theory of deception is plausible under the reasonable consumer test, whether the economic loss rule bars Plaintiffs' negligent misrepresentation claim, and whether Plaintiffs plausibly pled the unfair prong of the UCL.

### 2. Reliance

Crocs additionally argues that Plaintiffs failed to sufficiently allege actual reliance. "Plaintiff must allege the specifics of her reliance on the misrepresentations to show a bona fide claim of actual reliance." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015) (quotation, modification, and citation omitted). "Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering her legal relations, and

11

1   when, absent such representation, the plaintiff would not, in all reasonable probability, have

2   entered into the transaction." *Id.* (quotation, modification, and citation omitted).

3         Here, as discussed above, the Court found that Plaintiffs did not sufficiently allege the

4   advertisements Plaintiffs relied upon with sufficient specificity.

5         Regarding Plaintiffs' claim of fraudulent concealment (claim 6), the Court notes that

6   Crocs' alleged misrepresentation is due to omission of the material fact that the products shrink

7   "when exposed to ordinary sunlight, heat, and/or water." Compl. ¶ 149.

8         In a claim for fraudulent concealment, a plaintiff must show that the defendant concealed

9   or suppressed material fact. *See Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248

10  (2011). A fact is material if, "had the omitted information been disclosed, the reasonable

11  consumer would have been aware of it and behaved differently." *In re Toyota Motor Corp.*

12  *Unintended Acceleration*, 754 F. Supp. 2d at 1189.

13        Here, Plaintiffs alleged that they would not have purchased the shoes had they known that

14  the shoes would shrink, or they would have paid less for them. Compl. ¶¶ 64, 73, 153. However,

15  Plaintiffs alleged that the concealed fact was omitted from Crocs' advertisements. *See id.* ¶ 152.

16  Accordingly, Plaintiffs must meet the particularity requirements of Rule 9(b) regarding the

17  advertisements, as discussed above.

18      **G.**    **Class Allegations**

19          **1.**    **Products Plaintiffs did not Purchase**

20        Crocs argues that Plaintiffs lack standing to bring claim for products they did not purchase.

21  Courts in the Ninth Circuit are split on whether plaintiffs may bring suit for such products:

22        Some district courts have held that a plaintiff may bring suit for any "substantially similar" products not actually purchased. . . *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014) (noting that courts "look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling"). Others have concluded that absent economic injury, a plaintiff's claims for products she did not purchase must be either dismissed for lack of standing or addressed at the class certification phase of the case.)

27  *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021). However, a majority of

28  courts in this District have held that "a plaintiff may have standing to assert claims for unnamed

1    class members based on products he or she did not purchase so long as the products and alleged

2    misrepresentations are substantially similar." *Roffman v. Rebbl, Inc.*, No. 22-CV-05290-JSW,

3    2023 WL 1420724, at *3 (N.D. Cal. Jan. 31, 2023).

4    　　　　Here, Plaintiffs alleged that all of the products at issue, including the ones that Plaintiffs

5    did not purchase, are made of Croslite, which "shrinks upon exposure to ordinary heat, direct

6    sunlight, and/or water." Compl. ¶¶ 2–3. Plaintiffs alleged that the products purchased by them,

7    Crocs Classic Bae, and Classic Crocs shoes, shrink under ordinary conditions due to the Croslite

8    material that they are made of. However, Plaintiffs did not include allegations regarding whether

9    the products that Plaintiffs did not purchase are composed of similar amounts of Croslite in similar

10   configurations, such that those products would be similarly affected by the alleged shrinkage of

11   Croslite. Thus, as alleged, Plaintiffs may not bring claims for products they did not purchase.

### 2. Uninjured Persons

13   Crocs additionally argue that Plaintiffs lack standing to bring class claims because the

14   putative class is populated with uninjured persons. As support, Crocs points to thousands of

15   reviews posted on Crocs' website, fourteen of which were quoted by Plaintiffs. Compl. ¶ 49.

16   Although the Court finds that it can consider the reviews on Crocs' website, the Court does not

17   strike Plaintiffs' class allegations.

18   　　　　Here, the Court notes that Plaintiffs' class definitions are somewhat suspicious. For

19   example, Plaintiffs' classes are defined as all persons that purchased the Products. *Id.* ¶ 77.

20   However, these definitions necessarily include individuals who did not see or were not deceived

21   by Crocs' advertisements, which affects Plaintiffs' fraud-based class claims. Regarding Plaintiffs'

22   warranty class claims, determining whether reliance existed may require the Court to engage in

23   individualized inquiry regarding the circumstances of each members' purchase. Moreover, for

24   Plaintiffs' nationwide class, these individuals would likely be subject to differing state laws.

25   　　　　"Courts routinely hold that both fraud and warranty claims are difficult to maintain on a

26   nationwide basis and rarely are certified." *Sanders*, 672 F. Supp. 2d at 991. However, discovery

27   has just commenced, Crocs has not answered, and no motion for class certification has been filed.

28   While Plaintiffs' class definitions may be improper, the Court finds that it would be premature to

strike Plaintiffs' class allegations at this stage. Plaintiffs should be given the opportunity to make the case for class certification. Crocs may brief on this issue at that time. Nevertheless, the Court urges Plaintiffs to consider whether a more narrowly defined class may be appropriate.

## IV. CONCLUSION

For the foregoing reasons, Crocs' motions to dismiss and to strike class allegations are **GRANTED IN PART** and **DENIED IN PART**.

Crocs' motion to dismiss Plaintiffs' breach of express warranty claim (claim 1) as it pertains to Crocs' advertisement, breach of implied warranty of merchantability (claim 2), and violation of the Magnuson-Moss Warranty Act (claim 5) is **DENIED**.

Plaintiffs' claim for violation of the Song-Beverly Consumer Warranty Act (claim 4) is **DISMISSED**. As the defect is with Plaintiffs' legal theory, Plaintiff may not amend this claim.

Plaintiffs' claims for breach of express warranty (claim 1) as it pertains to Crocs' Limited Warranty, breach of implied warranty of fitness for a particular purpose (claim 3), fraudulent concealment (claim 6), fraud, deceit, and/or misrepresentation (claim 7), violation of the CLRA (claim 8), violation of the FAL (claim 9), negligent misrepresentation (claim 10), violation of the UCL (claim 11) are **DISMISSED**, with leave to amend.

Crocs' motion to strike Plaintiffs' class claims regarding products they did not purchase is **GRANTED**. Crocs' motion to strike class allegations in their entirety is **DENIED.**

Plaintiffs may file an amended complaint within 14 days of this Order.

This Order terminates ECF No. 14.

**IT IS SO ORDERED.**

Dated: April 26, 2023

TRINA L. THOMPSON
United States District Judge