UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MARTHA VALENTINE, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>CROCS, INC.,<br><br>        Defendant. | Case No.  22-cv-07463-TLT   (PHK)<br><br>**ORDER RE: DISCOVERY LETTER BRIEF NO. 2 RESOLVING DISPUTES RE: CUSTOMER COMPLAINTS, FORMULA DOCUMENTS, AND SHRINKAGE DOCUMENTS**<br><br>Re: Dkt. 63 |

United States District Court
Northern District of California

This is a putative class action brought by Plaintiffs Martha Valentine, Ruby Cornejo, and Tiffany Avino (collectively "Plaintiffs") against Defendant Crocs, Inc. concerning "shoes that Defendant sells made of 90% or more Croslite® material."  [Dkt. 33 at ¶¶ 1-2].  The case has been referred to the undersigned for all discovery purposes.  *See* Dkt. 46.

Now before the Court is a joint discovery letter brief regarding three disputes: (1) Defendant's responses to Plaintiffs' discovery requests seeking customer complaints relating to shrinkage of Crocs products; (2) Defendant's responses to Plaintiffs' discovery requests for shrinkage documents related to Crocs shoes other than the Classic Clog and Classic Bae; and (3) Defendant's responses to Plaintiffs' discovery requests for finished shoe shrinkage test results. [Dkt. 63].  The Court finds the disputes suitable for resolution without oral argument.  Civil L.R. 7-1(b).

Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Information

United States District Court
Northern District of California

1  need not be admissible to be discoverable.  *Id.*  Relevancy for purposes of discovery is broadly

2  defined to encompass "any matter that bears on, or that reasonably could lead to other matter that

3  could bear on, any issue that is or may be in the case."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535,

4  539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978));

5  *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC),

6  2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy

7  for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

8  While the scope of relevance is broad, discovery is not unlimited.  *ATS Prods., Inc. v.*

9  *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of

10  discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

11  Information, even if relevant, must be "proportional to the needs of the case" to fall within the

12  scope of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1)

13  emphasize the need to impose reasonable limits on discovery through increased reliance on the

14  common-sense concept of proportionality: "The objective is to guard against redundant or

15  disproportionate discovery by giving the court authority to reduce the amount of discovery that

16  may be directed to matters that are otherwise proper subjects of inquiry.  The [proportionality

17  requirement] is intended to encourage judges to be more aggressive in identifying and

18  discouraging discovery overuse."  Fed. R. Civ. P. 26 advisory committee's note to 2015

19  amendment.  In evaluating the proportionality of a discovery request, a court should consider "the

20  importance of the issues at stake in the action, the amount in controversy, the parties' relative

21  access to the information, the parties' resources, the importance of the discovery in resolving the

22  issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

23  Fed. R. Civ. P. 26(b)(1).

24  The party seeking discovery bears the burden of establishing that its request satisfies the

25  relevancy requirements under Rule 26(b)(1).  *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,

26  285 F.R.D. 481, 485 (N.D. Cal. 2012).  The resisting party, in turn, has the burden to show that the

27  discovery should not be allowed.  *Id.*  The resisting party must specifically explain the reasons

28  why the request at issue is objectionable and may not rely on boilerplate, conclusory, or

speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

This case is still in the precertification stage. The class certification discovery cutoff is April 26, 2024, with a class certification motion due on May 31, 2024. *See* Dkt. 59. Precertification discovery lies entirely within the Court's sound discretion. *Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). In the context of class certification, discovery must be limited so that it does not place an undue burden on the opposing party. *Valentine v. Crocs, Inc.*, No. 22-cv-07463-TNT (PHK), 2023 WL 7461852, at *1 (N.D. Cal. Nov. 10, 2023) (citing *Montano v. Chao*, No. 07-cv-00735-CMA-KMT, 2008 WL 5377745, at *3 (D. Colo. Dec. 19, 2008)). A court in its sound discretion may permit limited and targeted non-burdensome discovery on class certification, where the proponent demonstrates such discovery is in the interests of justice and consistent with the language and spirit of Rule 23. *Id.* (citing *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 465, 469-70 (S.D. Tex. 2002)). In analyzing precertification discovery disputes, the Court must

United States District Court
Northern District of California

consider "the need for discovery, the time required, and the probability of discovery providing necessary factual information." *Frost v. LG Electronics, Inc.*, No. 16-cv-05206-BLF, 2018 WL 11606311, at *4 (N.D. Cal. Mar. 29, 2018) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).

The Court notes that, generally, discovery in a putative class action at the precertification stage is limited to certification issues, such as the number of class members, the existence of common questions, typicality of claims, and the representatives' ability to represent the class. *Oppenheimer*, 437 U.S. at 359. Although discovery on the merits is usually deferred until it is certain that the case will be allowed to proceed as a class action, "the merits/certification distinction is not always clear" and "the two do overlap." *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *2 (N.D. Cal. Jan. 20, 2015); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (explaining that the "rigorous analysis" under Rule 23(a) often "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."). In this case, discovery has not been bifurcated or phased. As such, this Court is mindful that some leeway should be afforded with respect to merits-related issues as part of the precertification discovery determination. The Court now turns to the discovery disputes at hand.

## I.   Customer Complaints

The Parties' first dispute concerns Plaintiffs' discovery requests for all documents and customer complaints related to shrinkage of Crocs products. [Dkt. 63 at 1]. Plaintiffs complain that Defendant has only produced "a spreadsheet" of these materials. *Id.* Plaintiffs argue that the spreadsheet is "deficient" because: (i) it includes only "a sample" of customer complaints made via email; (ii) it does not include any complaints that predate the putative class period; (iii) it does not include any complaints made by customers subsequent to mid-2023; (iv) it does not include retailers' complaints; and (v) it does not include complaints relating to "deformation." *Id.* at 1-2. Plaintiffs argue that the "full scope" of customer complaints relating to shrinkage is "highly relevant" and "necessary" for them to rebut Defendant's contention that the relatively "small percentage" of customer complaints related to shrinkage precludes class certification. *Id.* at 2.

1    Defendant, in response, argues that it does not possess "many" of the customer complaint

2    documents that Plaintiffs seek, stressing that it does not have a "centralized database" of

3    customers' communications with Crocs.  *Id.*  Defendant argues that it "spent weeks, incurring

4    great expense and trouble, creating a spreadsheet with information it could gather about customer

5    complaints related to shrinkage."  *Id.*  Defendant states that the spreadsheet includes detailed

6    information culled from "thousands" of complaints made between 2019 and 2023, including all

7    "reasonably available" information regarding "how" the complaint was made and "the nature of

8    the complaint."  *Id.*  Defendant argues that it should not be required to produce additional

9    documents relating to customer complaints, particularly given that "[t]here is no certified class

10   here and no argument that Plaintiffs lack sufficient information to make their certification

11   arguments."  *Id.*

12       The Court finds that Plaintiffs' request for additional discovery of customer and retailer

13   complaints regarding shrinkage beyond those already produced by Defendant, even if relevant, is

14   unduly burdensome and not proportional to the needs of the case.  *See Weeks v. Google, Inc.*, No.

15   18-cv-00801 NC, 2018 WL 11323715, at *1 (N.D. Cal. Dec. 21, 2018) (denying putative class

16   action plaintiffs' request to compel Google to provide information about its revenue data for Pixel

17   sales on proportionality grounds where plaintiffs did not explain how the information Google

18   already agreed to produce would not be "sufficient" for plaintiffs' economic analysis); *Jones v.*

19   *Nutiva, Inc.*, No. 16-cv-00711-HSG(KAW), 2016 WL 5858467, at *3 (N.D. Cal. Oct. 7, 2016)

20   (denying request to compel documents relating to "audit trail during the CLASS PERIOD" where

21   the plaintiff failed to explain how the discovery was proportional to the needs of the case).

22       The fact that Defendant represents to the Court that there is no centralized repository of

23   complaints underscores how and why requiring a search for additional complaints across a larger

24   time frame is not proportional to the needs of the case at this stage.  Plaintiffs do not sufficiently

25   justify why complaints from before the putative class period are relevant, non-duplicative, or

26   proportional to the needs of the case—whether or not Defendant knew of the alleged defect prior

27   to the class period is entirely duplicative of the complaints that were produced (in summary form)

28   that would show that Defendant knew of the alleged defect during the class period.  [Dkt. 63 at 1-

United States District Court
Northern District of California

2]. Nor do Plaintiffs explain at all why a search for and production of complaints that occurred after mid-2023 (approximately six months after this case was filed) are either necessary, non-duplicative, or proportional to the needs of the case. *Id.* at 2. Fundamentally, Plaintiffs' request for a renewed search for a wider swath of complaints (such as complaints from or received by retailers) and one addressing a broader term ("deformation" as opposed to "shrinkage") is not proportional and risks duplication of effort (with concomitant costs and burdens), where Defendant's spreadsheet already provides information on thousands of complaints directed to Crocs on the specific defect alleged. The spreadsheet Defendant created was apparently created using ESI search terms the Parties agreed upon. Further, Plaintiffs make no attempt to show how or why Defendant would have in its possession, custody, or control any customer complaints sent to third-party retailers, and on that basis alone, under Rule 34, the request for customer complaints directed to retailers is legally deficient (particularly in light of Defendant's representation to the Court that Defendant's ESI search would have retrieved complaints from retailers to Crocs). [Dkt. 63 at 2]. In sum, Plaintiffs' request for additional discovery relating to customer complaints is **DENIED**.

However, the Court finds that Plaintiffs are entitled to, and should be given an opportunity to review, the documents and/or materials used by Defendant to generate the spreadsheet of customer complaints. Under Rule 34, a responding party has no option to produce only a "summary" of the documents responsive to a request. *See* Fed. R. Civ. P. 34(b)(2)(E). Documents must either be produced as they are kept in the ordinary course of business or organized and labeled to correspond to the categories in the request. *Id.* Even under the Federal Rules of Evidence (which do not even apply at this stage of the proceeding), a party using a summary of voluminous documents must make the documents available for examination or copying. *Cf.* Fed. R. Evid. 1006. Accordingly, the Court **ORDERS** Defendant to produce any and all nonprivileged materials, documents, ESI, or other tangible things that Defendant reviewed and/or relied on to create the spreadsheet at issue. The Parties shall meet and confer either in-person or by videoconference regarding the timing and manner of Defendant's production of these materials and shall provide a Joint Status Report to this Court regarding those efforts by no later

1    than **April 22, 2024**.

2    **II.    Shrinkage Documents for Other Types of Crocs Shoes**

3          The Parties' second dispute concerns Plaintiffs' request for documents relating to the

4    shrinkage of Crocs shoes other than the Classic Clog and Classic Bae, which are the two shoe

5    models or styles purchased by Plaintiffs.  [Dkt. 63 at 3-4].  Plaintiffs argue that "new information"

6    recently disclosed by Defendant regarding the material composition of the Classic Clog and

7    Classic Bae "now makes the shrinkage of other products made out of those same materials

8    relevant to the claims since Plaintiffs' theory is that the Croslite material shrinks."  *Id.* at 3.

9    Plaintiffs argue that discovery regarding these other products is "highly relevant" to establishing

10   "the existence of a defect, the kinds of temperatures and environments that cause shrinkage, and

11   Crocs knowledge of the defect."  *Id.*

12          Defendant argues, in response, that in light of the April 28, 2023 Order striking Plaintiffs'

13   class claims regarding products they did not purchase, "the only relevant shoes are those

14   purchased by Plaintiffs."  *Id.*  Defendant contends that, unless and until the Court issues an order

15   "stating that all Crocs shoes composed of Croslite are at issue in the litigation," Plaintiffs have "no

16   basis for demanding discovery about shoes [they] did not purchase."  *Id.*  Defendant argues (and

17   Plaintiffs do not appear to meaningfully dispute) that Crocs has already produced "large amounts

18   of shrinkage documents related to all kinds of Crocs shoes" which were identified by the Parties'

19   agreed-upon ESI search terms.  *Id.* at 4.  Stressing that the Parties' agreed-upon ESI search terms

20   included "Clog" and "Bae" but did not include "words such as sandal, boot, sneaker, or other

21   types of shoes," Defendant argues that Plaintiffs are effectively trying to obtain "an entirely new

22   ESI search."  *Id.*

23          As with the first disputed issue, the Court finds that Plaintiffs' request for additional

24   shrinkage documents relating to other Crocs shoes beyond those that are the subject of this case is

25   not proportional to the needs of the case and would unduly burden Defendant.  *Weeks*, 2018 WL

26   11323715, at *1.  Plaintiffs do not explain why the materials produced pursuant to the Parties'

27   agreed-upon ESI search are not sufficient to make their class certification arguments.  Nor do

28   Plaintiffs explain how or why the information and documents produced regarding the two models

United States District Court
Northern District of California

of Crocs shoes at issue fails to address the very issues the additional requested discovery is purportedly directed to, such as existence of a defect, the kinds of temperatures and environments that cause shrinkage, and Crocs's knowledge of the defect.  At best, the requested additional discovery would be duplicative of the documents and materials already produced because, under Plaintiffs' theory of the case, any shoe made of Croslite experiences the shrinkage defect.  There is nothing in the record to demonstrate that additional discovery on other shoes made of Croslite would yield such unique information so as to justify the additional expense and burden, especially where Defendant has already searched for and produced documents that address those other shoes in addition to the two models specifically at issue.  Accordingly, Plaintiffs' request to compel production of these additional shrinkage documents is **DENIED**.

### III.    Finished Shoe Shrinkage Test Results

The Parties final dispute concerns Plaintiffs' request for Crocs' internal testing results relating to the shrinkage of finished shoes.  [Dkt. 63 at 4-5].  Plaintiffs argue that this information is "highly relevant to this case" because it provides "class-wide evidence of shrinkage and Crocs' knowledge of shrinkage."  *Id.* at 4.  While noting that Defendant has produced "some" finished shoe shrinkage test results, Plaintiffs argue entitlement to and demand production of "a complete set" of "all finished shoe shrinkage test results."  *Id.*  Plaintiffs argue that it "should be easy" for Defendant to produce this information because it is stored in Crocs' centralized database.  *Id.*

Defendant, in its portion of the joint letter brief regarding this dispute, argues that Plaintiffs are effectively asking Defendant "to compile documents and data involving every finished shoe test at every factory (over 30 factories) for every type of shoe made at every factory over a multi-year period."  *Id.*  Defendant argues that the request implicates "hundreds of millions of shoes."  *Id.*  Defendant argues that Plaintiffs "articulate no reason" as to why such information is needed at this stage of the case.  *Id.* at 4-5.  Defendant argues that it "already conducted a thorough review of [approximately one million] documents pulled through the ESI search" and "produced all relevant, responsive documents."  *Id.* at 5.  Defendant contends that it "should not now be required to pull and sort through potentially thousands of additional documents."  *Id.*

The Court finds that Plaintiffs' request for additional testing data (beyond that already

produced by Defendant) is unduly burdensome and disproportionate to the needs of the case. *Weeks*, 2018 WL 11323715, at *1.  As with the preceding dispute, Plaintiffs do not explain why testing documents and data produced pursuant to the Parties' agreed-upon ESI search are not sufficient to make their class certification arguments.  Nor do Plaintiffs explain how or why the shoe shrinkage test results which were produced fail to address the very issues the additional requested discovery is purportedly directed to, such as class-wide shrinkage and Crocs's knowledge of the alleged defect.  At best, the requested additional discovery would be duplicative of the testing materials already produced because, under Plaintiffs' theory of the case, any shoe made of Croslite experiences the shrinkage defect.  There is nothing in the record to demonstrate that additional discovery on testing of millions of other shoes made of Croslite would yield such unique information so as to justify the additional expense and burden. Accordingly, Plaintiffs' request for an order compelling Defendant's production of additional testing data is **DENIED**.

**IT IS SO ORDERED.**

Dated:  April 15, 2024

_____

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California