**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

 *Attorneys for Plaintiffs*

**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (State Bar No. 215948)
  BWahlquist@kelleydrye.com
Ruth Kwon (State Bar No. 334076)
  RKwon@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (310) 712-6100
Facsimile: (310) 712-6199

Jonathan Cooperman (*pro hac vice*)
  JCooperman@kelleydrye.com
Caitlin R. Hickey (*pro hac vice*)
  CHickey@kelleydrye.com
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

 *Attorneys for Crocs, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA VALENTINE, RUBY CORNEJO, and TIFFANY AVINO, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>CROCS, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-07463-TLT-PHK<br><br>**JOINT DISCOVERY STATUS REPORT**<br><br>DATE:  August 16, 2024<br>TIME: 1:00 p.m.<br>CTRM: Courtroom F, 15th Floor<br><br>Hon. Peter H. Kang |

Case No. 3:22-cv-07463-TLT-PHK

JOINT STATUS REPORT PURSUANT TO ECF 85

**Error! Unknown document property name.**

Counsel for Defendant Crocs, Inc. ("Crocs") and counsel for Ruby Cornejo, and Tiffany Avino ("Plaintiffs") (collectively, the "Parties") submit this Joint Status Report pursuant to the Court's Standing Order and August 16, 2024 minute entry setting a further status conference. (ECF 116).

## I.    Case Status

Class certification briefing is done, and the hearing on class certification is scheduled for September 24, 2024.   A Motion to Intervene on behalf of four additional proposed class representatives (ECF 107) and Crocs' Motion to Strike the Opinions and Testimony of Dr. Hickner (ECF 103) will also be heard at that time. The close of fact discovery is still scheduled for December 20, 2024. (ECF 100).

The parties have some disputes (detailed further below) but also have reached several agreements on timing of outstanding discovery in order to fit discovery needs within the remaining time before trial.  The agreed-upon dates to conduct certain specified discovery are below:

- **Intervenor Discovery**:  If intervenors are allowed into the case, Crocs will serve written discovery within one week of the order granting the intervention, responses thereto will be due on 30 days later, and Plaintiffs will work with Crocs to provide deposition dates for the four Intervenors to take place between November 25-26 and December 2-6.

- **Merits Discovery – documents**:  Crocs has agreed, if a class is certified or if a decision on certification is still pending, to provide by October 21 (1) updated through 2024 sales and MSRP pricing data for the at-issue shoes sold in California by Crocs, (2) any retailer-specific California in-store sales data that Crocs may have, and (3) any standard operating procedures (SOPs) for at-issue shoes that were not already provided. Plaintiffs believe the SOPs should be produced before October 21 so they may use them for depositions, but the parties are discussing timing. Plaintiffs have asked to conduct additional ESI searches across various new custodians.  The parties have been meeting and conferring on this request, discussed below.

- **Expert Discovery** – **depositions**:  The Parties have agreed to disclose their experts for

JOINT STATUS REPORT

summary judgment motions by December 6, and then would provide expert reports with their December 20 summary judgment filings. The Parties have agreed to set aside January 3-9 for expert depositions on those expert reports. The Parties are discussing a possible early disclosure of experts on December 6.

- **ESI**: The Parties positions regarding ESI are identified below. The Parties met and conferred on Sept. 13 to discuss hit counts and a plan for moving forward. The parties will update the Court if they are able to make any progress.

The Parties' remaining disagreements are detailed below.

## II.     <u>Discovery Status Report</u>

### <u>Plaintiffs' Position on Discovery Status</u>

Although the Parties have reached consensus on some issues, the parties continue to have extensive disagreements over key discovery. Despite promises to conduct discovery in a timely manner, negotiations continue to get bogged down in objections and disagreements once the Parties discuss details. And, Crocs is conditioning the vast majority of requested discovery on class certification. The parties held their most recent discovery meet and confer on September 4, 2024.

As Crocs discusses below, the parties discussed a general outline for a discovery plan prior to the last status conference. Among other things, the parties discussed ESI production. Plaintiffs specifically raised the new custodians in the last Status Report. ECF 111. During that conversation, Crocs' counsel indicated additional searches could be run on a new set of custodians if Plaintiffs provided a new set of search terms, and Crocs would provide hit counts a week later, with the idea being the parties could have a negotiated set of search terms *before* the class certification hearing, which would be run shortly thereafter. That way, the parties could do depositions well in advance of the December 20, 2024 discovery cutoff. The parties discussed with plan with the Court. Pursuant to that plan, Plaintiffs provided Crocs with a list of new custodians and search terms on August 28. Plaintiffs did not hear back from Crocs until three days ago (September 10). It suddenly took the position that "all" search terms were "too broad." It refused to send edits to the search terms. It refused to negotiate the new custodians. It refused to consider Plaintiffs' alternative proposal of

tailoring search terms to each custodian. Rather than trying to come up with a reasonable plan, Crocs essentially refuses to negotiate *at all* until Plaintiffs identify the unique documents that would be available from the custodians.[1] This is not productive. Not only is Crocs now completely reneging on its agreement to provide ESI, it is now outsourcing all decision-making as to the plan for ESI to the Court. It is using the same tactic it used in the prior Status Report by now claiming the issue is "unripe." But the parties have been discussing this issue for a month now. It is "unripe" in the sense that Crocs has announced a complete reversal of its prior agreement. At a minimum, Plaintiffs believe it would be appropriate to discuss the general structure of the ESI plan so the parties can move forward with negotiating search terms. Plaintiffs have reiterated to Crocs that they would be willing to consider one of two structures: (1) the same search terms are run on all new custodians, or (2) search terms are tailored to each custodian. Crocs will not agree to one way or the other, or discuss custodians. As such, the parties have hit a roadblock.

Since the last status conference on August 16, 2024, Crocs has produced roughly three dozen additional documents. The overwhelming majority of these are copies of the photos of the inspection of Ms. Avino's shoes performed by Crocs' witness Brian McConahy submitted by Crocs in opposition to the motion for class certification. Defendant also produced a size chart for the Bayaband Clogs. Plaintiffs similarly produced four photos of the measurements of Ms. Avino's shoes performed by Plaintiffs' expert.

Plaintiffs served an additional set of RFPs on Crocs on August 28, 2024. The new RFPs asked for production of all relevant manufacturing specifications for the Products at issue, as well as "lasts" for every size of each of the Products (molds used to confirm the proper size and fit of Crocs shoes under Crocs' shrinkage measurement protocols). The RFPs included requests for communications between Crocs and its insurers relating to this lawsuit, and various documents relating to Crocs' policies and procedures relating to removal and suppression of negative product reviews and FTC investigation(s) of those practices. Crocs' responses to the RFPs are due September 26, 2024.

---

[1] Although Crocs asserts below that it has "repeatedly" asked for this information, the first time it did so was three days ago (Sept. 10).

The Parties have completed no other discovery in the past month.

**<u>Crocs' Position on Discovery Status</u>**

The Parties had a productive meet and confer on August 16, 2024, before attending the last conference with this Court, during which they outlined a basic plan for getting discovery completed prior to the close of the fact discovery deadline. The Parties agreed to set timeframes for the deposition dates for Crocs' fact witnesses, Intervenors/Plaintiffs, and expert witnesses, and have done so. Plaintiffs requested certain documents/information from Crocs, including Amazon ID numbers, the limited California third-party retail information available to Crocs, photos from the inspection of Avino's shoes, and updated pricing and sales data. As Crocs agreed, it then produced the ASINs, the partial California retail sales information for two of its retailers that Crocs had located[2], and photos from the Avino shoe inspection as well as Bayaband specs information requested by Plaintiffs. The Parties also agreed that if the Court had certified a class or had not issued an order on Plaintiffs' Motion for Class Certification by October 20, 2024, Crocs would provide updated sales and pricing data by October 21, 2024.

The Parties have been negotiating the more challenging issue of new ESI searches that Plaintiffs first brought up for four potential custodians during the Parties' August 16 meet and confer held before the parties' Status Conference with the Magistrate. Although Plaintiffs attempt to paint this dispute as an issue of Plaintiffs making the effort to come to a compromise and Crocs refusing to engage, this is simply false. Crocs has repeatedly explained to Plaintiffs that case law in this jurisdiction requires Plaintiffs, at this stage in the litigation, nearly one year after ESI terms and custodians were negotiated between the parties, have the burden to demonstrate good cause for expanding the scope of ESI searches and custodians. A party seeking to compel additional custodians must explain what they "expect to discover information from these custodians that differs from discovery they have already obtained from the others." *Handloser v. HCL Am., Inc.*, No. 19-CV-01242, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (denying request to add custodians

---

[2] Crocs explained that the data it had from in-California retailer sales was spotty, unreliable, and likely to have very limited value. The Parties therefore agreed that Plaintiffs would review the data for two retailers to determine whether the information was of use to them.

when plaintiffs could not justify how the new information would be distinct from what was already acquired by the requesting party). Plaintiffs must show that their newly identified custodians (some of whom Plaintiffs have known of for nearly a year) "possess uniquely relevant information that is not available from the sources already designated." *B&G Foods N. Am., Inc. v. Embry*, No. 2:20-CV-0526, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024). Plaintiffs have made no such showing.

Despite Plaintiffs' failure to meet their burden to justify additional, burdensome discovery, Crocs has been conferring with Plaintiffs in an attempt to reach a compromise and obviate the need for Court intervention. And Crocs does not believe this dispute is ripe, as Plaintiffs have yet to initiate a discovery letter on this topic (despite sending a draft discovery letter to Crocs on September 18 on two other topics that the parties were able to resolve and avoid filing).

Plaintiffs also misstate the parties' interactions on the topic of further ESI discovery. After the parties' August 16th discussion, on August 21, 2024, Crocs emailed Plaintiffs' counsel stating: "Our understanding is that you wanted ESI searches for Cori Lin, Tally Moore, Erik Olson, and Smeeta Khetarpaul. Please send what ESI search terms that you would propose, and I will discuss with Crocs and provide our comments/edits to those search terms." Plaintiffs responded a week later on August 28, dropping Cori Lin and proposing eight (8) custodians in addition to Tally Moore, Erik Olson, and Smeeta Khetarpaul, and providing 42 unique searches, many of which are bound to result in an unwieldly number of hits, including for irrelevant documents, by searching for broad terms such as "Polymer!" and "(Customer! or buyer! or retail! Or consumer) w/40 (care! or import! or playbook! or value! or critical! or essential! or defect!)." Crocs indicated that it was willing to consider targeted ESI search terms for these four custodians (Cori Lin, Erik Olson, Tally Moore, and Smeeta Khetarpaul), which it asked Plaintiffs on August 21 to provide. On August 28, 2024, for the first time putting together a list of proposed search terms, Plaintiffs provided 42 ESI searches they would like run against eleven (11) Crocs custodians—dropping one custodian mentioned during the August 16 meet and confer and adding eight new employee names. During the September 4 meet and confer, Crocs explained that the searches were vastly overbroad and asked Plaintiffs if they were going to provide targeted proposed searches and a description of what information Plaintiffs were

seeking at this stage in the litigation that they had not already received. Plaintiffs made clear on September 10 that they were not going to provide targeted search terms or a description of what information they had not already received and believed was in the unique possession of the named individuals. On September 12, Crocs provided more detailed information on the clear burden of the search terms, as detailed below.

As a general matter, the meet and confer process is ongoing. The ESI search issues raised by Plaintiffs in this Joint Status Report are not ripe for resolution, as Plaintiffs have not undertaken the discovery letter process mandated by the Court. But Crocs does provide some information on this dispute in its section below, in the event the Court does address this dispute.

### III. Status of Each Category of Discovery

### Document Production

**Sales and Pricing Data, California Sales Data and Standard Operating Procedures:** Crocs has agreed, if a class is certified or if a decision on certification is still pending, to provide by October 21 (1) updated through 2024 sales and MSRP pricing data for the at-issue shoes sold in California by Crocs, and (2) any retailer-specific California in-store sales data that Crocs may have. and (3) any standard operating procedures (SOPs) for at-issue shoes that were not already provided. Plaintiffs believe the SOPs should be produced before October 21 so they may use them for depositions, but the parties are discussing timing.

**Expert Billing Records:** The Parties have been in ongoing negotiations over production of expert invoices. Plaintiffs have proposed exchanging total amounts billed by experts before their depositions. Crocs has proposed that the experts be prepared to disclose total amounts billed during their depositions, and does not believe that this question regarding timing is ripe to be brought to the Magistrate.

**O'Laughlin Surveys, Conjoints and Data:** As discussed in the last Status Report, Crocs designated Laura O'Laughlin as its damages and consumer perception expert. Plaintiffs served a subpoena for conjoint documents to Ms. O'Laughlin on August 1, 2024, prior to her deposition on August 9th.. Crocs objected and refused to produce any materials not already filed in Court.

Plaintiffs have since provided Crocs with a narrowed list of surveys, conjoints and discrete data sets as of August 26, 2024. Crocs' Counsel stated she would discuss the matter with O'Laughlin in response to that narrowed list, and has confirmed that O'Laughlin is reviewing the list and should respond by next week as to whether she will not produce any of the requested documents. Crocs contends this issue is unripe to be before the Magistrate.

**Shoe Inspection Records:** The Parties continue to negotiate production of documents memorializing each parties' inspection of the Plaintiffs' shoes. Although Crocs inspected both Plaintiffs' shoes, it has disclosed some (but not all) photos for Ms. Avino's shoes (which Crocs contends show no shrinkage occurred). Plaintiffs have requested production of all photos from the inspection, including those for Plaintiff Cornejo's shoes as well. Crocs offered to produce all photos Mr. McConahy took of Avino's shoes if Plaintiffs produce all photos that Ms. Abshire took of Avino's shoes, and Plaintiffs are considering that request. The parties are continuing to meet and confer about this matter.

### ESI

#### A. Plaintiffs' Position

As discussed above, Plaintiffs raised the new custodians in their prior Status Report. Before the August 16 status conference, Crocs' counsel indicated that it would produce additional ESI for new custodians if the parties could negotiate a new set of search terms. The parties' plan, at the time, was to reach an agreement on search terms before the class certification hearing so document production could begin shortly thereafter. Counsel for Plaintiffs also stated that if Crocs wanted new search terms, then Plaintiffs may seek additional custodians from those they previously identified.

Plaintiffs sent new search terms and on August 28, tied to specific phrases and words that Plaintiffs identified in relevant documents. Although there were 42 search strings, that was because the search strings were broken out, with the idea being the parties could better identify the searches with high hits and focus their negotiations on those searches.

Crocs did not provide its position until three days ago (Sept. 10). It did not provide any hit counts until yesterday (Sept. 12), and, even then, it was only for the handful of searches identified

in this Status Report. It stated for the first time on Sept. 12 that it now refuses to negotiate at all until Plaintiffs identify the "unique relevant information that you did not obtain from the sources and searches already designated—that is, specific documents and information you are looking for from these new custodians that you don't already have." As stated above, Crocs will not negotiate custodians, it will not propose alternate ESI search terms, and it will not negotiate a general structure for the ESI searches. Given the suddenness of Crocs' reversal of its position, it is hard to see how it is not a concerted effort to delay discovery. As the Court made clear at the last Status Conference, merits discovery is ongoing, and the parties need to work together to ensure discovery proceeds expeditiously. Plaintiffs are making that effort; Crocs is not. *See Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018) ("[t]he discovery process in theory should be cooperative and largely unsupervised by the district court.").

For the parties to make any progress on this dispute, guidance from the Court as to an appropriate structure would be helpful. Once the parties agree on the structure, then they can negotiate the custodians and search terms, which should occur before the class certification hearing, as previously discussed.

Plaintiffs have offered two types of structures: (1) all search terms are run on all new custodians, or (2) Plaintiffs will tailor search terms to each custodian. Plaintiffs again did not hear back from Crocs as to its position on structure until yesterday. And, again, it appears that Crocs will not agree to either. It, instead, believes there should not be any search terms at all. Rather, it believes Plaintiffs must identify the documents that are missing from their production. The position is odd. It assumes that Plaintiffs know what is in the documents before they receive them. And, the point of the search terms is to facilitate Crocs' search of documents responsive to Plaintiffs' outstanding requests. Moreover, given that—per the Court's instruction—Plaintiffs are basing the ESI searches on terms used in documents that have already been produced, Plaintiffs have no idea how to propose search terms that have no "overlap" with prior productions as Crocs demands. And, to the extent there is overlap, the obvious solution is de-duplication. The custodians are plainly relevant to this litigation. Many have been identified by Crocs as its most knowledge persons for a number of topics

8 Case No. 3:22-cv-07463-TLT-PHK

JOINT STATUS REPORT

(Smeeta Khetarpaul, Cori Lin, Tally Moore, Erik Olson). *See also* ECF 111. Others were identified by Crocs' own 30(b)(6) representatives as having even more knowledge or have worked directly with them. And, others either developed Crocs' shrinkage tests, or were directly involved with the shrinkage studies and performance of those shrinkage tests. And, one pertains to Crocs' product reviews and social media activity, an issue Crocs injected into this case in its Opposition to the Motion for Class Certification. Crocs' concerns about overbreadth could easily be addressed by adopting Plaintiffs' proposed structure of tailoring the searches to each custodian. Or, even negotiating the pool of custodians. But Crocs will not agree to either.[3] It does not offer a viable proposal for moving forward either.

On August 22, 2024, Crocs stated that it would produce further ESI by October 21, 2024, unless the Court has denied the motion for class certification or dismissed the case by that date. But as of September 10, 2024, Crocs had not even begun pulling new custodial files, which it expects to take "weeks." Since Crocs has not pulled new custodial files or performed preliminary searches to identify hit counts, there is no clear path for Crocs to meet its promised October 21st production date.

**B. Crocs' Position**

While Crocs does not believe this issue is ripe, especially since no letter has been provided to the Magistrate, it addresses the ESI dispute below in the event the Court would like to discuss it with the parties at the Status Conference.

On August 16, Crocs agreed to consider targeted search terms for four custodians (Cori Lin, Erik Olson, Smeeta Khetarpaul, and Tally Moore), and asked Plaintiffs to provide those proposed terms. Plaintiffs did not do so until August 28, when without prior notice they added eight additional custodians to their request, and provided non-targeted and extremely broad search terms that (in Crocs' experience with ESI in this litigation) would lead to another million documents to review—in a case where class discovery deadlines have long passed. Crocs explained this to Plaintiffs during the September 4 meet and confer and asked Plaintiffs (1) whether they would provide more targeted terms for Crocs to consider, and (2) explain why they believed searches through all these custodians'

---

[3] Crocs misrepresents the proposed search terms below. Plaintiffs did not propose a search term solely for the "10001" product code.

files was necessary. Crocs did not hear back from Plaintiffs on this until September 11, when the parties began debating the need and burdens of the proposed ESI discovery.

Despite repeated requests from Crocs, Plaintiffs refuse to explain why their additional eleven (11) proposed custodians have unique relevant information not otherwise obtainable or already collected from the 17 custodians and 24 searches already run and reviewed that resulted in over 80,000 pages of documents and spreadsheets being produced. *See Handloser*, 2020 WL 7405686, at *2 and *B&G Foods N. Am., Inc.*, 2024 WL 626962, at *3 (cited above).

Plaintiffs continue to attempt to use the discovery process as a fishing expedition for documents and information they speculate might exist, nearly one year after the parties' negotiated search terms and custodians and Crocs conducted an extensive and burdensome discovery review.

Plaintiffs claim that the custodians are "plainly relevant to this litigation" but offer no explanation as to why these custodians were not designated originally. Plaintiffs' belated request to add new custodians and conduct ESI is not justified. Indeed, both Erik Olson and Cori Lin were identified in Crocs' Initial Disclosures, which Plaintiffs have had since March 9, 2023. Plaintiffs chose not to designate Erik Olson and Cori Lin from the outset of this litigation, despite knowing their roles within Crocs. Plaintiffs also deposed Tally Moore and Smeeta Khetarpaul as 30(b)(6) witnesses months ago, and knew of their roles in the company well in advance of the depositions. There is no justifiable basis for the delay in designating any of these custodians, particularly the four Plaintiffs identify above, and they should not now be permitted to engage in duplicative, burdensome, and unnecessary discovery simply to harass Crocs.

While Plaintiffs argue that Crocs should provide hit counts for these searches before arguing they are overly burdensome (and incorrectly claim that Crocs agreed to do this—it did not), Plaintiffs misunderstand how Crocs maintains its data and how hit counts are run. Crocs did not run "hit counts" on the newly proposed custodians, as Plaintiffs suggest above. As counsel explained to Plaintiffs on September 10, "the process of pulling the individual custodial files from the larger set of Crocs' preserved files happens at the same time as running the searches." It is not as straightforward as downloading entire custodial files and then running searches across them—a

process that takes multiple days to complete. As Crocs further explained, the document review process of the over one million documents gathered from the earlier ESI search terms took over 1200 attorney hours, even with the use of Technology-Assisted Review ("TAR"). At this stage in the litigation, Crocs should not be asked to undergo an even broader ESI search against eleven (11) new custodians who Plaintiffs did not pick in the first round.

Crocs explained to Plaintiffs that most of their new proposed custodians are within the manufacturing group from which various custodians' files were already pulled and searched and produced. Crocs explained that for the six "new" manufacturing employees that Plaintiffs wanted ESI searches ran for, tens of thousands of documents to and from and involving these manufacturing employees had already been reviewed, with thousands produced.

- Mf'g Employee A appears on 20,228 documents pulled by ESI searches and reviewed; 791 documents produced as responsive.

- Mf'g Employee B is on 12,033 documents pulled by ESI searches and reviewed; 339 documents produced as responsive. (Employed only through 2019.)

- Mf'g Employee C is on 32,989 documents pulled by ESI searches and reviewed; 789 documents produced as responsive. (Employed only through 2022.)

- Mf'g Employee D is on 23,504 documents pulled by ESI searches and reviewed; 91 documents produced as responsive.

- Mf'g Employee E is on 23,668 documents pulled by ESI searches and reviewed; 228 documents produced as responsive.

- Mf'g Employee F is on 55,381 documents pulled by ESI searches reviewed; 1,194 documents produced as responsive.

Crocs asked Plaintiffs what information was missing, or unique to these custodians, that they believe they should receive; Plaintiffs provided no such information.

Then as to the five non-manufacturing employees for which Plaintiffs request new ESI searches, one is a very high-level executive unconnected to the facts of this case unlikely to have any relevant information, and Plaintiffs have provided no justification for including his files in a broad search.

And while Crocs has indicated it could be willing to conduct targeted searches for Cori Lin, Tally Moore, Smeeta Khetarpaul, and Brian McConahy, if Plaintiffs provided acceptably narrow

JOINT STATUS REPORT

searches for review and discussion, Plaintiffs have as of yet provided only 42 completely overbroad searches. Crocs checked some of the searches in the current database (of the earlier custodians that were part of the agreed-upon ESI searches), and saw that hundreds of thousands of documents would have been pulled for review under just five of these search terms with the majority being irrelevant. So these proposed terms are clearly not tailored to zero in on relevant, new documents.

- "Polymer!" run through the 17 prior custodians gets 213 hits for produced documents and 21,757 hits for reviewed documents.

- "10001" (the style number for Classic Clogs) gets 1,553 hits for produced documents and 40,083 hits for reviewed documents.

- (Shrink! or shrank! or shrunk! or deform!) gets 6,469 hits for produced documents and 104,935 hits for reviewed documents.

- (Finished (w/2 (shoe w/5 (test* or stud* or analy*)))) gets 385 hits for produced documents and 11,499 hits for reviewed documents.

- ((Customer* or buyer* or retail* or consumer) w/40 (care* or import* or playbook* or value* or critical* or essential* or defect*)) gets 481 hits for produced documents and 40,370 hits for reviewed documents.

Crocs provided this information to Plaintiffs to make clear that the current proposed ESI searches are not designed to locate new relevant information and will place an undue burden on Crocs for the reasons addressed above. Crocs has asked for Plaintiffs' proposed targeted searches for Cori Lin, Tally Moore, Smeeta Khetarpaul, and Brian McConahy, but has not received those.

Crocs has responded to almost 100 RFP requests and has also conducted an extensive and burdensome ESI search. Plaintiffs should be required to identify what unique information they need from these new custodians who Plaintiffs did not chose for the ESI review conducted over many months last year.

Crocs reiterates its position: if Plaintiffs could tell Crocs what information/documents they are looking for, that could be a far more efficient way to approach a new review (and assess discovery disputes) than proposing new ESI searches with broad search terms (such as "Croslite" and "shrink" and the production numbers for at-issue shoes) that, when run through the current 17 custodians'

databases, resulted in hundreds of thousands of hits, as Crocs has explained to Plaintiffs. Crocs hopes to continue to meet and confer with Plaintiffs on this topic.

**Depositions**

The parties continue to negotiate further depositions. Plaintiffs believe that performance of depositions of Crocs' employees in a timely manner is contingent on timely ESI searched and production of custodial files, which has not yet begun.

**Fact Witnesses**:

**Marco Piano and Erik Olson:** Crocs previously identified date ranges for the depositions of Marco Piano (VP Global CCM – WH Sourcing) and Erik Olson (Senior Vice President of Product Development and Sourcing) sometime between October 22 and November 24, 2024. It now says it will produce these witnesses much later, in between November 11-13, or November 18-26, and/or the week of December 2. Plaintiffs believe Marco Piano should be produced in October since his custodial file was produced and Plaintiffs noticed his deposition over a year ago. Crocs notes that months ago it offered five different dates for Marco Piano's deposition in July and August when he would be in the United States, none of which dates worked for Plaintiffs' counsel. Because Crocs intends to bring Mr. Piano to the United States for his deposition, Crocs needs to do that when Mr. Piano is available. (And Mr. Olson is traveling in Asia through November 9, which is why the dates offered for his deposition start on November 11.)

Crocs also has said it will only offer these witnesses if the class is certified. Because Plaintiffs disagree that the depositions should be contingent on class certification, a discovery letter on this issue is likely if the class is not certified.

**Tally Moore, Cori Lin, and Brian McConahy:** These witnesses supplied testimony with Crocs' opposition to class certification. Crocs states it will agree to provide deposition dates for these witnesses between November 11-13, or November 18-26, and/or the week of December 2, but Plaintiffs believe December is too late. With that said, Crocs is still working to solidify dates with these witnesses but will plan to have the potential dates settled and over to Plaintiffs no later than September 19.

JOINT STATUS REPORT

Crocs, again, will only offer these witnesses if the class is certified. Because Plaintiffs disagree that the depositions should be contingent on class certification, a discovery letter may be forthcoming.

**Logistics**: Plaintiffs have proposed depositions via Zoom to facilitate scheduling. Crocs believes it is entitled to in-person depositions for Intervenors (should they be allowed to intervene) absent a showing of hardship, and has requested depositions within the period of November 25-26 and December 2-6. However, Plaintiffs note that this is over the holidays, which makes travel extremely expensive and difficult. Crocs is willing to change the dates as convenient for intervenors so long as the dates fall before December 6, in order to have in-person depositions in locations convenient to the intervenors. However, Plaintiffs believe this proposal, too, will be difficult given the volume of Crocs' fact witnesses that are supposed to take place during that time as well. Doing the depositions over Zoom would be much easier to schedule and coordinate. Guidance from the Court and/or an indication whether it believes in-person depositions should be required would be helpful.

**Interrogatories:** Crocs has not supplemented its interrogatory responses since Plaintiffs filed their Motion for Class Certification. Plaintiffs believe Crocs must supplement its responses to address the Products at-issue for class certification, and not just the Classic Clogs and the Bae models.

**Other Matters**

The parties have tentatively agreed to stipulate to the authenticity of records produced by Crocs, as well as their status as business records as defined by FRE 803(6).

However, Crocs has requested a complete list of all documents to be used at trial before committing to any such declaration. Plaintiffs propose that the stipulation should cover all records produced by Crocs, and need not identify every piece of evidence individually, though it should allow for individual objections to specific documents identified for use at trial within a reasonable time after the appropriate deadline for such disclosures. Crocs notes that not all documents it

produced were documents authored by Crocs, but that it would stipulate to the authenticity of any Crocs-authored documents that were produced.

Crocs further agreed to stipulate as to its net worth if a class is certified.


DATED: September 13, 2024


**GUTRIDE SAFIER LLP**

 /s/Kali Backer 
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

 *Attorneys for Plaintiffs*

**KELLEY DRYE & WARREN LLP**

/s/ Becca J. Wahlquist 
Becca J. Wahlquist (State Bar No. 215948)
  bwahlquist@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

*Attorneys for Defendant Crocs, Inc.*

## **ATTESTATION**

Pursuant to Local Rule 5-1(h)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing of this stipulation and have authorized the filing of this stipulation.

DATED: September 13, 2024

Respectfully submitted,

*/s/Kali R. Backer*
Kali R. Backer