1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA VALENTINE, et al.,

Plaintiffs,

v.

CROCS, INC.,

Defendant.

Case No. 22-cv-07463-TLT

**ORDER DENYING MOTION TO CERTIFY CLASS AND DENYING RELATED DAUBERT MOTION**

Re: Dkt. Nos. 95, 103

Plaintiffs Ruby Cornejo and Tiffany Avino (collectively, "Plaintiffs") bring this class action against Defendant Crocs, Inc. ("Defendant"), asserting (1) breach of implied warranty of merchantability (Cal. Com. Code § 2314); (2) violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL")); and (3) deceptive, misleading, and/or fraudulent conduct under the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq. ("CLRA")), California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL")), and the common law. ECF 95 ("Mot.") at i.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek to certify the following classes:

> Class: All persons who purchased, in the state of California, the Products from Crocs and its authorized retailers from November 22, 2018 to the present (the "Class").

> Direct Purchase Subclass: All Class Members who purchased the Products directly from Crocs (either online or in-person) (the "Subclass").

*Id.*

Before the Court are (1) Defendants' motion to strike the testimony and opinions of Plaintiffs' Expert Dr. Michael Hickner and (2) Plaintiffs' motion for class certification. After review and consideration of motion, briefings, attachments and exhibits thereto, Defendant's motion to

strike the opinion testimony of Dr. Hickner is **DENIED** as moot and Plaintiffs' motion to certify class is **DENIED**.

## I.   BACKGROUND

### A.   Procedural History

On November 23, 2022, Plaintiffs Martha Valentine, Ruby Cornejo, and Tiffany Avino filed class action complaint against Defendant Crocs, Inc. ECF 1. On May 26, 2023, Plaintiffs filed their Amended Complaint after Court's ruling on Defendant's Motion to Dismiss. ECF 33 ("Am. Compl."). The Amended Complaint alleges nine causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.; (4) fraudulent concealment; (5) fraud, deceit, and/or misrepresentation; (6) violation of the Consumers Legal Remedies Act, California Civil Code § 1750, et seq.; (7) False Advertising, Business and Professions Code § 17500, et seq.; (8) negligent misrepresentation; and (9) Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et seq. *See generally, Id.* On April 8, 2024, the Court denied Defendant's Motion to Dismiss the Amended Complaint. ECF 71. Valentine dropped her claims on May 10, 2024, leaving Cornejo and Avino.

On May 31, 2024, Plaintiffs filed their Motion for Class Certification. Mot. Plaintiffs narrow their claims asserted to: (1) breach of implied warranty of merchantability (Cal. Com. Code § 2314); (2) violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL")); and (3) deceptive, misleading, and/or fraudulent conduct under the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq. ("CLRA")), California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL")), and the common law. *Id.* at i.

On July 23, 2024, Defendant filed its Opposition to the Motion for Class Certification. ECF 102 ("Opp'n"). On the same day, Defendant filed the motion to strike testimony and opinion of Plaintiffs' expert Dr. Michael Hickner ("Daubert motion"). ECF 103 ("MTS"). In response, Plaintiffs filed an administration motion to strike the Daubert motion pursuant to Local Rule 7-3(a). ECF 104. Defendants filed an Opposition to the administrative motions. ECF 105. Plaintiff's administrative motion was denied. ECF 128.

United States District Court
Northern District of California

On August 23, 2024, Plaintiffs filed their Reply in support of their motion to certify class. ECF 117 ("Reply"). On the same day, Plaintiffs filed their Opposition to Defendant's Daubert Motion. ECF 118 ("MTS Opp'n"). Subsequently, Defendant filed objections to Plaintiffs' Reply pursuant to Local Rule 7-3(d)(1) and Plaintiffs filed their objection to Defendant's objections. ECF 121, 122. On September 6, 2024, Defendant filed their Reply in support of their Daubert motion. ECF 124 ("MTS Reply").

## B. Factual History

Defendant Crocs Inc. is a shoe manufacturer and seller that is incorporated under the laws of the state of Delaware and has its principal place of business in Broomfield, Colorado. Am. Compl. ¶ 16. Plaintiffs Ruby Cornejo and Tiffany Avino are California consumers who purchased products manufactured by Defendant Crocs, Inc. within the period of early-Spring 2022 until Summer 2022. *Id.* ¶¶ 85, 96.

Defendant's products are made from a proprietary foam called Croslite. Plaintiffs contend that Defendant's products "have a major design defect: Croslite shrinks in hot environments which can cause the shoes to drop a whole size (or more) and become unwearable." Mot. Ex. 5 at 258:5–22. Plaintiffs allege that the following products contain this defect: Classic Clog, Classic Clog (kids), Classic Clog (toddlers), Classic Tie Dye Clog, Bayaband Clog, and Baya Clog (collectively, "Products"). *Id.* at 2 n.5. Defendant do not deny that Croslite shrinks when exposed to extreme heat but argue that this extreme heat is not an ordinary customer environment. ECF 101-9 at 82:24–89:14, 224:25–225:17; 245:13–246:1.

Plaintiffs argue that Defendant "never warned on any label or product webpage that the shoes may lose their represented size in direct sunlight and hot environments." *Id.* Ex. 22, Ex. 23. Each Product was sold with hangtags that represented, among other things, the size of the shoe for the entirety of the class period. *Id.* All Product webpages on the Crocs website included a shoe size as well. *Id.* But Plaintiffs allege that Defendant never warned on any label or Product webpage that the shoes may lose their represented size in direct sunlight and hot environments. *Id.*

Plaintiffs further contend that "[t]he limited disclosures [Defendant] did make plainly acknowledge the fact that the shoes can shrink but omitted that the [p]roducts could shrink a whole

3

size in ordinary hot environments." *Id.* Ex. 7. Defendant's website, on the "Caring for your Crocs" webpage, a statement that reads: "Exposure to extreme heat, sun, dishwashers, washing machines, or hot cars can cause the shoes to shrink or warp." *Id.* Ex. 7 at 6. Because of Defendant's alleged failure to warn of the defect, Plaintiffs argue that Defendant mislead customers and received a price premium on its allegedly defective products. *Id.* at 11.

### 1. Plaintiff Cornejo

Cornejo alleges that she purchased a pair of Classic Crocs shoes from a DSW shoe store in Elk Grove, California around March of 2022 to use while working outdoors. *Id.* ¶ 85. Cornejo saw advertisements that the shoes were capable of "shed[ding] water" and were "water-friendly," and that they were suitable for use for gardening. *Id.* Around two months after Cornejo's purchase, she allegedly discovered that the shoes had inexplicably shrunk to the point where they no longer fit her. *Id.* ¶ 86.

Since 2014 or 2015, Cornejo has purchased a total of five pairs of Defendant's shoes—her at-issue shoes were purchased in March 2022, after two pairs of her shoes allegedly shrunk. ECF 102-6 ("Corenjo Dep.") at 57:19–58:25, 63:17– 64:6, 110:17–118:15, 127:2–131:9. After the commencement of this litigation, Cornejo purchased another pair of Crocs in the Fall of 2022 from a Crocs retail store. *Id.* at 111:3– 12.

### 2. Plaintiff Avino

Avino purchased a new pair of Classic Clogs Crocs shoes at the Crocs store in Ontario, California, in the summer of 2022. Am. Compl. ¶ 96. Avino claims that she viewed the Crocs website and the "Classic Clogs" page in particular, where she saw, and relied on, the representation that the shoes were "water-friendly." *Id.* Around a month after Avino's purchase, she allegedly discovered that the shoes, after being left outside her home, had inexplicably shrunk to the point where they no longer fit her. *Id.* ¶ 97. Avino claimed that her Classic Clog shoes shrank "several sizes." *Id.* Avino later amended her responses to state that her shoes were actually Bayaband Clogs. ECF 95-14 at 8-9.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

## II.   MOTION TO CERTIFY CLASS

### A.   Legal Standard

To certify a class, a court must be "satisfied, after a rigorous analysis" that the plaintiffs have satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Rule 23 consists of two parts. First, Plaintiffs must satisfy all four requirements of Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Second, Plaintiffs must demonstrate through evidentiary proof that the class satisfies at least one of the three subsections under Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Classes certified under Rule 23(b)(3) require that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Regardless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). For example, to determine whether a common question prerequisite is satisfied, "a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

United States District Court
Northern District of California

**B.    Article III Standing**

Defendants first argue that "neither Plaintiffs can show concrete injury or causation" required to establish Article III standing. Opp'n at 9. If the Court finds that both Plaintiffs lack Article III standing, the Court's inquiry can end there. *Id.* at 10.

"A plaintiff cannot proceed in federal court absent Article III standing, and 'must demonstrate standing for each claim [s]he seeks to press.'" *Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 643 (9th Cir. 2020) (citation omitted); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423. "Plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at 666.

**3.    Avino Fails to Establish Standing.**

Defendants argue that Avino's alleged injury-in-fact, the shrinking of her shoes, did not actually occur. Plaintiffs counter that Avino's shoes did in fact shrink and even if they did not, her injury-in-fact is the economic injury of overpaying for defective shoes. The Court finds that Avino has not established standing by a preponderance of the evidence.

**a.    To Establish an Injury-In-Fact, Avino Must Show Her Shoes Actually Shrunk.**

Defendants contend that Avino must show that the alleged defect in her shoes already manifested. Defendants cite to *Sugasawara v. Ford Motor Co.* In *Sugasawara*, the court found that the named plaintiffs lacked Article III standing because there was no proof that their vehicles had the alleged defect or that they experienced harm attributable to the defect. No. 18-CV-06159, 2019 WL 3945105, at *5–7 (N.D. Cal. Aug. 21, 2019).

Defendant also argues that this case is similar to *Bargetto v. Walgreen Co.* In *Bargetto*, plaintiff sought to certify class alleging that the plastic shopping bags defendant sold to customers like herself during the Class Period were not recyclable in violation of the law. *Bargetto v. Walgreen Co.*, No. 22-CV-02639-TLT, 2024 WL 3493260, at *2 (N.D. Cal. June 14, 2024). Defendant argued

that the evidence produced by both plaintiff and defendant show no record of plastic bag purchases by plaintiff. *Id.* at *3. Plaintiff argued that the deposition testimony is sufficient evidence to show she purchased the bags. *Id.* The Court found that, in light of Defendant's declaration evidencing that plaintiff had not purchased plastic bags during the Class Period, plaintiff had failed to show Article III standing by a preponderance of the evidence. *Id.* at *5-7.

Plaintiffs argue that a manifested defect is not necessary to demonstrate standing. Reply at 2. Rather, Plaintiffs have a "right to take a product free from defect." *Id.* (citing *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019)). Thus, Plaintiffs argue the injury they suffered was the overpayment for the defective product—not the manifestation of the defect itself. They further differentiate from *Bargetto*, arguing that there the Court found no standing because the defendant provided evidence that the plaintiff did not purchase the product. *Bargetto*, 2024 WL 3493260, at *5-7. However, here, Avino did purchase her shoes.

Even in Defendant's cited case *Sugasawara*, the court acknowledged that "when a consumer alleges that he or she would not have purchased property, or would have paid less for it, had the seller not misrepresented the property or failed to disclose its limitations, the consumer has plausibly alleged an injury-in-fact." *Sugasawara*, 2019 WL 3945105, at *6 (citing *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 945 (N.D. Cal. 2018)). But the named plaintiffs in *Sugasawara* could not show overpayment injury because they failed to adequately allege that the defect remains after the recall remedy has been completed. *Id.* Here, there are no similar facts regarding a recall remedy.

Plaintiffs also cite to *Siqueiros v. General Motors LLC* which states that "[c]ourts in this circuit, including the Ninth Circuit, have repeatedly held that putative class members have Article III standing when plaintiffs allege that they overpaid for a defective product, even if the defect at issue does not manifest itself in every putative class member's product." *Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2021 WL 4061708, at *4 (N.D. Cal. Sept. 7, 2021). In *Siqueiros*, plaintiffs alleged that defective piston rings were present in every class vehicle, diminishing the value of the class vehicles, regardless of whether they actually caused excessive oil consumption. *Id.* at *5. The court found that plaintiffs who purchased defective vehicles suffered a past concrete

United States District Court
Northern District of California

1    injury under Article III when they overpaid for those vehicles, regardless of whether they feel the

2    effects of the oil-consumption defect in the future. *Id.*

3           Here, like in *Siquieros*, Plaintiffs allege that all at-issue Products contain Croslite which will

4    shrink when exposed to hot temperature. Plaintiffs argue that because the defect is present in all at-

5    issue Products, the value of the Products is diminished, regardless of whether the Products actually

6    shrink. The Court agrees with Plaintiffs that Avino may allege an overpayment injury due to a defect

7    in the purchased Product. However, the question of whether the injury is overpayment of a defective

8    product, or the defect is itself demands a more nuanced analysis.

9           Defendant do not deny that Croslite shrinks when exposed to extreme heat but argue that

10   this extreme heat is not an ordinary customer environment. Defendant cites to *Webb v. Carter's Inc.*

11   In *Webb*, plaintiffs alleged that they suffered an overpayment injury when they purchased defective

12   children's clothing. *Webb v. Carter's Inc.*, 272 F.R.D. 489, 499 (C.D. Cal. 2011). The clothing

13   contained a tag-less label that allegedly caused skin irritation. *Id.* The court rejected plaintiffs'

14   overpayment injury argument because the defect which resulted in the overpayment would only

15   manifest for babies with sensitive skin. *Id.*

16          Similarly in *Birdsong v. Apple, Inc.*, plaintiffs claimed an overpayment injury, arguing that

17   the iPod's inherent risk of hearing loss reduced the value of their iPods and deprived them of the full

18   benefit of their bargain because they cannot "safely" listen to music. *Birdsong v. Apple, Inc.*, 590

19   F.3d 955, 961 (9th Cir. 2009). The court found that the plaintiffs had not suffered an overpayment

20   injury because the defect rested on a merely hypothetical risk of hearing loss to other consumers

21   who might use their iPods at high volumes. *Id.* Defendant argues that based on *Birdsong* and *Webb*,

22   for Avino's overpayment injury to be cognizable, the defect must not rest on the hypothetical risk

23   that Plaintiffs will use Products in extreme temperatures.

24          The Court finds that this case is more analogous to *Birdsong* and *Webb* than *Siquieros*. In

25   *Siquieros*, plaintiffs alleged that the defective piston rings would result in safety problems during

26   even *normal* driving conditions. *Siquieros*, 2021 WL 4061708, at *1 (emphasis added). Plaintiffs

27   presented evidence that the defect caused excessive piston ring wear in all the Class Vehicles, even

28   if many putative class members did not feel its effects. *Id.* at *5. In contrast, here, the shrinkage will

occur only if the Products are used in extreme temperatures. Like in *Birdsong*, the alleged defect rests on a hypothetical risk of shrinkage to customers who use their Products at extreme temperatures. Thus, an overpayment injury is hypothetical because the manifestation of the defect will depend upon how the consumer uses it.

Accordingly, Avino's injury-in-fact must be the defect itself and not the hypothetical overpayment injury depending on whether the defect manifests. Avino must demonstrate that her shoes actually shrunk in order to establish injury-in-fact.

### b. Plaintiffs Fail to Show by the Preponderance of the Evidence that Avino's Shoes Shrunk.

Brian McConahy, Vice President of Production Execution at Crocs, Inc., filed declaration stating that on May 21, 2024, he participated in the inspection of Avino's at-issue blue, women's size 10 Bayaband Clogs purchased on August 15, 2022. ECF 102-1, Declaration of Brian McConhay ("McConahy Decl.") ¶¶ 8-9. He acknowledges that for women's size 10 Bayaband Clogs, the target shoe length is 277 with an acceptable range of 276 mm to 280.5 mm. *Id.* ¶ 12. The target shoe width 114 mm, and the acceptable range is 113 mm to 115 mm. *Id.* ¶ 13.

To confirm this range, McConahy measured three random women's size 10 Bayaband Clogs. *Id.* at 6-14. After measurement, the sizes of these shoes were 276 mm by 114.32 mm, 275 mm by 113.48 mm, 278 mm by 113.48 mm, 279 mm by 114.28 mm, 276 mm by 114.46 mm, and 276 mm by 113.82 mm. *Id.* In contrast, a size 9 Bayaband Clog has a target length of 269 mm, and a target width of 113 mm, with acceptable ranges of shoe length between 268 mm and 272.5 mm and acceptable shoe widths between 112 mm and 114 mm. *Id.* ¶ 14.

McConahy then measured Avino's size 10 Bayaband Clogs. *Id.* at 5. Avino's right shoe measured at 281 mm by 115.38 mm, and her left shoe measured at 279 mm by 114.65 mm. *Id.* From this inspection, Avino's shoes are not smaller than the three random shoes. *Id.* at 15. In fact, Avino's right shoe is larger than the acceptable range for the size 10 Bayaband Clogs. Thus, Defendant argue that Avino's shoes did not shrink.

In Reply, Plaintiffs contend that Avino's shoes did shrink. Plaintiffs' expert, Jennifer Abshire, CEO of Active88 Footwear, Inc., filed declaration stating that she also measured Avino's

United States District Court
Northern District of California

shoes. ECF 117-10, Abshire Decl. ¶ 15. Avino's right shoe measured at 275.99 mm by 111.21 mm, and her left shoe measured at 273.62 mm by 112.14 mm. *Id.* From these measurements, Plaintiffs contend that Avino's shoes contain a width that corresponds to a size 9 rather than a size 10. Reply at 2. This purported one size shrinkage contrasts with the Amended Complaint in which Avino claimed that her shoes shrank "several sizes." Am. Compl. ¶ 97.

The primary difference in the Plaintiffs' measurements and the Defendant's measurements is the measurement point. While Defendant's measure includes the outside band around the sole of the shoe, Plaintiffs' measurement includes only the sole of the shoe. *Cf.* McConahy Decl. ¶ 15 *with* Abshire Decl. ¶ 19. Defendant contends that Plaintiffs incorrectly measured the shoe because (1) Defendant knows how to measure its own Products and (2) under Plaintiffs' measurement, every shoe—including the three random shoes measured by McConahy—would measure below the acceptable range. Thus, this dispute comes down to which party correctly measured the shoe.

Defendant also argues that the Abshire declaration should be stricken because Abshire is an undisclosed expert witness whose evidence improperly introduced for the first time in the Reply to create a dispute of fact. *See* ECF 121. A moving party is not permitted to offer new arguments in its Reply. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). The Court agrees with Defendant that the Abshire declaration introduces new evidence in the Reply. Accordingly, the Court **SUSTAINS** Defendant's objection and **STRIKES** the Abshire Declaration.

Avino has not demonstrated by a preponderance of the evidence that she sustained an injury-in-fact. Avino has not shown that her shoes in fact shrunk. The Court finds that Avino has not carried her burden to establish her injury-in-fact. Accordingly, the Court finds that Avino does not have standing.

### 4.  Cornejo Has Established Standing.

Defendants next argue that Cornejo also lacks an Article III injury. Defendants argue that Cornejo purchased her at-issue Tie Dye Clog shoes in March 2022 with full knowledge that her previous Crocs shoes had shrunk. Corenjo Dep. at 57:19–58:25, 63:17–64:6. Since 2014 or 2015, Cornejo purchased a total of five pairs of Defendant's shoes—her at-issue shoes were purchased in

1    March 2022, after two pairs of her shoes allegedly shrunk. *Id.* at 57:19–58:25, 63:17– 64:6, 110:17–

2    118:15, 127:2–131:9. Defendants argue that Cornejo cannot assert a price premium damage based

3    on a belief in size stability because she was a repeat purchaser in March 2022 with full knowledge

4    of the alleged issue. Opp'n at 10.

5          Plaintiffs argue that Defendant's argument conflates the merits of the claim with whether

6    there is a case or controversy under Article III. Reply at 3. Plaintiffs acknowledge that Defendant's

7    argument goes to whether Cornejo actually relied on Defendant's alleged omission. *Id.* However,

8    Plaintiffs contend that issue goes to the element of reliance which is a merits issue that should not

9    be decided in the standing inquiry. *Id.*

10         Plaintiffs also timely filed a statement of recent decision, arguing that subsequent purchases

11   of the alleged defective products do not negate standing. *See* ECF 129. In *Swartz v. Dave's Killer*

12   *Bread, Inc. et al.*, plaintiff alleged the defendant unlawfully included protein content claims on the

13   front of their bread product labels, without also including the protein content calculated using the

14   FDA-mandated labeling method. No. 4:21-cv-10053-YGR, *2 (N.D. Cal. Sept. 20, 2024). After

15   filing the lawsuit, plaintiff again purchased defendants' bread product claiming that his child had

16   become accustomed to its taste. *Id.* at *4. Defendants argued that because of this post-lawsuit

17   purchase, plaintiff does not have standing because he cannot assert that he would not have purchased

18   the product or would have paid less for it if he had known the "true nature of the Products." *Id.*

19   However, the court found that plaintiff's single post-lawsuit purchase simply demonstrates that the

20   protein considerations were no longer as significant as when his child was young. *Id.* The claim that

21   defendants "create[d] demand that would not otherwise have existed," "causing plaintiffs to

22   overpay" is sufficient to establish Article III standing. *Id.* (citing *Maya v. Centex Corp.*, 658 F.3d

23   1060, 1069 (9th Cir. 2011)).

24         In *In re ConAgra Foods, Inc.*, defendant argued that named plaintiff could not assert injury

25   because "plaintiffs continued to purchase cooking oils and other products that were labeled 'natural'

26   but contained non-organic GMO ingredients." 90 F. Supp. 3d 919, 967 (C.D. Cal. 2015), *aff'd sub*

27   *nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), *and aff'd sub nom. Briseno*

28   *v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). The court found that although plaintiffs'

United States District Court
Northern District of California

subsequent purchases seriously undercut their claim that their purchasing decision was influence by the labeling, they do not deprive plaintiffs of standing. *Id.* The fact that named plaintiffs might consider or will consider purchasing products in the future even if they contain GMOs goes to the question of materiality of the alleged representation and not to the standing analysis. *Id.*

Defendants argue that these cases are distinguishable because Cornejo's repeat purchases in 2016 and 2018—when she allegedly knew of the defect—occurred before the filing of this case. However, Defendants do not provide any caselaw as to why this distinction is meaningful. Parties also do not dispute whether Cornejo's shoes actually shrunk. Accordingly, the Court finds that Cornejo has established standing.

### C.   Plaintiffs have failed meet the Rule 23(a) requirements.

To certify a class, Plaintiffs must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure by a preponderance of the evidence. *Olean*, 31 F.4th at 664-65. While Plaintiffs have established numerosity, commonality, and adequacy, Plaintiffs have failed to establish typicality because Cornejo is subject to unique defenses that threaten to become the focus of the litigation. Cornejo is repeat purchaser who knew of the shrinkage defect, and she did not purchase directly from Crocs. Because Plaintiffs have not established the requirements of Rule 23(a), the Court need not address the requirements of Rule 23(b). Accordingly, the Court **DENIES** motion to certify class.

#### 1.   Numerosity

A proposed class satisfies the numerosity requirement if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants contend that Plaintiffs have not shown numerosity because Plaintiffs have only identified one California resident (Cornejo) whose shoes verifiably shrunk. Opp'n at 11. Plaintiffs' problems in identifying class members who were in fact injured by alleged omission calls numerosity into question. *Id.*

Plaintiffs argue Defendants mispresent the proposed class. Reply at 3. The class is defined by individuals who bought the Products in California, not individuals whose shoes shrank in California. *Id.* Plaintiffs provide exhibits which indicate that Defendant sold thousands of each

United States District Court
Northern District of California

1   Product in California during the class period.  *See* ECF 94-24 ("Lin Dep.") at 33:20–37:24, ECF 94-

2   11, ECF 94-42. The Court finds that Plaintiffs have established numerosity.

3            **2.   Commonality**

4            Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

5   23(a)(2). A common question "must be of such a nature that it is capable of class-wide resolution—

6   which means that the determination of its truth or falsity will resolve an issue that is central to the

7   validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

8   (2011). "By contrast, an individual question is one where members of a proposed class will need to

9   present evidence that varies from member to member." *Olean*, 31 F.4th at 663. Commonality often

10  overlaps with the predominance inquiry for the purposes of certifying a class under Rule 23(b)(3).

11           Plaintiffs argue that commonality is "easily" met here, as the claims of all Plaintiffs and class

12  members "involve the same alleged defect[.]" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

13  1168, 1173 (9th Cir. 2010).

14           Defendants contend that Plaintiffs reliance on *Wolin* is misplaced because *Wolin* did not

15  address California law. Defendants argue that *Am. Honda Motor Co. v. Superior Ct.* applies here.

16  In *Am. Honda*, the California Court of Appeals considered how claims asserted under California

17  law would demonstrate commonality for implied warranty claims. *Am. Honda Motor Co. v. Superior*

18  *Ct.*, 199 Cal. App. 4th 1367, 1375 (2011). The court held: "the party moving for class certification

19  must provide substantial evidence of a defect that is substantially certain to result in malfunction

20  during the useful life of the product. This is an issue that must be considered not only to determine

21  the merits of a plaintiff's claim, but also in a class certification motion." *Id.* Thus, Defendants argue

22  that under *Am. Honda Motor*, Plaintiffs have not offered any evidence to support their claim of a

23  "substantially certain" defect.

24           Plaintiffs argue that *Wolin v. Jaguar Land Rover N. Am.* applies here. The Ninth Circuit in

25  *Wolin* held that that "proof of the manifestation of a defect is not a prerequisite to class certification."

26  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010). Plaintiffs contend

27  that while *Wolin* applied Michigan and Florida substantive law, *Wolin* was reaffirmed in *Nguyen v.*

28  *Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019) which applied California law. Plaintiffs

United States District Court
Northern District of California

13

further argue that *Am. Honda* does not apply here because the Court is applying Rule 23 and not California procedural rules. Because of the holdings in *Wolin* and *Nguyen*, Plaintiffs argue that Plaintiffs do not need to prove manifestation of a defect as a prerequisite to class certification.

In *Wolin*, the plaintiffs, seeking class certification under Rule 23, alleged both Michigan and Florida consumer protection and breach of warranty claims based on a purported geometry defect in the vehicle's alignment that caused premature wear and resulted in a turbulent ride. *Wolin*, 617 F.3d at 1170. Plaintiffs argued that common questions predominated as to all class members, including: (1) whether the vehicle's alignment geometry was defective, (2) whether the defendant was aware of the defect, and (3) whether the defendant concealed the nature of the defect. *Id.* at 1172. The defendant's contention in opposing class certification was that the plaintiffs had failed to prove that the defect manifested itself in all of the class vehicles. *Id.* at 1173. The Ninth Circuit rejected this argument and held that "proof of the manifestation of a defect is not a prerequisite to class certification." *Id.*

Subsequently, the California Court of Appeals addressed a nearly identical situation. *Am. Honda Motor Co. v. Superior Ct.*, 199 Cal. App. 4th 1367, 1370 (2011). In *Am. Honda*, plaintiff moved to certify class under California law, alleging California breach of warranty claims arising out of transmission defects that caused his vehicle to lurch unsafely on the road. *Id.* Defendant argued that plaintiff had failed to prove that all class vehicles contain the same "inherent defect which is substantially certain to result in malfunction during the useful life of the product." *Id.* at 1373. The court held that a breach of warranty claim in California "cannot result if the product operates as it was intended to and does not malfunction during its useful life." *Id.* at 1376. Accordingly, the court held that a breach of warranty claim requires "substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product." *Id.*

District courts have grappled with the differences in these cases in the past. In *Keegan v. Am. Honda Motor Co., Inc.*, plaintiffs sought certification of their warranty and consumer protection claims, alleging the existence of defective rear suspension that caused premature wear and an extremely rough ride. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 511 (C.D. Cal. 2012). Defendants, relying on *Am. Honda*, argued that plaintiffs had failed to show substantial evidence

United States District Court
Northern District of California

that all class members are substantially certain to experience a malfunction from the alleged defect. *Id.* at 528. In response, the plaintiffs cited to *Wolin*, claiming that they need not prove common manifestation of a defect for class certification. *Id.* The court concluded that the decision in *Am. Honda* conflated the substantive requirements of warranty claims with the procedural requirements of class certification. *Id.* at 535. Accordingly, the court found that it was "bound to apply *Wolin*" and refused to require plaintiffs, at the class certification stage, to "adduce evidence that [the] defect [wa]s substantially certain to arise in all class vehicles during the vehicles' useful life." *Id.* at 535.

In *Torres v. Nissan North America Inc.*, the court similarly faced the issue of reconciling *Am. Honda* with *Wolin. Torres v. Nissan N. Am. Inc.*, No. CV1503251RGKFFMX, 2015 WL 5170539, at *4 (C.D. Cal. Sept. 1, 2015). The court first concluded that "*Wolin* clarifies federal procedural law (Rule 23) while [*Am. Honda*] expounds on California substantive law (the elements of a warranty claim)." *Id.* The court acknowledged that the plaintiff's burden to prove that common issues predominate is inextricably linked with the substantive law that governs the underlying claims alleged. *Id.* (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). The court found that *Am. Honda* unambiguously declared that the requirement of showing a defect manifestation "is an issue that must be considered not only to determine the merits of a plaintiff's claim, but also in a class certification motion." *Id.* Thus, *Am. Honda* does not merely address California class action procedures but also declares California substantive law. *Id.* The court applied the California substantive law from *Am. Honda*, finding that plaintiffs failed to show that all class members are substantially certain to experience a malfunction from the alleged defect. *Id.* at *5. Accordingly, the court found that plaintiffs did not satisfy their predominance requirement of Rule 23(b)(3) with respect to the warranty claims. *Id.*

District courts have generally found the reasoning in *Keegan* to be more persuasive. *See Miller v. Fuhu, Inc.*, 14-cv-6119–CAS–AS, 2015 WL 7776794, at *14 (C.D. Cal. Dec. 1, 2015) (applying *Wolin*), *Victorino v. FCA US LLC*, 326 F.R.D. 282, 299 (S.D. Cal. 2018) (same), *Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-CV-05984-RGK-AS, 2020 WL 4390371, at *17 (C.D. Cal. July 28, 2020) (same)*, Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF, 2024 WL 4005097, at *12 (C.D. Cal. July 2, 2024) (same); *but see Sonneveldt v. Mazda Motor of Am., Inc.*,

1   No. 819CV01298JLSKES, 2023 WL 1812157, at *7 (C.D. Cal. Jan. 25, 2023) (declining to apply

2   *Wolin* in decertification proceeding).

3       The Court finds *Keegan*'s reasoning to be persuasive. *Wolin* applies federal procedure to the

4   class certification stage while *Am. Honda* invites a question that goes to the merits of the claim. The

5   Ninth Circuit has repeatedly cautioned district courts that "proof of the manifestation of a defect is

6   not a prerequisite to class certification." *Wolin*, 617 F.3d at 1173; *see also Nguyen*, 932 F.3d at 822

7   (9th Cir. 2019) *and Baker v. Microsoft Corp.*, 797 F.3d 607, 614 (9th Cir. 2015), *rev'd on other*

8   *grounds*, 582 U.S. 23 (2017). The Court is bound to apply Ninth Circuit law. The Court finds that

9   the Plaintiffs do not have to show substantial evidence of a defect substantially certain to occur to

10  establish a commonality. Accordingly, the Court finds that Plaintiffs have established commonality.

11      **3. Adequacy**

12      A representative party must also "fairly and adequately protect the interests of the class."

13  Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named

14  plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

15  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*

16  *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds by *Wal-Mart*

17  *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

18      Defendants argue that "[i]ndividuals are not adequate representatives of a class when it

19  appears that they have abdicated any role in the case beyond that of furnishing their names as

20  plaintiffs." *Guido v. L'Oreal, USA, Inc.*, No. 11-CV-01067, 2013 WL 3353857, at *8 (C.D. Cal.

21  July 1, 2013) (citations omitted). Defendant contends that both Plaintiffs are completely detached

22  from this lawsuit. For many months after joining the Amended Complaint, Avino was not aware of

23  her status as a named plaintiff. ECF 102-5 ("Avino Dep.") at 42:8–45:4, 120:7–11. She also lacked

24  knowledge of fundamental case details, including the existence or substance of any court rulings, or

25  the parties' participation in court-ordered mediation. *Id.* at 48:11–13, 49:15–25. Similarly, Cornejo

26  admitted that she did not know about the current status or historical milestones of the case, or

27  whether there have been any settlement discussions. Cornejo Dep. at 36:4–24, 138:24–140:5.

28

United States District Court
Northern District of California

1  Defendants argue that both Plaintiffs responded to a social media advertisement campaign ran by

2  counsel and have subsequently been detached from the proceedings.

3  Plaintiffs argue that Defendants extend the adequacy inquiry further than the standard

4  requires. Reply at 6. Rather, the standard requires that the named plaintiffs not have conflicts of

5  interest with other class members and that they will prosecute the action vigorously on behalf of the

6  class. *Hanlon*, 150 F.3d at 1020. Plaintiffs contend that they have no conflicts and will vigorously

7  prosecute this action as evidenced by their active participation thus far. Plaintiffs further argue that

8  the fact that Plaintiffs cannot recite case history on command does not bear on their ability to serve

9  as adequate representatives. Reply at 6.

10  Defendant also challenges the adequacy of counsel. In evaluating the adequacy of counsel,

11  the Court looks to the factors identified in Rule 23(g)(1)(A), including "the work counsel has done

12  in identifying or investigating potential claims in the action." Defendants argue that Plaintiffs'

13  Counsel did not investigate Avino's claims because if they had, Plaintiffs' Counsel would have

14  known that Avino's shoes had not shrunk. Opp'n at 14. Further, this lawsuit did not arise out of a

15  true consumer complaint, but as a result of counsel soliciting plaintiffs via Facebook advertising.

16  *Id.*

17  Plaintiffs' counsel must keep Plaintiffs aware of the status of the proceedings and must fully

18  investigate the claims asserted by their clients. Plaintiffs' counsel's failure to inspect Avino's shoes

19  for shrinkage at an earlier stage in the proceedings is surprising. However, while Plaintiffs may have

20  been unaware of specific stages of the proceedings, Plaintiffs are familiar with the facts and

21  allegations of the case. Plaintiffs have participated in depositions and are committed to prosecuting

22  the action in the future. The Court finds that Plaintiffs and Plaintiffs' counsel have met the legal

23  adequacy standard from *Hanlon*.

24  **4.  Typicality**

25  A representative party must have claims and defenses that are "typical of the claim or

26  defenses of the class." Fed. R. Civ. 23(a)(3). "The test of typicality 'is whether other members have

27  the same or similar injury, whether the action is based on conduct which is not unique to the named

28  plaintiffs, and whether other class members have been injured by the same course of

United States District Court
Northern District of California

17

1   conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v.*

2   *Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). A plaintiff may not be typical if she is "subject to

3   unique defenses which threaten to become the focus of the litigation." *Id.*

4        *Hanon* makes clear that "a named plaintiff's motion for class certification should not be

5   granted if 'there is a danger that absent class members will suffer if their representative is

6   preoccupied with defenses unique to it.'" *Hanon*, 976 F.2d at 508; *see also Ellis v. Costco Wholesale*

7   *Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). In *Hanon*, the Ninth Circuit denied class certification in a

8   securities fraud action where the named plaintiff's "reliance on the integrity of the market would be

9   subject to serious dispute as a result of his extensive experience in prior securities litigation, his

10  relationship with his lawyers, his practice of buying a minimal number [of] shares of stock in various

11  companies, and his uneconomical purchase of only ten shares of stock in Dataproducts." *Hanon*,

12  976 F.2d at 508. The Ninth Circuit reasoned that the named plaintiff's "unique background and

13  factual situation" would require him to "prepare to meet defenses that are not typical of the defenses

14  which may be raised against other members of the proposed class." *Id.*

15       The Court notes that the parties' arguments engage with the merits of the case. While the

16  Court is hesitant to consider the merits at the motion for class certification stage, the Supreme Court

17  has recognized that "[m]erits questions may be considered to the extent—but only to the extent—

18  that they are relevant to determining whether the Rule 23 prerequisites for class certification are

19  satisfied." *Amgen*, 568 U.S. at 466. The Court will consider the parties' arguments as it pertains to

20  the typicality requirement.

21       Plaintiffs argue that typicality is met because, like all members of the Class, Plaintiffs bought

22  shoes made entirely of Croslite during the class period that came with a defect that causes the shoes

23  to shrink a full size in hot environments. Mot. at 13. Defendant did not disclose the shrinkage defect

24  to Plaintiffs or the Class on the Product label prior to their purchase. *Id.* Plaintiffs, like all Class

25  members, sustained economic injuries at the time of purchase in the form of the price premium they

26  paid for defective products. *Id.* Plaintiffs further contend that it does not matter that Plaintiffs did

27  not purchase every Product because the underlying facts and theory of liability with respect to each

28

United States District Court
Northern District of California

1  product is the same. *Id.* at 14. The Products are all substantially similar because they are all clogs

2  made entirely of Croslite and containing the same defect. *Id.*

3      Defendant argues that typicality is not met because Cornejo, as a repeat purchaser, is subject

4  to unique defenses. To prove her CLRA and UCL claims, Cornejo must demonstrate actual reliance

5  on Defendant's alleged omission. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)

6  (citing *Cohen v. DIRECTV, Inc.*, 178 Cal.App.4th 966 (Cal. App. Ct. 2009) (CLRA) and *In re*

7  *Tobacco II Cases*, 46 Cal.4th 298 (Cal. 2009) (UCL)). Defendant argues that Cornejo did not rely

8  on the alleged omission of the defect.

9      Defendant contends that Cornejo cannot show the necessary link between an alleged

10  misrepresentation and her injuries if she continued to purchase the Products after learning the truth.

11  Opp'n at 13. Defendant contends that Cornejo's repeated purchases of the Products, despite knowing

12  that they contained an alleged defect, shows that shrinkage was not a consideration for her purchase

13  decisions. Since 2014 or 2015, Cornejo purchased a total of five pairs of Defendant's shoes—her

14  at-issue shoes were purchased in March 2022, after two pairs of her shoes allegedly shrunk. Cornejo

15  Dep. at 57:19–58:25, 63:17– 64:6, 110:17–118:15, 127:2–131:9. Cornejo knew that her previous

16  shoes had shrunk but continued to purchase the before and after the commencement of this action.

17  "Because of [Cornejo's] unique situation, it is predictable that a major focus of the litigation will be

18  on a defense unique to [her]." *Id.* (quoting *Hanon*, 976 F.2d at 509).

19      In Reply, Plaintiffs provide a declaration by Cornejo clarifying her statements in her prior

20  deposition. ECF 117-11 ("Cornejo Decl."). Defendants contend that this declaration should be

21  stricken because it attempts to create a dispute of fact in a Reply. ECF 121. Defendants argue that

22  Cornejo attempts to "correct" Defendant's representation by explaining in her declaration what she

23  was asked at the deposition and then providing a narrative about what she meant, what she was

24  thinking, and what she did at the time she purchased her at-issue shoes. *Id.* Defendant contends that

25  if Plaintiffs believe Defendant cited Cornejo's testimony out of context, then they may cite to the

26  deposition transcript. *Id.* The Court agrees with Defendant that it is improper for Plaintiffs to provide

27  a declaration that attempts to correct a prior deposition in their Reply. Accordingly, the Court will

28  not consider this declaration in its analysis.

United States District Court
Northern District of California

1    Plaintiffs argue that Cornejo may have had a "hunch" that the Products were defective, but

2  she did not know that they were. In her deposition, Cornejo testified that she "didn't know that

3  plastic would shrink." Cornejo Dep. at 145:24-25. She further testified: "I mean, if I am buying

4  something, I would never expect it to shrink like that." *Id.* at 143:12-14. She also testified that,

5  although she had Products that previously shrank, she had no idea why they shrank. *Id.* at 89:18–

6  25.

7    Here, there is a factual dispute of whether Cornejo knew that the Products were defective

8  when she repurchased them. Cornejo's testimony suggests that she knew that the Products she

9  previously purchased had shrunk, but she continued to purchase the Products on multiple occasions.

10  The mere fact that Cornejo may be subject to non-reliance challenges is not generally enough to

11  deny class certification. *See Hanon*, 976 F.2d at 509 ("[T]he defense of non-reliance is not a basis

12  for denial of class certification."). However, like the plaintiff in *Hanon*, Cornejo's factual situation

13  makes her uniquely vulnerable to these challenges. *See also Backus v. ConAgra Foods, Inc.*, No. C

14  16-00454 WHA, 2016 WL 7406505, at *4 (N.D. Cal. Dec. 22, 2016). Cornejo was a repeat

15  purchaser who knew of the possibility of shrinkage when she purchased her at-issue Product. The

16  question of whether Cornejo relied on the omission of the defect will likely "become the focus of

17  the litigation." *Hanon*, 976 F.2d at 508.

18    In their opposition, Defendant also notes the Cornejo lacks vertical privity, an essential

19  element for an implied warranty claim under the applicable California law. *Clemens v.

20  DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). Cornejo did not purchase her at-issue

21  shoes directly from Crocs, but instead from a third-party retailer, DSW. Cornejo Dep. at 86:19–

22  87:14. Plaintiffs concede that Cornejo lacks vertical privity but argue that she is subject to the

23  reliance exception and third-party beneficiaries' exception. Mot. at 18.

24    In *Burr*, the California Supreme Court recognized an exception to vertical privity when the

25  plaintiff relied on written labels or advertisements of a manufacturer. *Burr v. Sherwin Williams Co.*,

26  42 Cal.2d 682, 696 (Cal.1954). However, the court clarified that this exception was "applicable only

27  to express warranties." *Id.* Thus, the exception does not apply here. Similarly, as far as the Court is

28  aware, no California court has applied the third-party beneficiaries exception in the context of a

consumer claim against a product manufacturer. *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017). Plaintiffs cite to *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) in support of their argument that the third-party beneficiaries' exception applies here. However, in *Toyota*, the court recognized that a third-party beneficiary exception to vertical privity may be pleaded—not whether it exists in the consumer claim against a product manufacturer context. *Id.*

While these questions delve into the merits of Cornejo's implied warranty claim, they also address defenses and challenges unique to Cornejo which the Court must consider in its adequacy inquiry. Under the adequacy inquiry, because Plaintiffs concede that Cornejo lacks vertical privity required by the implied warranty claim, Cornejo is not typical to the class members that purchased their Products directly from Crocs. The Court notes that had Avino established standing, typicality may not have been an issue because Avino may have been typical to the class members that that purchased their Products directly from Crocs. However, Cornejo now represents the entire class including direct-purchasing class members. The question of whether Cornejo implied warranty claim is barred by the vertical privity requirement will likely "become the focus of the litigation." *Hanon*, 976 F.2d at 508. Cornejo's factual situation—she purchased from a third-party retailer—makes her uniquely vulnerable to these challenges. Cornejo is not typical of the class she represents.

Though Cornejo has standing, her claims do not satisfy the typicality requirement of Rule 23(a) because she is uniquely vulnerable to defenses atypical of those that would be raised against other members of the class. The Court finds that Plaintiffs have not established typicality.

### III.    MOTION TO STRIKE TESTIMONY AND OPINIONS OF PLAINTIFFS' EXPERT

Defendant filed a motion to strike the testimony and opinions of Plaintiffs' Expert Dr. Michael A. Hickner pursuant to *Daubert* standards for experts. Plaintiffs relied on Dr. Hickner's expert testimony and report in support of their motion for class certification. The Court denied Plaintiff's motion for class certification. Accordingly, the Court **DENIES** the motion to strike testimony and opinions of plaintiffs' expert as moot.

United States District Court
Northern District of California

**IV.    CONCLUSION**

Avino lacks standing because she did not suffer an injury-in-fact, making Cornejo the sole representative of the entire class.

Although Plaintiffs have established numerosity, commonality, and adequacy, the Court finds that Plaintiffs have failed to establish typicality as required by Rule 23(a). Cornejo cannot establish typicality because she is subject to unique defenses that threaten to become the focus of the litigation. She is a repeat purchaser who knew of the shrinkage defect. She also purchased her at-issue Product from a third-party retailer.

Accordingly, the Court **DENIES** the motion to certify class and the Court **DENIES** the motion to strike testimony and opinions of plaintiffs' expert as moot.

This Order terminates ECF 95 and 103.

IT IS SO ORDERED.

Dated: October 16, 2024

_____
TRINA L. THOMPSON
United States District Judge