UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA VALENTINE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CROCS, INC.,<br><br>    Defendant. | Case No. 22-cv-07463-TLT<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE**<br><br>Re: ECF 178, 179 |

This case is about a shoe shrinking croc-nundrum. On November 23, 2022, Plaintiffs Martha Valentine and **Ruby Cornejo** filed a complaint against Defendant Crocs, Inc., alleging that their Crocs shoes had shrunk. ECF 1. Plaintiff Tiffany Avino later joined in their claims. ECF 33. After two and half years of vigorously litigating this action, **only Cornejo's claims remain.** *See* ECF 90 (stipulating to voluntary dismissal of Valentine), 150 (finding Avino to lack standing). In a twist, after denial of class certification in this action, another case alleging similar claims has materialized. *See Mongalo et al v. Crocs, Inc.*, Case No. 3:24-cv-09037 (N.D. Cal.).

Before the Court is Defendant's (1) motion for summary judgment and (2) motion to strike testimony and opinions of Plaintiff's Expert Michael A. Hickner pursuant to *Daubert* standards for experts. ECF 178, 179. The Court heard oral argument on the motions on May 13, 2025.

After review and consideration of the motions, briefings, attachments and exhibits thereto, Defendant's motion for summary judgment is **GRANTED** on all claims and Defendant's motion to strike pursuant to *Daubert* is **DENIED** as moot.

//
//
//
//

# I. BACKGROUND

## A. Factual Background

### 1. Cornejo's Shoe Shrinkage

In March 2022, Ruby Cornejo purchased the at-issue pair of tie dye Classic Clogs from DSW to use while gardening. ECF 178-4, Exhibit ("Ex.") C, Deposition of Ruby Cornejo ("Cornejo Dep."), at 45:16–48:17; 127:2–131:9. About a month after purchasing, Cornejo realized that her shoes had shrunk after leaving them outside under the sun on hot concrete almost every day. *Id.* 48:11–49:19.

But this was not Cornejo's first experience with shrinking shoes. *Id.* at 114:25–115:2. Cornejo had purchased her tie dye Classic Clogs "knowing that other Crocs that [she] had, had shrunk in the past[.]" *Id.* She did not "know what was causing [the shrinking] to happen to [her] shoes." ECF 184-2, Ex. 61, Deposition of Ruby Cornejo ("Cornejo Dep."), at 145:19–146:20. She theorized that shoes may have shrunk from sitting outside in the sun. Ex. C, Cornejo Dep. at 63:9–13, 89:14–25, 114:4–7. Nevertheless, Cornejo purchased her tie dye Classic Clogs because they were "really good work shoes." *Id.* at 115:15. She learned from her prior experiences with shrinkage and bought "a size bigger" to compensate for the shrinkage. *Id.* at 127:24–128:17. Even after initiating this lawsuit, she purchased another pair of Crocs in the fall of 2022 from a Crocs retail store, knowing that they might shrink. *Id.* at 111:3–12, 115:11–15.

Crocs made Plaintiff's at-issue Classic Clogs out of a proprietary foam polymer called Croslite. ECF 184-4, Ex. 63, Deposition of Marco Ferniani ("Ferniani Dep."), 53:1–5. Neither party disputes that Cornejo's at-issue tie dye shoes shrank from their original measurements. *See* ECF 178, at 4; ECF 184-3, Ex. 62, 47:12–48:4.

In a battle of expert witnesses, the parties dispute whether the shrinkage of Plaintiff's at-issue shoes is a design defect that will occur frequently in hot environments, *see* ECF 94-47, Expert Report of Michael A. Hickner ("Hicker Rep."), or rarely and only in extreme heat when looking to the miniscule rate of customer complaints related to shrinkage, *see* ECF 178-9, Ex. H, Report of Laura O'Laughlin ("O'Laughlin Rep."); ECF 178-10, Ex. I, Report of Michael

1  Dimitriou ("Dimitriou Rep."); ECF 178-12, Ex. K, Deposition of Marco Ferniani ("Ferniani
2  Dep.").

### 2. Crocs' Representations

Plaintiff testified that she recalled seeing advertisements "where Crocs were seen by water, by the beach, you know, the sand," as well as advertisements about boating and gardening. Ex. C, Cornejo Dep. at 62:19–63:2. She also recalled seeing advertisements that Crocs were water-friendly. *Id.* at 46:1–10. Plaintiff was mindful of advertisements of Crocs with water and being able to use Crocs for gardening. *Id.* at 153:12–18.

In her complaint, she alleges that Crocs made claims that the shoes are "water shoes," "water sandals," "water and swim shoes," "water sandals, clogs, flip flops, or slides," "water clogs," "all-terrain," "pool party," "perfect for the pool," "the perfect choice for gardening," "beach bum," "water and swim shoes," "water-friendly," "beach, pool, and beyond," "made for the beach," "the '[p]erfect shoes for the lake,'" "shoes for the beach," "perfect summer shoe," "fishing shoe," "Pool Shoes," "Beach Shoes," "buoyant," "shed water," and "keep water [. . . ] from sticking," "popular for water-sports enthusiast." ECF 33, ¶¶ 4–5, 27, 30, 43–58. She alleges that Crocs represented, "Comfortable water and swim shoes. Whether you're swimming in a lake, river, ocean, pool, protect your feet with comfortable water sandals and shoes from Crocs." *Id.* ¶ 4; *see also id.* ¶¶ 33–57 (showing images of various Crocs' marketing material).

The "Caring for Your Crocs" section on the Crocs' website, linkable via the Crocs' webpage footer and contained in the website's FAQs, cautions: "Exposure to extreme heat, sun, dishwashers, washing machines, or hot cars can cause the shoes to shrink or warp." ECF 178-8, Ex. G; ECF 178-5, Ex. D, Deposition of Smeeta Khetarpaul ("Khetarpaul Dep.") at 47:17–48:25. Cornejo did not visit the Croc' website prior to her purchases. Ex. C, Cornejo Dep. at 59:20–23.

Receipts from Crocs stores state in fine print: "Keep your Crocs away from extreme heat." ECF 96-3, Ex. 24. But Cornejo did not purchase her at-issues shoes from a Crocs store. Ex. C, Cornejo Dep. at 45:16–48:17. While Cornejo did not review her DSW receipt for any care instructions, *id.* at 111:3–20, her DSW receipt did not contain similar instructions, ECF 95-8, Ex. 14, Deposition of Smeeta Khetarpaul ("Khetarpaul Dep.") at 21:23–23:3.

She also did not look at the hangtags prior to purchasing her at-issue shoes. *Id.* at 120:17–121:5. The hangtags also did not contain a warning about potential shrinkage. *See* ECF 95-11, Ex. 23; Khetarpaul Dep. at 24:13–21.

### B.     Procedural Background

This action has had many twists and turn on its two and a half years of litigation. On November 23, 2022, Plaintiffs Martha Valentine and Ruby Cornejo filed a complaint against Defendant Crocs, Inc. ECF 1. The Court granted in part and denied in part Defendant's motion to dismiss. ECF 30.

On May 26, 2023, Plaintiffs filed an amended complaint, introducing Plaintiff Tiffany Avino to the action. ECF 33. In the amended complaint, Plaintiffs allege (1) breach of express warranty, (2) breach of implied warranty, (3) violation of the Magnuson-Moss Warranty Act, (4) fraudulent concealment, (5) fraud, deceit, and/or misrepresentation, (6) violation of Consumer Legal Remedies Act ("CLRA"), (7) violation of the False Advertising Law ("FAL"), (8) negligent misrepresentation, and (9) violation of the Unfair Competition Law ("UCL"). *Id.* ¶¶ 112–204. The Court denied Defendant's motion to dismiss the amended complaint. ECF 71. Defendant subsequently filed an answer to the amended complaint. ECF 76.

On May 10, 2024, the parties stipulated to the voluntary dismissal of Valentine. ECF 90. On May 31, 2024, Plaintiffs Cornejo and Avino moved to certify the class. ECF 95. After Defendant filed an opposition, proposed interveners Chelsea Garland, Jacqueline Mongalo, Melissa Harmon, and Philip Werner filed a motion to intervene. ECF 107. The Court denied the motion to intervene as untimely. ECF 128. The Court subsequently denied the motion for class certification, finding Avino to lack standing and Cornejo to be atypical. ECF 150, at 22.

After the Court denied class certification, Plaintiffs filed a petition with the Ninth Circuit pursuant to Rule 23(f) of the Federal Rule of Civil Procedure requesting permission to appeal the Court's denial. ECF 160. Upon request of the parties, the Court stayed the case pending the appeal. ECF 166. While the case was stayed, on December 13, 2024, Plaintiffs' counsel filed another case with the proposed interveners as plaintiffs alleging similar claims against Defendant.

4

*See Mongalo et al v. Crocs, Inc.*, Case No. 3:24-cv-09037 (N.D. Cal.); *see* ECF 169 (order relating cases).

On January 23, 2025, the Ninth Circuit denied Plaintiffs' Rule 23(f) petition, and on February 3, 2025, the stay was lifted. ECF 170, 172. Upon request of the Plaintiffs, the Court entered judgment against Plaintiff Avino, ECF 175, and Plaintiff Avino immediately filed an appeal to the Ninth Circuit, ECF 176. The Ninth Circuit dismissed the appeal for lack of jurisdiction. ECF 194.

On March 17, 2025, Defendant filed a motion for summary judgment, ECF 178, and a motion to strike testimony and opinions of Plaintiff's expert, ECF 179. Plaintiff Cornejo timely filed oppositions to both motions. ECF 184, 185. Defendant timely filed replies to both motions. ECF 189, 190.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

A party may move for summary judgment, or partial summary judgment, identifying claims, or parts of claims, for which summary judgment is sought. Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 318 (1986). If the Court finds there is no genuine dispute of material fact, then it may grant the motion, finding that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322. A material fact is one that could affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact if "the evidence is such that a *reasonable* jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the burden of showing an absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. They may satisfy the burden by showing: (1) evidence negating an essential element of the nonmovant's case, or (2) that the nonmovant failed to make a sufficient showing to establish an essential element of their case for which the party will bear the burden of proof at trial. *Id.* at 322–23. Where the moving party does not bear the burden of proof at trial, they may show that the nonmovant failed to provide evidence to support their case. *Id.* at 325. The moving party is not required to produce evidence showing an absence of a genuine dispute of

material fact, nor to offer evidence negating the nonmovant's claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). "[T]he motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for entry of judgment, as set forth in Rule 56(c), is satisfied." *Id.* (quoting *Celotex*, 477 U.S. at 323).

"If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating 'that there is some metaphysical doubt as to the material facts.'" *Krueger v. Wyeth*, 396 F. Supp. 3d 931, 940–41 (S.D. Cal. 2019) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat summary judgment, the nonmoving party must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

At summary judgment, a court may not make credibility determinations. *Krueger*, 396 F. Supp. 3d at 941. The evidence, and inferences drawn therefrom, must be construed in the light most favorable to the non-moving party. *Ctr. for Bio-Ethical Reform v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008) (citation omitted).

### B.     Daubert Motion

Federal Rule of Evidence 702 controls expert witness testimony. Fed. R. Evid. 702. Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565.

### III. MOTION FOR SUMMARY JUDGMENT

Defendant seeks summary judgment on all nine of Plaintiff's claims, or in the alternative, partial summary judgment on one or more of Plaintiff's claims. ECF 178, at 1. Defendant offers the following arguments: (1) Plaintiff cannot show reliance, causation, or damages for any of her claims, (2) Plaintiff's breach of warranty claims 1 to 3 are unsustainable, and (3) Plaintiff's fraud-based claims 4 to 9 fail as a matter of law. *Id.* at 7–25. Plaintiff provides counterarguments to each. ECF 184, at 7–25.

**A.     There is no dispute of material fact as to Plaintiff's breach of warranty claims.**

In her complaint, Plaintiff alleges (1) breach of express warranty, (2) breach of implied warranty, and (3) violation of the Magnuson-Moss Warranty Act. ECF 33, ¶¶ 112–147. Defendant moves for summary judgment on each. ECF 178, at 7–19.

**1. Breach of express warranty**

"To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016). A plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Yastrab v. Apple Inc.*, No. 5:14-CV-01974, 2015 WL 1307163, at *7 (N.D. Cal. Mar. 23, 2015) (cleaned up).

7

1    Here, at the pleading stage, the Court found that Plaintiff had alleged a breach of express
2    warranty claim as to advertisements indicating that Crocs shoes were suitable for garden
3    environments. ECF 30, at 7 ("Plaintiffs' exposure to Crocs' advertising and the allegations that
4    Crocs' shoes shrink are sufficient for Plaintiffs to plausibly plead a breach of express warranty.").
5    The Court did not require Plaintiff to identify the specific advertisements relied upon at that stage.
6    *Id.*

7    At the summary judgment stage, Defendant now argues that Plaintiff has not identified a
8    single representation that Crocs shoes are shrink resistant when subjected to extreme heat. ECF
9    178, at 12. Defendant produced thousands of pages of marketing material, including in-store
10   marketing material from 2015 to the present. *Id.* at 13. Yet Plaintiff has not identified any express
11   promise made by Defendant. *Id.*

12   Plaintiff argues that she identified specific advertisements in her deposition. ECF 184, at
13   14 (citing ECF 95-5, Ex. 9, Deposition of Ruby Cornejo ("Cornejo Dep."), at 62:16–63:2; Ex. 61,
14   Cornejo Dep. at 156:14–22; 153:14–18; 154:11–155:1; ECF 95-17, Ex. 49). In her deposition,
15   Plaintiff states that she does not remember specific advertisements, but she remembers seeing a
16   boat and a garden. Ex. 9, Cornejo Dep. at 62:16–63:2. Plaintiff next testifies that she saw the
17   advertisement in the complaint in paragraph 38. Ex. 61, Cornejo Dep. at 156:14–22; ECF 33, ¶ 38
18   (image a person wearing Crocs shoes near a planter bed of flowers). Plaintiff continues by stating
19   that she relied on "other ad[vertisements] . . . like the Crocs with water and . . . being able to use
20   them for gardening and all these things." *Id.* at 153:14–18. Plaintiff also testifies to seeing the
21   advertisement in the complaint in paragraph 34. *Id.* at 154:11–155:1; ECF 33, ¶ 38 (Crocs
22   Facebook advertisement with people wearing Crocs near a pool).

23   Based on Plaintiff's testimony, she identified advertisements in paragraph 34 and 38. ECF
24   33, ¶¶ 34, 38. However, neither of these advertisements contain an express or equivocal statement
25   that Crocs shoes would not shrink. The Court finds the Ninth Circuit decision in *Maneely v. Gen.*
26   *Motors Corp.* to be instructive. 108 F.3d 1176, 1181 (9th Cir. 1997). At the summary judgment
27   stage, the Ninth Circuit affirmed the lower court's finding that "print and television advertising
28   showing young people standing or sitting in the cargo beds of pickup trucks" did not constitute a

1    promise by defendant that "riding in the back of a moving truck was safe." *Id.* The Court found
2    that unlike a specific and unequivocal statement, the advertisements presenting visual images of
3    the product set in certain surroundings made no explicit guarantees. *Id.* Like the Ninth Circuit in
4    *Maneely*, the Court finds that Plaintiff's cited advertisements, which present visual images of the
5    Crocs shoes set in certain surroundings, made no explicit guarantees. *Maneely*, 108 F.3d at 1181.

6         Plaintiff also asserts a theory that the size description on the hangtag or the sole of the shoe
7    is an express representation. ECF 184, at 15; ECF 33, ¶ 118 (asserting breach of express warranty
8    claim based on size representation). Plaintiff testified that she looked at the size "underneath" the
9    Crocs shoes prior to purchase. Ex. 61, Cornejo Dep. at 179:21–24. Plaintiff contends that the
10   label is a promise that the shoes are built to remain the represented size under the conditions of use
11   for which they are sold, including summer temperatures and environments. *Id.* However, Plaintiff
12   provides no evidence that the size description was incorrect at the time of purchase or that it
13   constitutes a promise of size stability in summer temperatures and environments.

14        Plaintiff relies on *Robertson v. Clean Control Corp.*, No. 5:24-CV-01478, 2024 WL
15   5193852 (C.D. Cal. Dec. 18, 2024). In *Robertson*, the Court found that plaintiff had sufficiently
16   alleged a breach of warranty claim based on the label "Makes up to 32 Gallons." *Id.* at *1.
17   *Robertson* is distinguishable from the instant action because defendant had conceded that nine out
18   of ten times the concentrate did not produce 32 gallons. *Id.* Here, there is no dispute that the size
19   representation is accurate at the time of purchase.

20        Plaintiff also relies on *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D.
21   Cal. 2016). In *Strumlauf*, the Court found that plaintiffs had sufficiently alleged a breach of
22   warranty claim based its "Grande" latte containing 16 ounces of liquid. *Id.* Plaintiffs put forth a
23   theory that the milkfoam in the latte should not be measured in its foam state but in its dissipated
24   stated which resulted in a latte that was less than 16 ounces of liquid. *Id.* Plaintiff had alleged that
25   defendant uniformly underfilled its latte such that the recipe called for a quarter inch of space
26   below the rim of the cup. *Id.* Defendant challenged the milkfoam theory but not the recipe theory.
27   *Id.* Without ruling on Plaintiff's milkfoam argument, the Court found that Plaintiff had alleged
28   breach of warranty claim. *Id.* Here, Plaintiff's analogy to dissipating milkfoam in a latte is

United States District Court
Northern District of California

1  creative. However, *Strumlauf* is distinguishable because there is no allegation or evidence that
2  Defendant systemically misrepresented the size of the shoe. The parties agree that the size
3  representation was accurate at the time of purchase.

4  Plaintiff does not identify any evidence or caselaw that suggests a size representation
5  constitutes a promise of size stability in summer temperatures and environments. Because
6  Plaintiff has failed to identify an unequivocal claim or promise made by Defendant, the Court
7  **GRANTS** the motion for summary judgment as to the breach of express warranty claim. The
8  Court need not address additional arguments for summary judgment on the breach of express
9  warranty claim. *See* ECF 178, at 7–11 (reliance), 12 (offer of replacement).

### 2. Breach of implied warranty

Plaintiff also asserts a breach of implied warranty claim. ECF 33, ¶¶ 121–31. The parties have disputed the issue of vertical privity at every stage in this litigation. *See* ECF 32, at 7–8; ECF 150, at 20–21. Vertical privity is an essential element for an implied warranty claim under California law. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023–24 (9th Cir. 2008). It is undisputed that Plaintiff lacks vertical privity with Defendant because she purchased her at-issue shoes from DSW. Ex. C, Cornejo Dep. at 45:16–48:17.

However, courts have recognized exceptions to the vertical privity rule. At the pleading stage, the Court denied the motion to dismiss the breach of implied warranty claim because Plaintiff has pleaded the advertising exception—"when the plaintiff relies on written labels or advertisements of a manufacturer." ECF 33, at 8; *Clemens*, 534 F.3d at 1023. At the class certification stage, the Court determined that California Supreme Court has long held that the advertising exception only applied to express warranties and not implied warranties. *See* ECF 150, at 20; *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 696 (1954).

The Ninth Circuit in *Clemens* simply identifies exceptions to the privity rule without holding that the advertising exception applied to a breach of implied warranty claim. *Clemens*, 534 F.3d at 1023–24. In fact, *Clemens* never applied the advertising exception. *Id.* at 1023–24 (declining to apply any exceptions and dismissing breach of implied warranty claim for lack of vertical privity). The Ninth Circuit's identification of the exception relies on *Burr* which

10

unequivocally makes clear that the advertising exception is "applicable only to express warranties." *Burr*, 42 Cal.2d at 696. Thus, Plaintiff's assertions that this Court must follow the binding precedent in *Clemens* and apply the advertising exception to the breach of implied warranty claim here is based on a misreading of *Clemens*. *See also In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1010–11 (N.D. Cal. 2023) (finding advertising exception unavailable for implied warranty claims); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853–54 (N.D. Cal. 2018) (same).

Plaintiff also cites to *In re GM LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019), arguing that the court applied the advertising exception to the implied warranty claim. ECF 184, at 8. However, in *GM LLC*, in determining whether plaintiff had alleged a breach of implied warranty claim, the court found that "the third-party beneficiary exception applies to [plaintiffs] as the intended beneficiaries of GM's contracts with its dealers." *Id.* at 882–83. Thus, the court found the third-party beneficiary exception to apply—not the advertising exception.

Plaintiff next relies on the third-party beneficiary exception. The Ninth Circuit has not explicitly recognized the existence of an exception to the privity requirement for third-party beneficiaries. *See Clemens*, 534 F.3d at 1023 (describing exceptions to privity requirements under California law and omitting the beneficiary exception). "There is an ongoing split in authority in this district regarding whether a third-party beneficiary exception to the vertical privity requirement remains available post-*Clemens*." *See Natera*, 664 F. Supp. 3d at 1011 (collecting cases). In *Quackenbush*, the district court found that "[a]s California law currently stands, save and except for real estate construction cases allowing the homeowner to sue the subcontractor, no third-party beneficiary exception has ever been applied in a citable decision." *Quackenbush v. Am. Honda Motor Co., Inc.*, 650 F. Supp. 3d 837, 843 (N.D. Cal. 2023). Adhering to the Ninth Circuit's recognition in *Clemens* that a federal court sitting in diversity is not free to create new exceptions to the privity requirement, *Quackenbush* declined to apply the third-party beneficiary exception in the consumer-manufacturer context. *Id.* (citing *Clemens*, 534 F.3d at 1024). The Court agrees with the decision in *Quackenbush*, which was affirmed by the Ninth Circuit without

a ruling on the third-party exception question. *See Quackenbush v. Am. Honda Motor Co.*, No. 24-33, 2025 WL 1009273 (9th Cir. Apr. 4, 2025).

Accordingly, the Court finds that the advertising exception and the third-party beneficiary exception do not apply here. The parties do not dispute that Plaintiff lacks vertical privity for her implied warranty claim under California law. The Court **GRANTS** the motion for summary judgment as to Plaintiff's implied warranty claim.

### 3. Violation of the Magnuson-Moss Warranty Act

Plaintiff's remaining claim is her Magnuson-Moss Act claim. ECF 33, ¶¶ 132–147. Neither party disputes that "claims under the Magnuson–Moss Act stand or fall with [Plaintiff's] express and implied warranty claims under state law." *Clemens*, 534 F.3d at 1022 (dismissing Magnuson-Moss claim based on dismissal of California state law warranty claims). Because Plaintiff's breach of express warranty and breach of implied warranty claims fail, Plaintiff's Magnuson-Moss Act claim does as well. The Court **GRANTS** the motion for summary judgment as to Plaintiff's Magnuson-Moss Act claim.

### B. There is no dispute of material fact as to Plaintiff's fraud-based claims.

Plaintiff alleges the following fraud-based claims, as numbered in her complaint: (4) fraudulent concealment, (5) fraud, deceit, and/or misrepresentation, (6) violation of CLRA, (7) violation of the FAL, (8) negligent misrepresentation, and (9) violation of the UCL. ECF 33, ¶¶ 148–204.

The parties do not dispute that each fraud-based claim requires Plaintiff to prove reliance, causation, and damages. ECF 178, at 8; ECF 184, at 17–20; *see Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (requiring justifiable reliance, causation, and damages for California fraud claim including fraudulent concealment claim); *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012) ("Both materiality and reliance are required for fraud claims based on affirmative misrepresentation and omission."); *First Am. Specialty Ins. Co. v. Carmax Auto Superstores California, LLC*, No. C 16-05951 WHA, 2017 WL 5235646, at *4 (N.D. Cal. Nov. 10, 2017) (requiring justifiable reliance, causation, and damages for negligent misrepresentation claim); *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC, 2014 WL

1153054, at *7 (C.D. Cal. Mar. 11, 2014) (requiring justifiable reliance and materiality for negligent misrepresentation claim); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1021–22 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (requiring actual reliance, causation, and loss of money for UCL, FAL, or CLRA claims); *Ross v. Sioux Honey Ass'n, Co-op.*, No. C-12-1645 EMC, 2013 WL 146367, at *17 (N.D. Cal. Jan. 14, 2013) (For UCL, FAL, and CLRA claims, "the omission or affirmative misrepresentation contained within an allegedly misleading advertisement must be 'material' to a customer's evaluation of a product.").

To prove materiality, Plaintiff "must be able show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144–45 (N.D. Cal. 2005) (cleaned up). "Materiality is judged by the effect on a reasonable consumer." *Id.* (cleaned up).

To prove reliance, Plaintiff must show "that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 771 (N.D. Cal. 2010) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)). While a plaintiff is not required to show that the challenged misrepresentation was "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentation must have "played a substantial part . . . in influencing his decision." *In re Tobacco II Cases*, 46 Cal.4th at 326–27.

Defendant argues that based on Plaintiff's testimony, there is no dispute of material fact as to reliance, causation, and damages. ECF 178, at 7–11. Specifically, Plaintiff has not produced any evidence that she relied on a material promise, representation, or omission made by Defendant about her shoes being heat resistant. *Id.* at 8. Defendant argues when Plaintiff purchased her at issue shoes—her third purchased pair at the time—she was aware of their potential to shrink. *Id.*

In her deposition, when asked, "And you had had Crocs in the past and liked them, even though your Crocs had shrunk in the past?" Plaintiff responded, "Yes. But I got a size bigger, thinking, okay, maybe that's what I need to do, get a bigger size and, you know, hopefully, they won't shrink. But you know, I went a size up." Ex. C, Cornejo Dep. at 127:22–128:5. When asked, Plaintiff also opined that her prior Crocs shoes may have shrunk from sitting outside in the

sun. *Id.* at 63:9–13, 89:14–25, 114:4–7. Plaintiff testified that she continued to buy Crocs shoes—up to five pairs now—even after she initiated this lawsuit, knowing that they might also shrink. *Id.* at 115:11–15.

Defendant contends that because Plaintiff continued to purchase Crocs shoes, knowing that they could shrink if stored sitting out in the sun, there is no dispute of material fact that Plaintiff relied on any omitted information when she made her at-issue purchase. ECF 178, at 9. Plaintiff further testified that when purchasing the at-issue shoes, she was thinking about the clearance price, the color, and her previous experience with the Clogs. Ex. C, Cornejo Dep. at 127:11–21.

In opposition, Plaintiff argues that she "didn't know that there was a defect in these shoes." ECF 184, at 18 (citing Ex. 61, Cornejo Dep. at 148:7–10). She did not visit the Croc's website prior to her purchases. Ex. C, Cornejo Dep. at 59:20–23. Thus, she did not see the heat warning on the website. ECF 178-8, Ex. G. Plaintiff argues that her testimony simply shows that she did not know what was going—not that she knew her prior shoes had shrunk from storing them under the California sun. ECF 184, at 19.

On this disputed point, the Court finds Plaintiff's explanation to be unpersuasive. Plaintiff's testimony clearly establishes that she knew that her shoes could shrink when she made her at-issue purchase as she even bought a bigger size in anticipation for their shrinking. The Court finds that Plaintiff knew of the potential for shrinkage when she made her purchase.

Plaintiff next argues that she relied on advertisements showing outdoor use in hot summer environments. ECF 184, at 19. Plaintiff contends that her consideration of any factor other than the advertisements does not negate materiality and reliance. *Id.* Rather, she only must show that the advertisement showing outdoor use in hot summer environments were a "substantial factor" in her purchasing decision. *Id.*

Plaintiff cites to *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646- RMW, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014). In *Lanovaz*, at the summary judgment stage, the parties disputed whether Plaintiff had relied "on the labels or the website in her purchasing decisions." *Id.* at *3. The Court found a triable issue of fact as to whether or not the at-issue antioxidant label was a substantial factor in influencing plaintiff's purchasing decisions. *Id.* at *5. Similarly, here,

14

Plaintiff argues that there is a triable issue of fact as to whether the challenged advertisements were a substantial factor in her purchasing decision. ECF 184, at 19.

Defendant counters that *Lanovaz* is distinguishable because in *Lanovaz*, at-issue were six to eight years of purchases whereas here Plaintiff alleges her claims based on a single at-issue purchase. ECF 189, at 4. And for the one at-issue purchase, Plaintiff testified that she considered clearance price, the color, and her previous experience with the Clogs while gardening. Ex. C, Cornejo Dep. at 127:11–21.

Defendant cites to *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202 (N.D. Cal. 2017). In *Wilson*, on summary judgment, the Court found that plaintiff Campen had failed to provide any specific facts indicating that he relied on the "0 grams Trans Fat" label. *Id.* at 1213. Further, the Court found that plaintiff Campen had failed to show that he relied on the "All Natural" label because he testified that he purchased the chips because "they taste[d] good." *Id.* at 1213–14. Defendant contends that similar to *Wilson*, evidence shows that Plaintiff did not rely on advertisements, but instead was a long-time purchaser of the shoes because they were "the only kind of shoe that [she] was using for a long time," and she just "really wanted" another pair. Ex. C, Cornejo Dep. at 45:16–22, 127:5–18.

Here, Plaintiff points to no evidence in the record to show that the challenged advertisements were a substantial factor in her decision to purchase her at-issue shoes. *In re Tobacco II Cases*, 46 Cal.4th at 326–27. While Plaintiff later testified that she had viewed advertisements showing the shoes being used in gardening and they stuck in her mind when she made her many purchases, Ex. C, Cornejo Dep. at 153:14–18, Plaintiff did not testify that she considered these advertisements when making her at-issue purchase, *id.* at 127:11–128:4 (considering the color, clearance price, and prior shrinkage).

Based on the evidence, no reasonable jury could find that the gardening advertisement or omissions regarding potential shrinkage were a substantial factor to Plaintiff's purchasing decision of the at-issue shoes. The Court need not reach the issue of damages. Because Plaintiff would bear the burden of proving reliance at trial for her fraud-based claims, the Court **GRANTS** Defendant's motion for summary judgment for (4) fraudulent concealment, (5) fraud, deceit,

15

1    and/or misrepresentation, (6) violation of CLRA, (7) violation of the FAL, (8) negligent

2    misrepresentation, and (9) violation of the UCL.

### IV.     MOTION TO STRIKE PURSUANT TO *DAUBERT*

With its motion for summary judgment, Defendant filed a motion to strike the testimony and opinions of Plaintiff's Expert Dr. Michael A. Hickner pursuant to *Daubert* standards. ECF 179. Defendant previously asserted the motion to strike Dr. Hickner's testimony and opinions at the class certification stage. ECF 103. However, because the Court denied class certification, the Court denied the motion to strike as moot. ECF 150, at 21.

Plaintiff again relies on two expert reports authored by Dr. Hickner at the summary judgment stage: his preliminary report, dated May 31, 2024 (the "Hickner Report" or "Report"), ECF 94-47, and his rebuttal report, dated August 23, 2024 (the "Hickner Rebuttal" or "Rebuttal"), ECF 117-8, (collectively, the "Hickner Reports" or "Reports"). Plaintiff offers the Reports as evidence for the following assertions: that the shoes suffer from a common defect that will cause them to "shrink a whole size in ordinary hot environments" regularly encountered by California consumers and render them unwearable, that Defendant was aware of this alleged defect, and that Defendant could have addressed this shrinkage issue but chose not to do so. Hickner Rep. ¶ 71.

Defendant asserts that Dr. Hickner did not conduct any testing on Plaintiff's shoes or any Crocs shoes before submitting his conclusions. ECF 190, at 1. He relied on outdated Crocs research and development testing on earlier versions of Croslite polymer formulations that are not at issue in this case. *Id.* The only product at issue in this action, Plaintiff Cornejo's tie dye Clogs, were made out of a Croslite polymer formulation never tested by Dr. Hickner. *Id.* at 2.

In response, Plaintiff argues that Dr. Hickner is a polymer chemistry generalist, and his opinions are based on polymer chemistry that even Plaintiff's expert largely agreed with. ECF 184, at 6–9. Plaintiff concedes that Dr. Hickner did not address any testing of the Croslite polymer formulation at issue. *Id.* at 1. However, because of the Court's denial of class certification, Plaintiff argues that it was "economically irrational" to offer any further expert testimony. *Id.* Nevertheless, if the action goes to trial, Plaintiff intends to offer further expert testimony—ignoring that the prior deadlines regarding expert discovery have long passed. *Id.*

16

1   During the hearing, Plaintiff once again agrees that Dr. Hickner did not conduct any testing on Plaintiff's shoes or any Crocs shoes before submitting his conclusions. Plaintiff narrows the offering of Dr. Hickner's expert testimony only as to the polymer science behind shrinkage in heat.  In this action, Plaintiff does not intend to offer Dr. Hickner for an opinion regarding shrinkage of Crocs shoes in ordinary or extreme heat.

The Court is faced with a similar disposition as it faced at the class certification.  Because the Court has granted Defendant's motion for summary judgment for all claims, it need not delve into the merits of the *Daubert* motion.  Accordingly, the Court **DENIES** the motion to strike Dr. Hickner's opinions and testimony as moot.

The Court notes that these issues regarding Dr. Hickner's expert testimony may come up again in the related *Mongalo* action.  *Mongalo et al v. Crocs, Inc.*, Case No. 3:24-cv-09037 (N.D. Cal.).  At that time, the Court expects the parties to have addressed the opposing parties' concerns and concessions, adhere to deadlines, and to have narrowed their disputes regarding expert discovery.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment for all claims and **DENIES** Defendant's motion to strike pursuant to *Daubert* as moot.

The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff and terminate the case.

All remaining dates are hereby vacated.

This Order resolves ECF 178 and 179.

**IT IS SO ORDERED.**

Dated: May 14, 2025

TRINA L. THOMPSON
United States District Judge

17